William M. Aron (SBN No. 234408)
**ARON LAW FIRM**
15 West Carrillo Street, Suite 217
Santa Barbara, CA 93101
Tel: (805) 618-1768
bill@aronlawfirm.com

*Attorneys for Plaintiff and the Class*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIANA DUBREU, individually and on behalf of all those similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>CELSIUS HOLDINGS INC., a/k/a CELSIUS PRODUCTS HOLDINGS INC., DEVON BARBARA, ERIKA WHEATON, and EMILY TANNER,<br><br>    Defendants. | Case No.:5:25-cv-180<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

- 1 -

CLASS ACTION COMPLAINT

Plaintiff, MARIANA DUBREU ("Plaintiff"), individually and on behalf of all those similarly situated, brings this Class Action Complaint against the above-named Defendants CELSIUS PRODUCTS HOLDINGS INC., and CELSIUS INC. (together "CELH"), makers, distributors and marketers of Celsius Energy drink ("Celsius"), and so-called "influencers" illegally promoting Celsius products on social media: DEVON BARBARA aka DEVON WINDSOR, EMILY TANNER, and ERIKA WHEATON, (together "Influencers"), and in support thereof states the following:

## INTRODUCTION

1. Plaintiff brings this action against Defendants on behalf of all consumers in California, and in the United States who, within four years of the filing of this lawsuit, have purchased beverages manufactured by CELH and branded as "Celsius."

2. During the Class Period (defined below), the Influencers misrepresented the material relation they have with the brand by promoting Celsius products without disclosing the fact that they were paid to do it, in violation of the law.

3. In in order to artificially inflate the prices for the Celsius products, and boost sales, both CELH and the Influencers devised a scheme in which the Influencers will tag or recommend Celsius products, pretending they are disinterested consumers.

4. Relying on the undisclosed and misleading advertising, Plaintiff and the Class Members (defined below) purchased products and paid a premium, while the products proved to be of a much lower value than the price paid.

5. While having large consumer audiences, the Influencers involved are not known to a significant portion of the viewing public, none of them having more than 10 million followers.

6. Celsius products are consumed mostly by a young audience, most of their customers being social media users exposed to undisclosed advertising.

7. Relying on the undisclosed advertising and misleading endorsements, Plaintiff and the Class Members purchased Celsius products and paid a premium, while the Celsius products purchased proved to be of a lower value than the price paid. Plaintiff filed this action to recover the difference between the price paid and the market value of the products as purchased.

# CELSIUS

8. Celsius began in Delray Beach, Florida in 2007 by producing and selling a small variety of energy drink products.

9. Following their increased popularity on social media, especially Instagram, Celsius experienced a boom and quickly became one of the dominant energy drinks on the US market.

10. The boom Celsius experienced could not have been possible without the "sales power" provided by the influencers that claimed that they love Celsius.

11. While claiming that it provides "sports nutrition," in 2021, Celsius was in fact banned by the National Collegiate Athletic Association due to it containing Ginseng, guarana, L-carnitine, and taurine, all of which are on the NCAA banned substances list and its suitability for being consumed prior or during exercise is questionable, at best.

12. While the Influencers love the free gifts (and the financial compensation they receive for pretending to consume Celsius), their followers are led to believe that they purchased the product and drink it because they love Celsius. This is a textbook example of deceptive advertising.

13. Celsius started without brick-and-mortar stores in the US and historically relied on third-party retailers as well as sales using various online platforms like Amazon. A good percentage of its sales are generated by the undisclosed advertising and fake endorsements on social media.

14. Other brands in the same market are consistently offering lower prices, discounts, or better quality than Celsius. An analysis of identical products that were offered on both Celsius and other energy drinks brands shows that the prices Celsius charges are usually 10-15% more than those of their competitors for the same quality products.

15. While competitors like Alani Nu and Monster are also using influencer marketing, there is a stark difference in the way all these companies act on social media. Monster Energy, for example is asking its influencers to properly disclose the material relationship with the brand by using the "Paid Partnership" label and the "ad" tag and comply with the FTC interpretation of the FTC Act.

CLASS ACTION COMPLAINT



"Paid partnership"

"#ad"

18. On the other hand, for years, Celsius and the Influencers have been omitting altogether any reference of the fact that their posts are not the Influencer's honest opinion, but rather undisclosed advertising and paid endorsements.

19. Out of the considerable profits obtained by Celsius from this scheme, part of the money is paid to the Influencers for their indispensable role.

## THE UNDISCLOSED ADVERTISING

20. While the practice employed by CELH and the Influencers is very profitable, it is also illegal. Federal law and California law prohibit such commercial behavior.

21. Tags in social media posts, demonstrations, depictions of the name, signature, likeness or other identifying personal characteristics of an individual, and the name or seal of an organization can be endorsements. *See.* 16 C.F.R. § 255.

22. The Influencers are knowingly posting depictions of themselves consuming Celsius, while mentioning the name of the brand and posting the brand's tag in their social media post (both on the caption and on the picture).

23. Plaintiff saw Celsius products being consumed by some of the Instagram influencers she followed, which led to her purchasing Celsius products. Celsius products proved to be of an inferior quality compared with the expectations Plaintiff had and the premiums she paid for the Celsius products.

24. By looking at the Influencers' posts prior to making her purchase, Plaintiff was unable

to discern the fact that those posts were paid posts, rather than organic, honest recommendations, and candid endorsements by the Influencers.

25. But for the false endorsements by the Influencers and the misleading advertising claims, Plaintiff and the Class Members would not have purchased Celsius products at the price they purchased it for.

26. In deciding to purchase Celsius products, Plaintiff and Class Members followed what they believed to be the honest endorsement of the Influencers. None of the posts Plaintiff saw mentioned, as legally required, that the Influencers are nothing more than paid advertisers for the brand.

27. This type of undisclosed advertising and false endorsements have been present on Instagram in the last few years. Defendants are advertising and endorsing Celsius products on Instagram for many years, without mentioning even once that they are paid (substantial amounts) to advertise Celsius and keep it quiet.

**NATURE OF THE ACTION**

28. Plaintiff, Mariana Diana Dubreu, on behalf of herself and all those similarly situated Class Members seek damages, declaratory judgment, permanent injunctive relief, disgorgement of ill-gotten monies, attorney's fees and costs, and other relief from Defendants CELSIUS HOLDINGS INC., a/k/a CELSIUS PRODUCTS HOLDINGS INC., DEVON BARBARA, ERIKA WHEATON, and EMILY TANNER, for unjust enrichment, fraud, negligent misrepresentation, violations of the FTC Act, 15 U.S.C. § 45(a), and, therefore, violations of the state laws, violation of California Unfair Competition Law, violation of California False Advertising Law, violations of California's Consumers Legal Remedies Act.

**PARTIES**

29. Plaintiff, Mariana Dubreu, is a citizen of California who resides in Riverside County, CA and is otherwise sui juris. Mariana Dubreu purchased Celsius products and paid a premium as a direct result of undisclosed endorsements by Influencers.

30. Plaintiff brings this action on her behalf and on behalf of all other persons similarly situated Class Members.

31. Defendant CELSIUS PRODUCTS HOLDINGS INC is a company registered in Florida and headquartered in Boca Raton, Florida, doing business worldwide and around the United States, including in the State of California.

32. Defendant CELSIUS, INC is a company registered in Florida and headquartered in Boca Raton, Florida, doing business worldwide and around the United States, including in the State of California.

33. Discovery will reveal the precise responsibilities and roles of each of the CELH entities in connection with the allegations in the Complaint.

34. Defendant DEVON BARBARA a/k/a Devon Windsor ("Windsor"), is a citizen of Florida who resides in Miami-Dade County and is otherwise sui juris. Windsor is transacting business in California, and nationwide over the internet and actively soliciting business in California, and nationwide.



Source https://www.instagram.com/devwindsor/

35. Defendant EMILY TANNER ("Tanner"), is a citizen of California who resides in Los Angeles County and is otherwise sui juris. Tanner is transacting business in California, and nationwide over the internet and actively soliciting business in California, and nationwide.

CLASS ACTION COMPLAINT



Source: https://www.instagram.com/emilyytanner/

36.　　Defendant Erika Richman a/k/a Erika Wheaton ("Wheaton"), is a citizen of Florida who resides in Miami Date County and is otherwise sui juris. Wheaton is transacting business in California, and nationwide over the internet and actively soliciting business in California, and nationwide.



Source: https://www.instagram.com/erikawheaton/

**JURISDICTION AND VENUE**

- 7 -

CLASS ACTION COMPLAINT

37. This is a national class action, including every purchaser of Celsius Products in the United States.

38. Celsius' revenue in 2023 was approximately US$ 1.31 Billion, a good part of which can be directly attributed to the undisclosed endorsements received on social media from the Influencers, therefore the estimated damages in this case are of at least US$ 450,000,000.

39. The Nationwide Class, as defined below, is comprised of at least one million people who purchased Celsius products during the Class Period.

40. This Court has jurisdiction over this matter under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: 1) there are at least 100 class members; 2) the combined claims of Class Members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and 3) Defendants and Class Members are citizens of different states.

41. The Court also has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367

42. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

**STATEMENT OF FACTS**

43. Social media emerged in the last few years as a main source of information and communication for billions of users.

44. There were an estimated 159 million Instagram users in the United States in 2022.

45. In 2021 the platform engaged over 2 billion monthly users.

46. In the last ten years, Instagram has become one of the most popular ways to influence consumer behavior on social media. Since 2017, Instagram has grown tremendously, adding 100 million users every few months. Around seven-in-ten Americans ages 18 to 29 (71%) say they use Instagram.

47. Given the enormous reach of the social media platforms, and in an effort to curb online behavior that ignores the law and uses the lack of enforcement as an excuse for violating laws across jurisdiction, the FTC has published guidelines for influencers regarding proper advertising practices.

48. Indeed, the rapid growth of social media platforms, including Instagram, lead to a lack of regulation and oversight. Some 80% of social media users said they were concerned about

CLASS ACTION COMPLAINT

advertisers and businesses accessing the data they share on social media platforms, and 64% said the government should do more to regulate advertisers.

49. This results in some unscrupulous "influencers" who are acting as advertisers for hire, making it a habit of posting fake reviews for sponsored products or failing to disclose the fact that they were paid to create the content displayed on their profile. More often than not, these "influencers" would advertise everything from alcohol to cannabinoids, political ideas to illegal giveaways, as long as they are paid the significant amounts they are demanding.

50. According to this business model, a number of carefully selected influencers will pretend to use Celsius products and present this as fact to their social media followers, while being compensated but without disclosing any material relationship with any Celsius entity.

51. Plaintiff and Class Members purchase products such as Celsius at inflated prices, exclusively because of the way the Celsius products are advertised on social media and the misleading content of the advertisement.

52. Despite being handsomely compensated for pretending to drink and promoting Celsius brands, none of the Influencers use the "paid partnership" label suggested by the FTC or buried a small disclosure so it would be almost impossible for a social media user to discern the fact that the post was sponsored.

53. Therefore, the Influencers fail to be compliant with the FTC Act as interpreted by the FTC found in 16 C.F.R. § 255.5 and the FTC guidelines regarding advertising on social media.

54. In fact, many of the Influencers are familiar with the FTC guidelines and properly display the required disclosures when the brands are not willing to pay for them to disguise the advertising.



CLASS ACTION COMPLAINT

Source: https://www.instagram.com/erikawheaton/

55. Plaintiff is "following" all the Influencers on Instagram. Plaintiff's decision to purchase Celsius products and pay a premium for those products was determined by the Influencers she followed, specifically by the Influencers in this case and the fact that they promoted Celsius products.

56. Plaintiff purchased assorted Celsius energy drinks from Costco on 05/17/2023.

57. Plaintiff would not have purchased the Celsius products if she knew that the Influencers were paid to endorse Celsius and that the Influencers' claims were illegal, unfair and misleading.

## THE ADVERTISING

58. Facebook, the parent company of Instagram, offers various products that advertisers can use for commercial use. For example, an advertiser may promote content using a boosted post or an Instagram ad for a price paid directly to Facebook. Both the post and the ad are created by the advertiser that wants to promote a certain message, service, or product. They are clearly marked as advertising by Instagram.

59. The same advertisers can also promote content by directly paying influencers to create a collaboration post. Influencers can also be paid for ads to be posted on the influencer's account, as part of the grid (the pictures and videos displayed for a user when accessing or refreshing an account) or as part of stories (short videos that only show for a limited amount of time and, usually, can only be viewed once). Such collaboration is usually properly disclosed.

60. Another way Instagram allows advertisers to use the platform is by sponsoring independent content generated by the influencers themselves. In this case the influencer should take advantage of the "paid partnership" tag offered by Instagram to show that influencer is compensated to generate this content. A "paid partnership" tag is also a step in maintaining compliance with the Federal Trade Commission's ("FTC") rules and guidelines.

61. Since, at times, Instagram algorithms may spot and remove posts where the "paid

partnership" label is not present, Influencers and CELH are going to great lengths to hide the nature of their partnership.

62. Every time an influencer advertises a product, such advertisement appears in the Instagram feed of everybody following the influencer.

63. The FTC has repeatedly publicized guidelines for influencers regarding proper advertising practices, publishing a plain language interpretation of the FTC Act.

64. As recognized by the FTC, "[c]ompanies that use deceptive endorsements and reviews inflict an injurious double whammy. They harm consumers with misleading tactics that subvert their choices at check-out. And they take business away from honest competitors that work hard to comply with the law."

65. By advertising Celsius products without regards to the disclosure requirements, the Influencers are in violation of 15 U.S.C. § 45(a) and therefore in violation of the "little FTC Act" enacted in California.

66. By instructing and allowing the Influencers to advertise its products without making the proper disclosures, CELH is in violation of 15 U.S.C. § 45(a) and therefore in violation of the "little FTC Acts" enacted in California.

67. Given the fact that Celsius products are endorsed by many of the Influencers she followed, Plaintiff decided to purchase Celsius products only after seeing the undisclosed advertising.

68. Plaintiff and the Class Members purchased Celsius products and paid a premium for them.

**CLASS ALLEGATIONS**

69. Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully re-written herein.

70. Plaintiff asserts the counts stated herein as class action claims pursuant to Fed. R. Civ. Pro. 23.

71. Plaintiff is filing this lawsuit on behalf of all persons that purchased Celsius products relying on misleading marketing practices and Influencers from January 15, 2021, to present ("Class Period").

72. Plaintiff is a citizen of California and seeks to represent two classes composed of and defined as follows:

73. Nationwide Class: All consumers that purchased Celsius products in the United States.

74. California Subclass: All consumers, residents of California, who purchased Celsius products in the United States

75. Collectively the members of the Nationwide Class and all Subclasses shall be referred to as "Class Members"

76. The classes exclude counsel representing the class, governmental entities, Defendants, any entity in which Defendants have a controlling interest, Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

77. Plaintiff reserves the right to amend or modify the class descriptions with greater particularity or further division into subclasses or limitation to particular issues.

78. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 ("Rule 23") because it is a well-defined community of interest in the litigation and the class is readily and easily ascertainable.

79. <u>Numerosity</u>: At least one million consumers have been injured by Defendants' deceptive marketing practices, including the named Plaintiff. At least one million consumers have purchased Celsius products and paid a premium for it in reliance on the Defendants' misrepresentations.

80. Each of the classes represented by the named Plaintiff has at least one million members and the joinder of all members is impracticable.

81. <u>Typicality</u>: Plaintiff's story and his claims are typical for the class and, as the named Plaintiff is aware of other persons in the same situation. Plaintiff and the members of each class sustained damages arising out of Defendants' illegal course of business.

82. <u>Commonality</u>: Since the whole class purchased Celsius products and such products are promoted by the Defendants, the questions of law and fact are common to the class.

83. <u>Adequacy</u>: Dubreu will fairly and adequately protect the interests of each class she represents.

84. <u>Superiority</u>: As questions of law and fact that are common to class members predominate over any questions affecting only individual members, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**VIOLATIONS OF 15 U.S.C. § 45(a)**
(not pled as an independent cause of action)

85. By failing to disclose their material connection with the brand, the Influencers are in violation of 15 U.S.C. § 45(a).

86. By failing to mandate and enforce disclosure of material connections with the Influencers, CELH is in violation of 15 U.S.C. § 45(a).

87. The violations of the 15 U.S.C. § 45(a) are not pled as an independent cause of action, but as an element of one or more of the causes of action detailed in this Complaint.

**COUNT I:**
**VIOLATION OF THE CONSUMERS LEGAL REMEDY ACT.**
**CAL. CIV. CODE. §§ 1750, ET SEQ.**

88. Plaintiff incorporates by reference paragraphs 1-87 of this Complaint as if fully re-written herein. Plaintiff asserts this Count I on her own behalf and on behalf of the Nationwide Class, and California Subclass, as defined above, and pursuant to Fed. R. Civ. Pro. 23.

89. Defendants are each a "person" within the statutory meaning of Cal. Civ. Code § 176l(c).

90. Defendants provided "goods" within the meaning of Cal. Civ. Code §§ 1761(a), 1770.

91. Plaintiff and Class Members of the Nationwide Class and California Subclass are "consumers" within the meaning of Cal. Civ. Code §§ l76l(d), 1770, and have engaged in a "transaction" within the meaning of Cal. Civ. Code §§ 1761(e), 1770.

92. As set forth herein, Defendants' acts and practices, undertaken in transactions violate §1770 of the Consumers Legal Remedies Act in that:

93. Defendants misrepresented the source, sponsorship, approval, or certification of the goods or services.

94. Defendants misrepresented the affiliation, connection, or association with, or certification by another.

95. Defendants represented that the goods or services have approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; and

96. Defendants advertised goods or services with intent not to sell them as advertised.

97. Pursuant to the provision of Cal. Civ. Code §1780, Plaintiff seeks an order enjoining Defendants from the unlawful practices described herein, a declaration that Defendants' conduct violates the Consumers Legal Remedies Act, and attorneys' fees and costs of litigation.

**COUNT II:**
VIOLATIONS OF CALIFORNIA'S UNLAWFUL BUSINESS PRACTICES ACT,
CAL. BUS. & PROF. CODE § 17200. ET. SEQ
(On behalf of Plaintiff and the Nationwide Class)

98. Plaintiff incorporates by reference paragraphs 1-87 of this Complaint as if fully re-written herein. Plaintiff asserts this count on his own behalf and on behalf of the Nationwide Class and California Subclass, as defined above, and pursuant to Fed. R. Civ. Pro. 23.

99. The conduct that forms the basis of this action arose in California, the state in which Celsius sells a variety of products.

**Unfair And Fraudulent Competition**

100. Defendants have engaged in unfair competition within the meaning of Cal. Bus. & Prof. Code §§17200, et seq., because Defendants' conduct is unlawful, unfair, and/or fraudulent, as herein alleged.

101. Plaintiff, the Class Members, and Defendants are each a "person" or "persons" within the meaning of § 17201 of the California Unfair Competition Law ("UCL").

102. Defendants promoted and advertised ALO products without properly disclosing their financial interest and such acts and practices constitute deceptive acts or practices in violation of Section 5(a) of 15 U.S.C. § 45(a).

103. A violation of Section 5(a) of 15 U.S.C. § 45(a) represents a per se violation of the California Unfair Competition Law ("UCL").

CLASS ACTION COMPLAINT

104. In the alternative, failure to disclose paid sponsorships and endorsements represents conduct that violates California Unfair Competition Law ("UCL").

### Unlawful Competition

105. The UCL is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies. Plaintiff hereby incorporates by reference all prior causes of action into this cause of action.

### Violations of Advertising Law

106. By making statements that are not true and statements that are misleading, Defendants are in violation of California False Advertising Law, Cal. Civ. Code. §§ 17500, ET SEQ.

107. "'[A]ny violation of the false advertising law . . . necessarily violates the UCL.'" (Kasky, supra, 27 Cal.4th at p. 950.) Section 17500 "proscribe[s] '"not only advertising which is false but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."' [Citation.]" (Colgan v. Leatherman Tool Group, Inc. (2006) 135 Cal.App.4th 663, 679.)

108. Plaintiff and the Nationwide Class Members and California Subclass Members request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and Class Members any monies Defendants acquired by unfair competition, including restitution and/or equitable relief, including disgorgement or ill-gotten gains, refunds of monies, interest, reasonable attorneys' fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

109. Plaintiff and Class Members seek attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

### COUNT III:
### UNJUST ENRICHMENT
(On behalf of Plaintiff and the Nationwide Class)

110. Plaintiff incorporates by reference paragraphs 1-87 of this Complaint as if fully rewritten herein. As set forth above, Plaintiff asserts this Count III on her own behalf and on behalf

of all other similarly situated Class Members.

111. By paying the high prices demanded by CELH, Plaintiff and Class Members conferred a direct benefit to all the Defendants.

112. Instagram users that are members of the class continue to suffer injuries as a result of the Defendants' behavior. If the Defendants do not compensate Plaintiff and Class Members, they would be unjustly enriched as a result of their unlawful act or practices.

113. It is an equitable principle that no one should be allowed to profit from his own wrong, therefore it would be inequitable for the Defendants to retain said benefit, reap unjust enrichment.

114. Under California law, one person should not be permitted to unjustly enrich himself at the expense of another and should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution is made.

115. Since the Defendants unjustly enriched themselves at the expense of the Instagram users, members of the Nationwide Class, Plaintiff requests the disgorgement of these ill-gotten money.

116. Due to Defendants' conduct, Plaintiff and the Class Members are entitled to damages according to proof.

**COUNT IV:**
NEGLIGENT MISREPRESENTATION
(On behalf of Plaintiff and the Nationwide Class)

117. Plaintiff incorporates by reference all paragraphs 1-87 of this Complaint as if fully rewritten herein. As set forth above, Plaintiff asserts this count on his own behalf and on behalf of all other similarly situated persons pursuant to Fed. R. Civ. Pro. 23.

118. Defendants had a duty to be truthful in their commercial speech. In convincing Plaintiff to purchase Celsius products, Defendants made representations and endorsements that they knew to be false or negligently failed to examine the veracity of the affirmations.

119. As a result of Defendants' negligent misrepresentations, Plaintiff the Nationwide Class Members and the California Subclass Members suffered injury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, MARIANA DUBREU, respectfully request that this Court enter

judgment in her favor and in favor of those similarly situated, as follows:

1. Certifying and maintaining this action as a class action, with the named Plaintiff as designated class representative and with her counsel appointed as class counsel;

2. A declaration that Defendants are in violation of each of the Counts set forth above;

3. Award Plaintiff and those similarly situated statutory, compensatory, and treble damages;

4. Award Plaintiff and those similarly situated liquidated damages;

5. Order the disgorgement of illegally obtained monies;

6. Award the named Plaintiff a service award;

7. Award attorneys' fees and costs; and

8. Grant such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial of the claims asserted in this Class Action Complaint.

Dated: January 22, 2024

Respectfully submitted,

/s/ William M. Aron
William M. Aron (SBN No. 234408)
**ARON LAW FIRM**
15 West Carrillo Street, Suite 217
Santa Barbara, CA 93101
Tel: (805) 618-1768
bill@aronlawfirm.com

Keith L. Gibson (*Pro Hac Vice* forthcoming)
KEITH GIBSON LAW, P.C.
586 Duane Street, Suite 102
Glen Ellyn, IL 60137
Telephone: (630) 677-6745
Email: keith@keithgibsonlaw.com

Bogdan Enica (*Pro Hac Vice forthcoming*)
KEITH GIBSON LAW, P.C.
1200 N Federal Hwy, Ste.300
Boca Raton FL 33432
Telephone: (305) 306-4989
Email: bogdan@keithgibsonlaw.com

*Counsel for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT