RACHEL E. K. LOWE (Cal. Bar No. 246361)
rachel.lowe@alston.com
BROOKE H. BOLENDER (Cal. Bar No. 340689)
brooke.bolender@alston.com
**ALSTON & BIRD LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100

EMMA BRADEN (Cal. Bar No. 359591)
emma.braden@alston.com
**ALSTON & BIRD LLP**
55 Second Street, Suite 2100
San Francisco, CA 94105
Telephone: (415) 243-1000
Facsimile: (415) 243-1001

JOE TULLY (*Pro Hac Vice* application forthcoming)
joe.tully@alston.com
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016-1387
Telephone: (212) 210-9522
Facsimile: (212) 922-3873

Attorneys for Defendants
**CELSIUS HOLDINGS INC., CELSIUS INC.,
ERIKA WHEATON, DEVON WINDSOR, AND EMILY TANNER**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIANA DUBREU, individually and on behalf of all those similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>CELSIUS HOLDINGS INC., a/k/a CELSIUS PRODUCTS HOLDINGS INC., DEVON WINDSOR, ERIKA WHEATON, and EMILY TANNER,<br><br>       Defendants. | Case No.: 5:25-cv-00180-MRA-SP<br><br>Hon. Monica Ramirez Almadani<br>Courtroom 10B<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT OR, IN THE ALTERNATIVE TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*Filed concurrently with Declarations of Suzanne Goldberg, Emily Tanner, Devon Windsor, Erika Wheaton, and Brooke Bolender; Request for Judicial Notice; and (Proposed) Order*<br><br>Date:    July 14, 2025<br>Time:    1:30 p.m.<br>Courtroom:   10B<br><br>Complaint filed: January 22, 2025 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO ALL INTERESTED PARTIES:**

PLEASE TAKE NOTICE that on July 14, 2025, at 1:30 p.m. in the Courtroom for the Honorable Monica Ramirez Almadani, 350 W. First Street, Courtroom 10B, Los Angeles, CA 90012, or as soon thereafter as this matter may be heard, Defendants Celsius Holdings, Inc., Celsius, Inc., Erika Wheaton, Devon Windsor, and Emily Tanner ("Defendants") will and hereby do move the Court pursuant to Federal Rules of Civil Procedure ("FRCP"), Rules 8(a), 9(b), 12(b)(1), (2), and (6) for an order dismissing each claim and demand for relief asserted by Plaintiff Mariana Dubreu ("Plaintiff"), individually and on behalf of all those similarly situated, in the Complaint, ECF No. 1 or, in the alternative, move the Court pursuant to 28 U.S.C. § 1404(a) for a transfer of this action to the more convenient venue of the Southern District of Florida. This Motion is made on the following grounds:

*First*, Plaintiff's Complaint should be dismissed under Federal Rules of Civil Procedure ("FRCP"), Rule 12(b)(2) because there is no general or specific personal jurisdiction over the Florida Defendants—Celsius Holdings, Inc., Celsius, Inc., Erika Wheaton, and Devon Windsor. Alternatively, under 28 U.S.C. § 1404(a), this Court should transfer this entire action to the venue of the Southern District of Florida because that represents the more convenient forum.

*Second*, Plaintiff's Complaint should be dismissed under FRCP 12(b)(1) because Plaintiff lacks Article III standing.

*Third*, Plaintiff's Complaint should be dismissed because she fails to meet FRCP 9(b)'s heightened pleading standard and the Complaint violates Rule 8.

*Fourth*, the Complaint should be dismissed under FRCP 12(b)(6) because Plaintiff fails to state a claim on which relief can be granted. Despite alleging claims for violations of California's consumer protection statutes (the Consumers Legal Remedies Act and the Unfair Competition Law), negligent misrepresentation, and for unjust enrichment, Plaintiff does not identify a single advertisement, representation, or omission by any Defendant that she saw before buying Celsius products. Plaintiff fails to plead facts establishing elements of her various statutory, common law, and equitable causes of action, thereby failing to state a claim for relief.

1

1        For any or all of these reasons, the Court should dismiss this action. In the alternative, the

2   Court should transfer this action to the more convenient venue of the Southern District of Florida.

3        As set forth in the accompanying Declaration of Brooke Bolender, this Motion is made

4   following the telephonic conference of counsel pursuant to L.R. 7-3, which took place on May 5,

5   2025. The Parties were not able to reach an agreement, necessitating this Motion.

6        This Motion is based upon this Notice of Motion and Motion; the supporting Memorandum

7   of Points and Authorities; the Request for Judicial Notice; the Declarations of Suzanne Goldberg,

8   Devon Windsor, Erika Wheaton, Emily Tanner, and Brooke Bolender; the papers and pleadings

9   on file in this matter; and any such other written or oral argument as may be presented prior to or

10   at the time of the hearing on this matter.

11

12   DATED: May 12, 2025           RACHEL E. K. LOWE
JOE TULLY

13                        BROOKE H. BOLENDER
EMMA BRADEN

14                        **ALSTON & BIRD LLP**

15

16                        */s/ Rachel E. K. Lowe*

17                        Rachel E. K. Lowe
Attorneys for Defendants

18                        **CELSIUS HOLDINGS, INC., CELSIUS, INC.,
ERIKA WHEATON, DEVON WINDSOR, AND**

19                        **EMILY TANNER**

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................1

II.     SUMMARY OF ALLEGATIONS ........................................................2

III.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (FRCP 12(b)(2))...............................................................................................4

    A.    The Florida Defendants Are Not Subject to General Jurisdiction...........................5

    B.    The Florida Defendants Are Not Subject to Specific Jurisdiction. ...........................5

        1.    The Florida Defendants Did Not Purposefully Direct Activities at California Residents. ....................................................6

        2.    Plaintiff's Claims Do Not Arise Out of the Florida Defendants' Forum-Related Contacts. ..............................................9

        3.    Subjecting the Florida Defendants to Suit in California Offends Notions of Fair Play and Substantial Justice.................................11

IV.     MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))................................12

    A.    Venue Is Proper in the Southern District of Florida...................................12

    B.    Section 1404(a)'s Factors Supporting Transfer for the Convenience of the Parties and in the Interests of Justice. ...........................................13

        1.    Judicial Economy .......................................................13

        2.    Convenience of the Witnesses .............................................14

        3.    Plaintiff's Counsel is in Florida. .........................................14

    C.    Plaintiff's Choice of Forum Is Not Entitled to Deference. .........................15

V.      MOTION TO DISMISS FOR LACK OF STANDING (FRCP 12(b)(1))......................15

    A.    Plaintiff Has Not Alleged a Fairly Traceable Injury-in-Fact...................................16

    B.    Plaintiff Has No Standing to Seek Injunctive Relief...........................................17

VI.     MOTION TO DISMISS FOR FAILURE TO SATISFY FRCP 9(b) ............................18

VII.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (FRCP 12(b)(6)).................20

    A.    Plaintiff's Entire Complaint Fails Because She Fails to Adequately Plead an Omissions-Based Deception Theory...........................................20

|  | 1. | Plaintiff Fails to Allege a Duty to Disclose.................................................... 20 |
|  | 2. | Plaintiff Does Not Plead an Actionable Omission Because the Purported Omission Is Not Central to the Product's Function. ............................................................................................... 22 |
|  | 3. | Plaintiff's Allegations Fail the "Reasonable Consumer" Test. ............................................................................................. 23 |
| B. | | Plaintiff's UCL and CLRA Claims Fail Because She Lacks Statutory Standing (Counts I & II). ......................................................... 25 |
| C. | | Plaintiff's CLRA Claim Fails For Additional Reasons (Count I). ........................... 26 |
|  | 1. | Defendants Did Not Violate Section 1770(a)(2). ........................................ 27 |
|  | 2. | Defendants Did Not Violate Section 1770(a)(3). ........................................ 27 |
|  | 3. | Defendants Did Not Violate Section 1770(a)(5). ........................................ 27 |
|  | 4. | Defendants Did Not Violate Section 1770(a)(9). ........................................ 28 |
|  | 5. | Plaintiff Does Not Plead Reasonable Reliance. ......................................... 28 |
| D. | | Plaintiff's UCL Claim Fails (Count II). ................................................................ 28 |
|  | 1. | Plaintiff Fails to State a Claim Under the "Unlawful" Prong. ..................... 28 |
|  | 2. | Plaintiff Fails to State a Claim Under the "Unfair" Prong. ......................... 31 |
|  | 3. | Plaintiff Fails to State a Claim Under the "Fraudulent" Prong. ............................................................................................... 32 |
|  | 4. | Plaintiff Fails to Allege Any Basis for Equitable Relief. .............................. 33 |
| E. | | Plaintiff's Unjust Enrichment Claim Fails (Count III)................................................. 33 |
| F. | | Plaintiff's Negligent Misrepresentation Claim Fails (Count IV)................................ 34 |
| VIII. | CONCLUSION................................................................................................. 35 |

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abramson v. Marriott Ownership Resorts, Inc.*,
  155 F. Supp. 3d 1056 (C.D. Cal. 2016) ........................................................ 20

*Adina Design, Inc. v. Adina's Jewels, Inc.*,
  2018 WL 6427364 (C.D. Cal. Nov. 29, 2018) ............................................ 4, 8, 10

*Alani Nutrition, LLC v. Ryse Up Sports Nutrition, LLC*,
  2024 WL 148969 (N.D. Ill. Jan. 12, 2024) .......................................... 6, 8, 9, 10

*Alin Pop v. Beach Bunny Swimwear Inc. et al.*,
  No. 2:25cv4085 (C.D. Cal.) .......................................................................... 14, 34

*Alin Pop v. Jaxxon, LLC*
  No. 8:25-cv-00311-SVW-ADS (C.D. Cal.) .................................................... 14

*Allen v. Woodford*,
  2006 WL 1748587 (E.D. Cal. June 26, 2006) ................................................ 34

*Amba Marketing Systems, Inc. v. Jobar Int'l, Inc.*,
  551 F.2d 784 (9th Cir. 1977) .......................................................................... 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................ 20

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) ...................................................................... 33, 34

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
  874 F.3d 1064 (9th Cir. 2017) ........................................................................ 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................ 20

*Bengoechea et al v. Roadget Business PTE., Ltd. d/b/a Shein et al.*,
  No. 1:25-cv-01402 (N.D. Ill.) ........................................................................ 14

*BMA LLC v. HDR Glob. Trading Ltd.*,
  2021 WL 4061698 (N.D. Cal. Sept. 7, 2021) ............................................ 22, 30

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008) .................................................................... 6, 10

*Bragg Live Food Prods., LLC v. Nat'l Fruit Prod. Co.*,
   2022 WL 3574423 (C.D. Cal. July 22, 2022) ...................................................26

*Briskin v. Shopify, Inc.*,
   _ F.4th _, 2025 WL 1154075 (9th Cir. Apr. 21, 2025) ................................. 6, 7, 12

*Bristol-Myers Squibb Co. v. Super. Ct.*,
   582 U.S. 255 (2017) ...................................................................................4, 5

*Cattie v. Wal-Mart Stores, Inc.*,
   504 F. Supp. 2d 939 (S.D. Cal. 2007) ..............................................................28

*Chulick-Perez LLC v. CarMax Auto Superstores Cal.*,
   2014 WL 2154479 (E.D. Cal. May 20, 2014) ....................................................18

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)........................................................................................17

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
   911 F.2d 242 (9th Cir. 1990) ..........................................................................24

*Corcoran v. CVS Health Corp.*,
   169 F. Supp. 3d 970 (N.D. Cal. 2016).............................................................21

*Cybersell, Inc. v. Cybersell, Inc.*,
   130 F.3d 414 (9th Cir. 1997) ........................................................................... 6

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ....................................................................................... 5

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ..........................................................................17

*Davis v. Abbott Labs*,
   562 F. Supp. 3d 585 (C.D. Cal. 2021)..............................................................18

*Doe v. CVS Pharm., Inc.*,
   982 F.3d 1204 (9th Cir. 2020), *cert. granted in part*, 141 S. Ct. 2882 (2021), *cert.
   dismissed*, *CVS Pharmacy, Inc. v. Doe, One*, 142 S. Ct. 480
   (2021) ............................................................................................... 31, 32

*Doe v. SuccessfulMatch.com*,
   70 F. Supp. 3d 1066 (N.D. Cal. 2014)..............................................................16

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ..........................................................................24

*Edwards v. Marin Park, Inc.*,
356 F.3d 1058 (9th Cir. 2004) ...........................................................................18

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ....................................................................15, 26

*Express, LLC v. Fetish Grp., Inc.*,
464 F. Supp. 2d 965 (C.D. Cal. 2006).............................................................33

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) .........................................................................................11

*FTC v. Garvey*,
383 F.3d 891 (9th Cir. 2004) ...........................................................................21

*Goudie v. Wells Fargo Bank, N.A.*,
2015 WL 12803765 (C.D. Cal. June 8, 2015) .................................................33

*Hall v. Marriott Int'l, Inc.*,
344 F.R.D. 247 (S.D. Cal. 2023)......................................................................35

*Hanson v. Denckla*,
357 U.S. 235 (1958) .........................................................................................12

*Henderson v. Gruma Corp.*,
2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) .................................................24

*Herremans v. BMW of N. Am., LLC*,
2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) ...................................................26

*Hodges v. Apple Inc.*,
2013 WL 6698762 (N.D. Cal. Dec. 19, 2013)..................................................22

*Hodsdon v. Mars, Inc.*,
162 F. Supp. 3d 1016 (N.D. Cal. 2016) ...............................................21, 22, 23

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*,
485 F.3d 450 (9th Cir. 2007) ...........................................................................10

*In re Boon Glob. Ltd.*,
923 F.3d 643 (9th Cir. 2019) .............................................................................9

*In re Plum Baby Food Litig.*,
2024 U.S. Dist. LEXIS 56920, 2024 WL 1354447 ..........................................23

*In re Sequoia Benefits & Ins. Data Breach Litig.*,
  2024 WL 1091195 (N.D. Cal. Feb. 22, 2024)................................................32

*In re Theos Dark Chocolate Litig.*,
  750 F. Supp. 3d 1069 (N.D. Cal. 2024) ....................................................23

*Johansson v. Cent. Garden & Pet Co.*
  (N.D. Cal. Dec. 2, 2010)....................................................................14

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ............................................................18

*Lanovaz v. Twinings N. Am., Inc.*,
  726 F. App'x 590 (9th Cir. 2018) .......................................................17

*Ligia Negreanu v. Revolve Group, Inc. et al*,
  No. 2:25-cv-03186-MWC-E (C.D. Cal.)................................................14

*Lorentzen v. Kroger Co.*,
  532 F. Supp. 3d 901 (C.D. Cal. 2021) ............................................. 16, 17

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ..........................................................................15

*Marcus v. Apple Inc.*,
  2015 WL 151489 (N.D. Cal. Jan. 8, 2015)............................................22

*Martinez v. Ford Motor Co.*,
  2022 WL 14118926 (S.D. Cal. Oct. 24, 2022) .......................................29

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011) .............................................................7

*Metz v. U.S. Life Ins. Co.*,
  674 F. Supp. 2d 1141 (C.D. Cal. Dec. 11, 2009) ...................................14

*Meza v. Procter & Gamble Co.*,
  2023 WL 3267861 (C.D. Cal. Apr. 27, 2023) .......................................13

*MGA Ent., Inc. v. Cabo Concepts Ltd.*,
  2021 WL 4733784 (C.D. Cal. June 7, 2021)...........................................8

*Millam v. Energizer Brands, LLC*,
  2022 WL 19001330 (C.D. Cal. Dec. 9, 2022) .......................................26

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER
Case No. 5:25-cv-00180-MRA-SP

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) ................................................................................. 23, 24

*Naseri v. Greenfield World Trade, Inc.*,
    2021 WL 3511040 (C.D. Cal. Aug. 10, 2021) ............................................................ 26

*O'Donnell v. Bank of Am., N.A.*,
    504 F. App'x 566 (9th Cir. 2013) ............................................................................. 30

*Obesity Rch. Inst., LLC v. Fiber Rch. Int'l, LLC*,
    165 F. Supp. 3d 937 (S.D. Cal. 2016) ....................................................................... 25

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998) ................................................................................... 30

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) ................................................................................. 5, 7

*Puri v. Khalsa*,
    674 F. App'x 679 (9th Cir. 2017) (unpublished) ........................................................ 18

*Rahman v. Mott's Ltd. Liab. P'ship*,
    2014 U.S. Dist. LEXIS 11767 (N.D. Cal. Jan. 29, 2014) ....................................... 17, 19

*Randles v. Nationstar Mortg., LLC*,
    2024 WL 1855720 (E.D. Cal. Apr. 25, 2024) ................................................ 12, 13, 14, 15

*Ritz Fuente, LLC v. Schafer*,
    2024 WL 3746264 (S.D. Cal. Aug. 9, 2024) ............................................................... 6, 9

*Schroeder v. United States*,
    569 F.3d 956 (9th Cir. 2009) ................................................................................... 33

*Sec. Alarm Fin. Enters., Ltd. P'ship v. Nebel*,
    200 F. Supp. 3d 976 (N.D. Cal. 2016) .................................................................... 6, 7, 9

*Silver v. BA Sports Nutrition, LLC*,
    2020 U.S. Dist. LEXIS 99320 (N.D. Cal. June 4, 2020) ............................................... 28

*Simoni v. Hi-Tech Pharmaceuticals Inc. et al.*,
    No. 1:25-cv-00795 (N.D. Ill.) ................................................................................. 14

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ................................................................................... 33

*Sulici et al v. Color Image Apparel d/b/a Alo Yoga et al.*,
No. 1:25-cv-03928 (N.D. Ill.) ........................................................................ 14

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ...................................................................................... 16

*Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools*,
673 F. Supp. 3d 1083 (N.D. Cal. 2023) ........................................................ 25

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ................................................................................ 15, 17

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .................................................................. 18, 20

*Walden v. Fiore*,
571 U.S. 277 (2014) ........................................................................................ 4

*Warren v. Fox Family Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003) ...................................................................... 20

*Werbel v. Pepsico, Inc.*,
2010 U.S. Dist. LEXIS 76289 (N.D. Cal. Jul. 2, 2010) ................................ 24

*Williams v. Apple, Inc.*,
449 F. Supp. 3d 892 (N.D. Cal. 2020) .......................................................... 18

*Williamson v. Apple, Inc.*,
2012 WL 3835104 (N.D. Cal. Sept. 4, 2012) ................................................ 28

*Willis v. Buffalo Pumps Inc.*,
34 F. Supp. 3d 1117 (S.D. Cal. 2014) ........................................................... 22

*Wilson v. Hewlett–Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) ...................................................................... 22

*Wisdom v. Easton Diamond Sports, LLC*,
2018 WL 6264994 (C.D. Cal. Oct. 9, 2018) ................................................. 17

**STATE CASES**

*Byrum v. Brand*,
219 Cal. App. 3d 926 (1990) .................................................................. 23, 35

*Daugherty v. Am. Honda Motor Co., Inc.*,
144 Cal. App. 4th 824 (2006) ....................................................................... 20

*Hartford Casualty Ins. v. J.R. Marketing, LLC*,
    61 Cal. 4th 988 (2015)............................................................................34

*Huber, Hunt & Nichols, Inc. v. Moore*,
    67 Cal. App. 3d 278 (1977).....................................................................35

*Huijers v. Demarrais*,
    11 Cal. App. 4th 676 (1992)....................................................................30

*Janis v. Cal. State Lottery Comm'n*,
    68 Cal. App. 4th (1998)...........................................................................30

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011)............................................................................25

*Lavie v. Proctor & Gamble Co.*,
    105 Cal. App. 4th 496 (2003)..................................................................24

*LiMandri v. Judkins*,
    52 Cal. App. 4th 326 (1997)....................................................................21

*Meyer v. Sprint Spectrum L.P.*,
    45 Cal. 4th 634 (2009)............................................................................25

*Rivelli v. Hemm*,
    67 Cal. App. 5th 380 (2021)....................................................................10

*Roman v. Liberty Univ., Inc.*,
    162 Cal. App. 4th 670 (2008)....................................................................9

*Rubenstein v. The Gap, Inc.*,
    14 Cal. App. 5th 870 (2017)....................................................................20

*Rutherford Holdings, LLC v. Plaza Del Rey*,
    223 Cal. App. 4th 221 (2014)..................................................................33

*Shamsian v. Atlantic Richfield Co.*,
    107 Cal. App. 4th 967 (2003)..................................................................35

**FEDERAL STATUTES**

15 U.S.C. § 45(a)..........................................................................................31

28 U.S.C. § 1404(a) ................................................................1, 12, 13, 15

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17500 .................................................................................................29

Cal. Civ. Code § 1710(2) .............................................................................................................35

Cal. Civil Code § 1770 ........................................................................................................ 27, 28

Cal. Civ. Code § 1780(a) .............................................................................................................25

Cal. Civ. Proc. Code § 410.10 ...................................................................................................... 4

Cal. Consumers Legal Remedies Act, Civil Code §§ 1750 et seq. ............................................... 4

Cal. Unfair Competition Law, Business and Professions Code §§ 17200 et seq. ............. *passim*

Fla. Stat. § 48.193(1)(a)(9) .........................................................................................................13

**RULES**

FRCP 8(a) ................................................................................................................................2, 19

FRCP 9(b) ...................................................................................................................2, 18, 19, 27

FRCP 12(b)(1) .............................................................................................................................15

FRCP 12(b)(2) .............................................................................................................................. 4

FRCP 12(b)(6) .............................................................................................................................20

**REGULATIONS**

16 C.F.R. Chapter 1 ....................................................................................................................22

16 C.F.R. § 255.1 ........................................................................................................................32

16 C.F.R. § 255.1(a) ....................................................................................................................31

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This case has nothing to do with what is on the label or inside the can, or even what is on any point-of-sale display for Celsius's popular beverage products. In fact, Plaintiff fails to identify *any* affirmative statements by Defendants Celsius Holdings, Inc., Celsius, Inc. (the "Celsius Defendants"), and three social media influencers, Devon Barbara (aka Devon Windsor), Emily Tanner, and Erika Wheaton (the "Influencer Defendants") that deceived her. Instead, Plaintiff takes issue with social media posts about Celsius that allegedly failed to sufficiently disclose that the influencers were paid for their posts. Setting aside that no reasonable consumer would have been misled by the Instagram posts in the Complaint (which Plaintiff never actually alleges she saw or relied on), and that there is no common exposure to them, Plaintiff tries to sue on behalf of a nationwide putative class of all Celsius purchasers. While Plaintiff complains that these three Instagram posts supposedly did not comply with revised FTC Endorsement Guidelines because they allegedly did not use "#ad" and instead said "#Celsiusofficial," the Guidelines were issued in July 2023—*after* Plaintiff had made her alleged Celsius purchase—which undermines her entire theory of liability. Plaintiff's suit, which is a copycat of suits brought by the same counsel and rejected by other courts, suffers from a host of problems.

***One***, this case does not belong in this Court because it lacks jurisdiction over Florida defendants Celsius Holdings, Inc., Celsius, Inc., Devon Windsor, and Erika Wheaton. Alternatively, Defendants move to transfer this entire case pursuant to 28 U.S.C. § 1404(a).

***Two***, Plaintiff lacks standing. She does not and cannot allege fairly traceable injury-in-fact nor a threat of future injury that would warrant injunctive relief. Plaintiff alleges she paid a "premium" to Costco (a wholesale retailer) for Celsius products because of social media posts that supposedly did not disclose that the posters were paid Celsius endorsers. But without identifying the specific posts she saw and relied on prior to purchase, Plaintiff, who claims the products were somehow "inferior," cannot show that her purported injury is traceable to any alleged misconduct by Defendants. She likewise cannot show a threat of future injury to establish standing for injunctive relief: she never alleges that she will or plans to buy Celsius products ever again, nor

does she allege she will even be exposed to the unidentified social media posts again. Without fairly traceable injury-in-fact, there is no wrong to be righted by this Court.

*Three*, Plaintiff's entire Complaint sounds in fraud yet fails to satisfy FRCP 9(b). She claims Defendants engaged in fraudulent and deceptive marketing practices through their sponsored social media posts. But Plaintiff never alleges *what* misrepresentations or omissions she saw, or *when* or *how* she saw them. Plaintiff cites three Instagram posts, *see* Compl. ¶¶ 34–36, but tellingly fails to allege that *she* ever viewed and relied on them prior to purchase. Plaintiff's Complaint is also a lump pleading that violates FRCP 8(a) by grouping together "Defendants." The Complaint is devoid of almost *any* independent allegations against the five named Defendants, leaving them to wonder *who* is responsible for *what* alleged misconduct. This is fatal to every single one of Plaintiff's claims, all of which sound in fraud.

*Four*, Plaintiff fails to state any claim against each of the Defendants. Plaintiff does not identify a single advertisement, representation, or omission by any Defendant that she saw before buying Celsius products. She nevertheless purports to represent every Celsius consumer in the nation, irrespective of whether they viewed any of the Instagram posts Plaintiff features in her Complaint or the unidentified posts she claims she saw before purchasing Celsius. Under even the most charitable view, Plaintiff alleges nothing more than vague, nonactionable puffery. The Complaint is nothing more than lawyer-driven arguments cobbled together with copy-and-paste template allegations. Plaintiff cannot satisfy the elements of her various statutory, common law, and equitable causes of action, thereby failing to state a claim for relief.

For any or all of these reasons, the Court should dismiss this action, or alternatively, transfer this action to the more convenient venue of the Southern District of Florida.

## II.    <u>SUMMARY OF ALLEGATIONS</u>

Plaintiff filed this putative class action against the Celsius Defendants and the Influencer Defendants. The Celsius Defendants, Windsor, and Wheaton are residents of Florida. *See* Compl. ¶¶ 31, 32, 34, 36. Only Tanner is a resident of California. *See id.* ¶ 35.

Plaintiff lumps Celsius Holdings, Inc. and Celsius, Inc. together as "Celsius" throughout her Complaint, and, aside from her jurisdictional allegations, *see* Compl. ¶¶ 31, 32, she makes no

independent substantive allegations about either. Indeed, rather than plead facts, as she must, she concedes she has no clue what each Celsius Defendant did, if anything. *See id.* ¶ 33 ("Discovery will reveal the precise responsibilities and roles of each of the CELH entities in connection with the allegations in the Complaint."). This is reason alone to dismiss them.

Plaintiff claims she "saw Celsius products being consumed by some of the Instagram influencers she followed, which led to her purchasing Celsius products." Compl. ¶ 23. Plaintiff asserts that she paid an unquantified "premium" for Celsius products, which were of "an inferior quality compared with the expectations Plaintiff had." *Id.* But Plaintiff identifies no challenged representations about the "quality" of the products she purchased by any Defendant. Plaintiff does not claim that the Influencer Defendants made any statements about the quality of Celsius products that were untrue.[1] While Plaintiff alleges that the Influencer Defendants were passing off Celsius social media posts as their "honest opinions" without disclosing that it was paid advertisement, Plaintiff never alleges what those "opinions" were. *See* Compl. ¶ 19. To the contrary, the three posts featured in Plaintiff's Complaint are devoid of any stated "opinion" about Celsius—instead, these posts merely show each influencer holding a can of Celsius, tagging the official Celsius Instagram account, and then including hashtags such as #CELSIUSLiveFit or #celsiusbrandpartner. *See, e.g.*, *id.* ¶¶ 34–36.

Even ascribing the most charitable read of the Complaint, Plaintiff alleges, at most, that the Influencer Defendants represented that they "consum[ed] Celsius while mentioning the name of the brand and posting the brand's tag in their social media post." Compl. ¶ 22. As a result, Plaintiff claims that she could not "discern the fact that those posts were paid posts, rather than organic, honest recommendations, and candid endorsements by the Influencers." *Id.* ¶ 24.

While Plaintiff mentions three Instagram posts by the Influencer Defendants that feature Celsius products, she tellingly fails to allege that she ever relied on or even viewed these posts

---

[1] Plaintiff includes an entirely irrelevant, improper, and incorrect allegation that Celsius was "banned by the National Collegiate Athletic Association due to it containing Ginseng, guarana, L-carnitine, and taurine, all of which are on the NCAA banned substances list and its suitability for being consumed prior or during exercise is questionable, at best." Compl. ¶ 11. Regardless of the fact that Celsius is not, in fact, banned by the NCAA and regularly works with NCAA student athletes, this Court should ignore this allegation because it has nothing to do with Plaintiff's claims. Plaintiff never alleges she encountered or relied on any representation relating to these ingredients or that she relied on any such statements.

before she purchased Celsius at Costco on May 17, 2023. *See* Compl. ¶ 56. Plaintiff apparently claims that she relied on "the fact that [the Influencer Defendants] promoted Celsius products," but never actually alleges that she viewed the specific posts she cites in her Complaint. *Id.* ¶ 24. Plaintiff claims she would not have purchased Celsius "if she knew that the Influencers were paid to endorse Celsius and that the Influencers' claims were illegal, unfair and misleading." *Id.* ¶ 57. As shown below, courts, including the Ninth Circuit, have rejected these kinds of bare allegations that would not plausibly deceive a reasonable consumer.

Plaintiff brings causes of action for (1) violation of the California Consumers Legal Remedies Act, Civil Code sections 1750 et seq. (the "CLRA"); (2) violation of the California Unfair Competition Law, Business and Professions Code sections 17200 et seq. (the "UCL"); (3) unjust enrichment; and (4) negligent misrepresentation. *See* Compl. ¶¶ 88–119. Plaintiff seeks damages, injunctive relief, restitution, and attorneys' fees and costs. *See id.*, Prayer. Despite the limited exposure of the supposed Celsius-related Instagram posts by the Influencer Defendants and the fact that they only pertained to a subset of Celsius products, Plaintiff seeks to represent a class of "all persons that purchased Celsius products relying on [undefined] misleading marketing practices and Influencers from January 15, 2021, to present." *Id.* ¶ 71.

### III.    <u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (FRCP 12(b)(2))</u>

Plaintiff fails to meet her burden to establish personal jurisdiction over Celsius Holdings, Inc., Celsius, Inc., Devon Windsor, and Erika Wheaton (the "Florida Defendants") because they are not subject to either general or specific jurisdiction in California.

A defendant sued in California is only subject to personal jurisdiction if it comports with the requirements of the Due Process Clause. *See Walden v. Fiore*, 571 U.S. 277, 283 (2014); Cal. Civ. Proc. Code § 410.10. Plaintiff bears the burden of establishing personal jurisdiction over each defendant. *Adina Design, Inc. v. Adina's Jewels, Inc.*, 2018 WL 6427364, at *2 (C.D. Cal. Nov. 29, 2018) (citing *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017)). Plaintiff must establish either general or specific personal jurisdiction. *Bristol-Myers Squibb Co. v. Super. Ct.* ("*BMS*"), 582 U.S. 255, 263 (2017). Plaintiff fails to establish both.

### A.     The Florida Defendants Are Not Subject to General Jurisdiction.

For an individual, general jurisdiction lies where that person is domiciled. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). For a corporation, the "paradigm forum for the exercise of general jurisdiction" is "one in which the corporation is fairly regarded as at home." *Id*. This is where a corporation (1) is incorporated and (2) has its principal place of business. *Id*. at 118.

None of the Florida Defendants are subject to general jurisdiction in California. The Florida Defendants are all domiciled in Florida. Windsor and Wheaton both live and work in Florida. *See* Compl. ¶¶ 34, 36; Windsor Decl. ¶ 2; Wheaton Decl. ¶ 2. Celsius Holdings, Inc. and Celsius, Inc. are Nevada corporations headquartered in Florida. *See id.* ¶¶ 31, 32; Goldberg Decl. ¶ 3. They were not served with process while present in California, nor have they consented to appear here. Plaintiff alleges no conduct by them that took place in California, let alone activities there so "continuous" or "systematic" as to establish general jurisdiction over Celsius outside of Nevada or Florida. *Daimler*, 571 U.S. at 139 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).[2] There is thus no basis for asserting general jurisdiction over the Florida Defendants.

### B.     The Florida Defendants Are Not Subject to Specific Jurisdiction.

Plaintiff cannot establish specific personal jurisdiction over the Defendants by the challenged Instagram posts. Specific jurisdiction requires a nexus between Defendants' concrete activities in the forum state and Plaintiff's alleged injuries. *BMS*, 582 U.S. at 262. Specific jurisdiction only lies where Plaintiff can establish Defendants' sufficient minimum contacts with California. *See Daimler*, 571 U.S. at 126 (citing *Goodyear*, 564 U. S. at 923). The Ninth Circuit employs a three-part analysis: (1) the defendant has "purposefully availed [itself] of the privileges of conducting activities in the forum"; (2) the cause of action arises out of non-resident defendants' forum-related contacts; and (3) exercising jurisdiction over that defendant is fair and reasonable. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). Plaintiff, moreover, may not rest on the bare allegations of the Complaint, but must come forward with facts, by affidavit or

---

[2] In any event, Defendants' counsel has not located a single "exceptional case" in California post-*Daimler* finding general jurisdiction over a company not incorporated or having a principal place of business in California.

otherwise, supporting personal jurisdiction. *Amba Marketing Systems, Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). Plaintiff has not adduced and cannot adduce any competent evidence establishing any of these elements, let alone all three.

### 1. The Florida Defendants Did Not Purposefully Direct Activities at California Residents.

Plaintiff fails to show the Florida Defendants purposefully directed activities at California residents. For this element, courts employ the *Calder* effects test, which requires showing that Defendants "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (citations omitted).

#### a. Celsius Defendants

The only "intentional acts" that Plaintiff alleges involve the Celsius Defendants' alleged relationship with the Influencer Defendants and their Instagram posts. *See* Compl. ¶¶ 20–27. Instagram posts alone, however, do not satisfy the personal direction test. *See, e.g.*, *Ritz Fuente, LLC v. Schafer*, 2024 WL 3746264, at *6 (S.D. Cal. Aug. 9, 2024); *Sec. Alarm Fin. Enters., Ltd. P'ship v. Nebel*, 200 F. Supp. 3d 976, 985 (N.D. Cal. 2016); *Alani Nutrition, LLC v. Ryse Up Sports Nutrition, LLC*, 2024 WL 148969, at *5 (N.D. Ill. Jan. 12, 2024). The Celsius Defendants use brand ambassadors' Instagram posts as passive advertising services; they do not engage in any "interactivity" necessary to satisfy purposeful direction. *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997); Goldberg Decl. ¶ 7. Ninth Circuit courts apply a sliding scale test to determine whether a website is sufficiently interactive to satisfy purposeful direction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008). Under that test, courts have already held that Instagram is a passive website. *See Ritz Fuente*, 2024 WL 3746264, at *6 (Instagram is a passive website because it is not used to directly transact business).

Plaintiff fails to allege "something more" than the existence of Instagram posts to demonstrate that the Celsius Defendants' activities were directed at *California* residents. *See Briskin v. Shopify, Inc.*, _ F.4th _, 2025 WL 1154075, at *8 (9th Cir. Apr. 21, 2025) ("[N]o court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to

jurisdiction.") (citing *Cybersell*, 130 F.3d at 418). When looking for "something more," courts consider the website's "interactivity," the "geographic scope" of the activity, and "individual targeting" of a known forum-based plaintiff. *Briskin*, 2025 WL 1154075, at *9 (finding that knowingly installing tracking software on Californian's devices to collect and sell personal data qualified as "something more"); *see also Pebble Beach*, 453 F.3d at 1158 (holding that a passive website and foreseeable effects, without "something more," are insufficient for personal jurisdiction); *cf. Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011) (finding that the copyrighted photos on defendant's "[website] anticipated, desired, and achieved a substantial California viewer base" as evidenced by the website's "specific focus on" California-centered industries).

Several instructive cases have applied this analysis to Instagram posts. For example, the court in *Nebel* dismissed claims against the defendant for lack of personal jurisdiction because the plaintiff offered no evidence the posts "were in any way directed or targeted at California or a California audience." 200 F. Supp. 3d at 985. The *Nebel* court emphasized that "[n]ot all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed." *Id.* at 985 (quoting *Mavrix Photo*, 647 F.3d at 1231).

Faced with a similar question, the court in *Court of Master Sommeliers v. Pilkey* found it did not have jurisdiction over trademark infringement claims against the defendant because Instagram posts from his personal account did not target California. 2019 WL 9443609, at *6–7 (N.D. Cal. Dec. 9, 2019). To evaluate whether the defendant's posts targeted California, the court focused on the content and context of the posts. Relevant considerations included defendant's username, where the post was made (indicated by a geolocation tag or "geotag"), and the content of the posts (both the hashtags and the topics of the captions). *Id.* at 6. The court found that the defendant's occasional posts about his childhood in California or his California-based employer fell far short of "promoting himself as a sommelier to California in particular." *Id.*

Here, Plaintiff has not alleged any facts or adduced any admissible evidence showing that the Instagram posts in her Complaint expressly targeted a California audience. What's more, two of the three Influencer Defendants do not live in California, and none of their alleged posts about

Celsius were made in California or are about California. *See* Compl. ¶¶ 34–36, Windsor Decl. ¶ 6; Wheaton Decl. ¶ 7. The Celsius Defendants' mere relationship with the Influencer Defendants is also insufficient to establish purposeful direction toward a California audience. Although Plaintiff alleges that one of the influencers, Emily Tanner, lives and works in California, Compl. ¶ 35, courts have rejected the argument that online promotion using social media influencers is sufficient to establish direct targeting, particularly where, like here, only some of the influencers even reside in California. *See Adina Design*, 2018 WL 6427364 at *2 (finding insufficient evidence of purposeful direction based on "[d]efendant's contacts with celebrities and social media influencers . . . , some of whom happen to reside in California"); *MGA Ent., Inc. v. Cabo Concepts Ltd.*, 2021 WL 4733784, at *3 (C.D. Cal. June 7, 2021) (finding use of "social media influencers based in California . . . does not show that [a defendant] expressly targeted California"). Moreover, Tanner, the sole California Defendant, agreed to litigate any disputes over her brand activities for Celsius in Florida, not California. Goldberg Decl. ¶ 13, Ex. A; Tanner Decl. Ex. A.

Online advertising strategy, particularly when the content is unrelated to the forum, does not constitute purposeful direction. As Plaintiff herself admits, Celsius does business worldwide and targets a broad base of consumers. *See* Compl. ¶¶ 31, 32. Celsius works with brand ambassadors to promote its products because of their large Instagram followings to reach consumers in many jurisdictions. Goldberg Decl. ¶ 7. Given the worldwide reach of an Instagram post's audience, Celsius could not reasonably anticipate the alleged harm to California residents arising out of posts that were not related to or targeted at California. *See Alani Nutrition*, 2024 WL 148969, at *5. This is all the more true here, given that Plaintiff does not even identify *what* Instagram posts allegedly caused her harm. *See infra* Section V.A. Since the Complaint does not allege that any of the Celsius Defendants' conduct was purposefully directed at California, Plaintiff has failed to satisfy her jurisdictional burden.

### b.    *Erika Wheaton and Devon Windsor*

Plaintiff likewise fails to allege facts or adduce evidence showing Defendants Wheaton and Windsor had the requisite suit-related contacts with California to satisfy specific jurisdiction. The Complaint vaguely alleges that both were "actively soliciting business in California" and

"transact[ed] business in California and nationwide *over the internet*." Compl. ¶¶ 34, 36 (emphasis added). As an initial matter, Plaintiff cannot rest on these boilerplate allegations—she must come forward with actual facts rebutting Defendants' evidence and establishing jurisdiction over this defendant for this dispute. *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019).

Further, as discussed above, Instagram posts are not used to transact business. *Ritz Fuente*, 2024 WL 3746264, at *6; *Nebel*, 200 F. Supp. 3d at 985; *Alani Nutrition*, 2024 WL 148969, at *5. Plaintiff therefore cannot rely solely on Wheaton's and Windsor's Instagram posts as "evidence" that they transact business in California on Celsius's behalf.

Additionally, activities that take place "over the internet" on passive websites like Instagram, without more deliberate targeting, do not satisfy the purposeful direction standard. *See supra* Section III.B.1.a. Nothing about either Wheaton's or Windsor's accounts or the contents of their Celsius posts is purposefully directed at California. *See Pilkey*, 2019 WL 9443609, at *6–7. Wheaton's only Celsius-related post alleged in Plaintiff's Complaint was in Mexico, *see* Compl. ¶ 36, and all of Wheaton's other historical posted content for Celsius was in Mexico or Florida, Wheaton Decl. ¶¶ 7, 8. Plaintiff's allegations only show that Windsor has posted *once* about Celsius—in July 25, 2022 while in Miami, Florida. *See id.*; Windsor Decl. ¶ 6. That post does not include any hashtags, geotags, or content relating to California. Her alleged sole Celsius-related post, moreover, is just one in 3,848 total posts on Windsor's Instagram account. *See id.* ¶ 5. There are no facts satisfying purposeful direction for either Wheaton or Windsor.

### 2. Plaintiff's Claims Do Not Arise Out of the Florida Defendants' Forum-Related Contacts.

Plaintiff also fails to show that her claims arise out the Florida Defendants' contacts with California (because they do not). "[T]he relatedness requirement is satisfied if 'there is a substantial nexus or connection between the defendant's forum activities and the plaintiff's claim.'" *Roman v. Liberty Univ., Inc.*, 162 Cal. App. 4th 670, 679–80 (2008) (citation omitted). Even when a defendant has contacts with the forum state, "[i]f the operative facts of the allegations of the complaint do not relate to the [defendant's] contacts in this state, then the cause of action does not

arise from that contact such that California courts may exercise specific jurisdiction." *Rivelli v. Hemm*, 67 Cal. App. 5th 380, 399 (2021). There is no such nexus here.

### a.    Celsius Defendants

Plaintiff's only allegations of California-based contacts as to the Celsius Defendants are their (1) sales in California and (2) alleged relationship with Defendant Tanner. *See* Compl. ¶¶ 31, 32, 35. Neither contact is sufficiently connected to Plaintiff's claims. **First**, the Celsius Defendants' sales in California are not a sufficient basis to exercise specific jurisdiction. *See Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) (product sale to a state resident alone is insufficient to establish personal jurisdiction). Plaintiff never even alleges that she bought the "assorted Celsius energy drinks" in California. *See* Compl. ¶ 56. Further, the mere existence of Celsius sales in California is insufficient because Plaintiff's claims relate to Celsius's supposed business relationships *with the Influencer Defendants*, not California or its residents. *See id.* ¶¶ 20–28; *see also Alani Nutrition*, 2024 WL 148969, at *5 (dismissing claims for lack of personal jurisdiction over defendant despite selling products at nationwide retailers in the forum because those sales were unrelated to defendants' allegedly infringing social media posts).

**Second**, Plaintiff's claim does not *arise out of* the Celsius Defendants' connection to Tanner. The Influencer Defendants' Instagram posts, including Tanner's, are publicly available worldwide. Instagram reaches consumers globally, which necessarily includes mostly non-California consumers. *See* Goldberg Decl. ¶ 7; Compl. ¶¶ 43–46. As a result, where each resides is irrelevant to Plaintiff's alleged harm. Even if all of the Influencer Defendants lived and posted in Florida, Plaintiff could still have seen the posts and purchased Celsius products from any nationwide retailer in California. Plaintiff thus fails to show a causal link between Tanner's residence in California and the alleged claims. *See Adina Design*, 2018 WL 6427364, at *2.

Without more activity in California, Plaintiff has failed to establish any causal connection between her claim and Celsius's California-based contacts. Because Plaintiff has not alleged facts showing either purposeful availment or forum-related contacts, her claims against the Florida Defendants should be dismissed for lack of personal jurisdiction. *See Boschetto*, 539 F.3d at 1016

(the "jurisdictional inquiry ends, and the case must be dismissed" if plaintiff fails either prong of the three-part test for specific jurisdiction).

### b.    Erika Wheaton and Devon Windsor

There is no connection between Wheaton or Windsor's alleged conduct (i.e., their Celsius social media posts) and California, so it is not possible for Plaintiff's claims to have a substantial causal nexus with California-based contacts. The location of Wheaton and Windsor's audiences is (1) not relevant for purposeful direction analysis because they are insufficiently related to *Plaintiff's* causes of action and (2) unhelpful, in any event, because Wheaton and Windsor each have a global following on Instagram. *See* Wheaton Decl. ¶ 6; Windsor Decl. ¶ 5. Given the nature of Instagram is that it can reach an audience anywhere, holding otherwise would subject any person posting on Instagram to jurisdiction anywhere. That would be an inequitable result and defy the purpose of personal jurisdiction limits, which is to protect due-process rights by ensuring that a defendant has fair notice that it will be subject to a state's jurisdiction. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021); *Pilkey*, 2019 WL 9443609, at *4 (exerting personal jurisdiction over a nonresident defendant would "offend traditional notions of fair play and substantial justice" where social media posts did not establish purposeful availment). The Court should dismiss claims against Wheaton and Windsor for lack of personal jurisdiction.

### 3.    Subjecting the Florida Defendants to Suit in California Offends Notions of Fair Play and Substantial Justice.

Because Plaintiff has failed to satisfy the first two prongs of the Ninth Circuit's three-part jurisdictional test, the Court can grant the motion to dismiss without further analysis. Nevertheless, even if Plaintiff had met the first two prongs, exercise of personal jurisdiction would still fail because it would be unreasonable and unfair. Whether jurisdiction is reasonable and fair under the Due Process Clause requires the court to balance the following factors:

> (1) [T]he extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Briskin*, 2025 WL 1154075, at *8.

As discussed above, the Florida Defendants did not "interject" themselves into California. They are domiciled in Florida and made decisions regarding social media marketing from Florida. Goldberg Decl. ¶ 14. Nothing in their Instagram marketing activities evinces any intent to target California (or any other state). *See id.* Plaintiff's "unilateral activity . . . cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Further, Plaintiff represents a nationwide class, so the importance of bringing suit in California is minimal. Most importantly, it is far more efficient for Plaintiff to sue in Florida, which has jurisdiction over this matter and where most of the essential witnesses and evidence are located. *See infra* Section IV (requesting 28 U.S.C. § 1404(a) venue transfer).

Plaintiff failed to meet her burden to establish specific jurisdiction. This Court should dismiss this action against the Celsius Defendants, Wheaton, and Windsor.

## IV. MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))

In the alternative, as personal jurisdiction is lacking for four out of five Defendants, the Court should transfer the action to the Southern District of Florida under 28 U.S.C. § 1404(a) if it does not dismiss the case on other grounds. Courts have broad discretion to grant a § 1404(a) transfer to a district where the suit could have been brought for the convenience of the parties and in the interest of justice. *Randles v. Nationstar Mortg., LLC*, 2024 WL 1855720, at *2 (E.D. Cal. Apr. 25, 2024) (citing 28 U.S.C. § 1404(a)). Once a defendant establishes the transferee district is an appropriate forum, courts weigh a number of factors to determine whether, on balance, transfer better serves the parties and the court. *See id.*

### A. Venue Is Proper in the Southern District of Florida.

A venue transfer to the Southern District of Florida is permissible because this suit might have been brought there. *See* 28 U.S.C. § 1404(a). Venue is proper there because "a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Florida, where Celsius is headquartered. *See id.* § 1391(b)(2). This is where the Celsius team develops its social media strategy, which encompassed engaging brand ambassadors to promote Celsius products. Goldberg Decl. ¶¶ 7, 14. Additionally, the only alleged post by Windsor about Celsius

was taken and posted in Miami, as were some of Wheaton's Celsius posts. Four out of the five Defendants have no suit-related contacts that took place in California. *See supra* Section III.

All of Defendants are subject to personal jurisdiction in the Southern District of Florida. Four out of five of the defendants are domiciled in Florida. Emily Tanner is also subject to personal jurisdiction under Florida's long-arm statute because the forum selection clause in the agreement between Tanner and Celsius names the Southern District of Florida as the appropriate forum. *See* Tanner Decl. ¶ 8, Ex. A; Fla. Stat. § 48.193(1)(a)(9). And she consents to proceed there. Tanner Decl. ¶ 9. Accordingly, suit would be proper in the Southern District of Florida.

**B.**     <u>**Section 1404(a)'s Factors Supporting Transfer for the Convenience of the Parties and in the Interests of Justice.**</u>

Courts may balance a number of factors when deciding a motion to transfer under § 1404(a). While the analysis grants broad discretion in the number of factors considered, and none are dispositive, the most important considerations are judicial economy and convenience of the witnesses. *See Randles*, 2024 WL 1855720, at *2, 6. Additional factors include accessibility of the evidence and avoiding the evils of forum shopping. *See id.* at *5 (considering ease of access to evidence); *Meza v. Procter & Gamble Co.*, 2023 WL 3267861, at *6 (C.D. Cal. Apr. 27, 2023) (examining plaintiff's forum-shopping in considering motion to transfer and finding that interests of justice warranted transfer where plaintiff's counsel had filed similar "copy-cat" lawsuits in other jurisdictions because "there is an equally strong inference of forum shopping when the parallel actions are filed by the same law firm, and such strategic machinations by plaintiff's counsel are equally discouraged under Section 1404(a)."). Transfer is appropriate here because Plaintiff's choice of forum is not entitled to deference; on the other hand, judicial economy, convenience of the parties and witnesses, ease of access to the evidence, and avoiding forum shopping all weigh in favor of transfer.

**1.**     **Judicial Economy**

As discussed above, this Court lacks personal jurisdiction over the Florida Defendants. *See supra* Section III. There is thus a strong likelihood that this Court should dismiss the case against these Defendants for lack of jurisdiction. Plaintiff may then file suit against these Defendants in

Florida, thereby potentially splitting the action against Tanner from the other Defendants. This would be a waste of judicial resources to pursue suits on the same factual allegations and requiring substantially the same evidence in California and Florida. If the Court does not dismiss the matter entirely, it should at least maintain any remaining claims in the same action. *See Johansson v. Cent. Garden & Pet Co.*, at *2 (N.D. Cal. Dec. 2, 2010) ("Importantly, in putative class actions . . . even where the causes of action are not similar but are based on similar allegations pled in a later-filed action, concerns over judicial efficiency are paramount."); *see also Randles*, 2024 WL 1855720, at *2 (favoring consolidation with other actions).

### 2.    Convenience of the Witnesses

Transferring this matter to Florida is necessary for the convenience of the witnesses. This is often the most important factor when weighing the suitability of a transfer. *See Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. Dec. 11, 2009). Nearly all the essential witnesses in this matter live and work in Florida, including four out of the five Defendants. In particular, it is inconvenient for Windsor and Wheaton, who live and work in Florida, to travel across the country to testify in California.

Further, the witnesses with the most firsthand knowledge about Celsius's social media marketing practices are Celsius employees. Goldberg Decl. ¶ 14. Celsius's marketing team, which has percipient knowledge, are all located at its only offices, which are in Florida. *Id.* All these individuals are domiciled in Florida, and the subject of their testimony took place there. *See id.* It would be inconvenient and costly to force them to testify in California.

### 3.    Plaintiff's Counsel is in Florida.

Plaintiff's counsel, Keith Gibson Law, P.C., is a plaintiffs' law firm based in Boca Raton, ***Florida***. Defendants believe that Plaintiff's choice of forum is only reflective of forum shopping.[3]

---

[3] Plaintiff's counsel has brought strikingly similar suits against other companies in recent months. *Ligia Negreanu v. Revolve Group, Inc. et al*, No. 2:25-cv-03186-MWC-E (C.D. Cal.); *Sulici et al v. Color Image Apparel d/b/a Alo Yoga et al.*, No. 1:25-cv-03928 (N.D. Ill.); *Alin Pop v. Beach Bunny Swimwear Inc. et al.*, No. 2:25cv4085 (C.D. Cal.); *Alin Pop v. Jaxxon, LLC* No. 8:25-cv-00311-SVW-ADS (C.D. Cal.); *Bengoechea et al v. Roadget Business PTE., Ltd. d/b/a Shein et al.*, No. 1:25-cv-01402 (N.D. Ill.); *Simoni v. Hi-Tech Pharmaceuticals Inc. et al.*, No. 1:25-cv-00795 (N.D. Ill.). Like the *Lulifama* case, they too should be dismissed.

14

As counsel are barred attorneys in Florida, they are well versed in its practices and procedures, so Plaintiff and her counsel will not be prejudiced by proceeding with suit there.

### C.    Plaintiff's Choice of Forum Is Not Entitled to Deference.

Plaintiff's choice of California as a forum is not entitled to the deference normally afforded to plaintiffs because she alleges a putative class action on behalf of a *nationwide* class. *Randles*, 2024 WL 1855720, at *4 (citing *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)). The court in *Randles* did not afford deference to the plaintiff's choice of California as a forum when considering a § 1404(a) transfer. *Id.* The plaintiff in *Randles*, a California resident, unsuccessfully argued that his suit was based on California statutory claims on behalf of a California class, and his choice of forum was therefore entitled to deference. *Id.* Nevertheless, the court found that because the operative facts of the case occurred in Texas where the Defendant was domiciled, Plaintiff's choice of forum was not persuasive. *Id*.

The same is true here. Plaintiff's choice of forum should not be afforded any deference. She brings her suit on behalf of a putative nationwide class. Other than her residence in California, her claims are unrelated to California. *See supra* Section III.B. The operative facts underlying Plaintiff's claims took place in Florida, and that is the proper venue for any claims that survive this Motion.

## V.    MOTION TO DISMISS FOR LACK OF STANDING (FRCP 12(b)(1))

The Court should determine that it lacks jurisdiction over this suit and dismiss on that basis or, in the alternative, transfer it. If the Court nevertheless wishes to consider Plaintiff's claims against any Defendant, Plaintiff lacks standing and fails to state any claim against any Defendant.

Plaintiff, as the party invoking the federal court's jurisdiction, "bears the burden of showing that Article III standing exists." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011). And she must show standing exists "for each form of relief [sought] (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). There are three requirements for Article III standing: (1) an injury in fact that (2) is fairly traceable to the challenged conduct and (3) has some likelihood of redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

### A.    <u>Plaintiff Has Not Alleged a Fairly Traceable Injury-in-Fact.</u>

Plaintiff has no standing because she has not suffered injury-in-fact, which requires that the injury or threat of injury be "concrete and particularized; . . . [and] actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Plaintiff also fails to trace her nonexistent injury to the alleged misconduct.

Here, Plaintiff's claimed "injury" is the "premium[]" price she paid for Celsius products. Compl. ¶ 23. She claims the products were "inferior," but pleads no facts explaining how they are inferior. *Id.* Plaintiff complains about Instagram posts, but also never identifies any posts or representations by any Defendants that she saw and relied on to make her purchase. Plaintiff never alleges she saw or relied on the three Instagram posts cited in the Complaint, which appear to be included merely as demonstrative examples. *See* Compl. ¶¶ 34–36. She does not identify the specific Celsius products she saw on social media nor those that she purchased. Plaintiff likewise never alleges specific facts supporting the alleged "scheme" between the Celsius Defendants and the Influencer Defendants. *See id.* ¶ 19. Indeed, Plaintiff does not even distinguish between the two Celsius entities, instead lumping them together throughout the Complaint, all while admitting that she has no clue what each Celsius entity did or might've done. *See id.* ¶ 33.

Instead, the entire Complaint is predicated on a generalized ***omission*** theory—Plaintiff alleges Defendants failed to disclose that the Influencer Defendants were paid by Celsius to make social media posts featuring Celsius products. Such broad-based allegations do not excuse Plaintiff's obligation to plead plausible *facts* that can trace her injury (paying for unidentified Celsius products) to the alleged misconduct (unidentified omissions by Defendants). *See Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1082 (N.D. Cal. 2014) ("[I]f Plaintiffs did not see the specified representations before they purchased Defendant's services, then Plaintiffs did not rely on these representations and suffered no injury."). To the contrary, plaintiffs can only demonstrate Article III standing for false advertisement where they allege facts showing that they relied on a *specific* advertisement for the *specific* product they purchased. *See Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 908–09 (C.D. Cal. 2021) (dismissing, in part, putative class claims brought as to

1  products the plaintiff did not purchase for lack of standing).[4] As a result, Plaintiff fails to plead facts

2  that establish a fairly traceable injury-in-fact. Nor can Plaintiff rely on the mere allegation that

3  Defendants supposedly violated the FTC Guidelines: a statutory violation, standing alone, is not

4  enough to establish Article III standing. *TransUnion*, 594 U.S. at 440. As a result, Plaintiff's entire

5  Complaint should be dismissed because she has no Article III standing.

6  ## B.    Plaintiff Has No Standing to Seek Injunctive Relief.

7  Plaintiff lacks standing to assert her claim for injunctive relief for the independent reason

8  that she cannot show an actual and imminent injury, or also a "sufficient likelihood that [s]he will

9  again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

10  Standing under *Davidson* requires a plaintiff to prove they want or intend to purchase the product

11  in the future. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018); *see also*

12  *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) ("A some day intention—

13  without any description of concrete plans, or indeed even any specification of when the some day

14  will be—does not support a finding of the actual or imminent injury that Article III requires.")

15  (cleaned up).

16  Plaintiff does not allege or even indicate that she will ever buy a Celsius product again.

17  Instead, Plaintiff pleads Celsius products are "inferior." Compl. ¶ 23. She "is now fully aware of

18  the alleged misrepresentations" and fails "to allege that [s]he intends to purchase the Class Products

19  again in the future." *Rahman v. Mott's Ltd. Liab. P'ship*, 2014 U.S. Dist. LEXIS 11767, at *34–35

20  (N.D. Cal. Jan. 29, 2014) (dismissing injunctive relief demand for lack of standing). Likewise, there

21  is no allegation that Plaintiff will regularly encounter the purportedly deceptive social media

22  posts—particularly where Plaintiff never alleges that she even saw the Instagram posts she chose

23  to feature in her Complaint in the first place. *See supra* Section V.A; *Wisdom v. Easton Diamond*

24  *Sports, LLC*, 2018 WL 6244994, at *2 (C.D. Cal. Oct. 9, 2018) (holding the plaintiff lacked

25  standing to seek injunctive relief where the plaintiff failed to allege that he "regularly purchases

26

27
28
---
[4] Although it is unclear what specific products Defendants misrepresented or what specific products Plaintiff purchased, to the extent her claims are based on products she did *not* purchase, she lacks standing to pursue those. A plaintiff cannot claim injury from similarly false advertising upon which he or she did not injuriously rely (by buying a similar product or otherwise). *See Lorentzen*, 532 F. Supp. 3d at 908–09.

17

1  bats, or is regularly visiting stores where bats are sold"). Plaintiff therefore lacks standing to seek

2  injunctive relief.

3  **VI.    MOTION TO DISMISS FOR FAILURE TO SATISFY FRCP 9(b)**

4         Plaintiff's Complaint fails because she does not satisfy FRCP 9(b)'s heightened pleading

5  standard, which requires she "state with particularity the circumstances constituting fraud."

6         FRCP 9(b) applies to all of Plaintiff claims because it broadly covers any claims that sound

7  in fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003); *see Chulick-Perez*

8  *LLC v. CarMax Auto Superstores Cal.*, 2014 WL 2154479, at *6–7 (E.D. Cal. May 20, 2014)

9  (UCL and CLRA claims subject to FRCP 9(b)); *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 911

10  (N.D. Cal. 2020) (FAL claims subject to FRCP 9(b)); *Puri v. Khalsa*, 674 F. App'x 679, 690 (9th

11  Cir. 2017) (unpublished) (unjust enrichment based on fraud subject to FRCP 9(b)); *Davis v. Abbott*

12  *Labs*, 562 F. Supp. 3d 585, 589 (C.D. Cal. 2021) (negligent misrepresentation claim subject to

13  FRCP 9(b)).

14         Plaintiff was therefore required—but failed—to plead her claims with particularity under

15  FRCP 9(b). Her allegations were required to be "specific enough to give defendants notice of the

16  particular misconduct," including "the 'who, what, when, where, and how' of the misconduct

17  charged," *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009), and "the time, place,

18  and specific content of the false representations," *Edwards v. Marin Park, Inc.*, 356 F.3d 1058,

19  1066 (9th Cir. 2004). The lion's share of Plaintiff's allegations has nothing to do with what actually

20  happened to her, however. She instead loads her Complaint with irrelevant allegations about the

21  profitability of Instagram and social media marketing generally. *See, e.g.*, Compl. ¶¶ 43–49.

22  Plaintiff never tethers these allegations to her own experience or purported harm; nor does she even

23  attempt to plead the "who, what, when, where, and how" of the alleged fraud as required by FRCP

24  9(b) (because there was none).

25         Federal courts have dismissed complaints making similar allegations as to purportedly

26  deceptive social media influencer marketing practices for this very reason. For example, in *Pop v.*

27  *LuliFama.com LLC*, the district court granted a motion to dismiss because the plaintiff (represented

28  by the *same* Plaintiff's counsel here) failed to allege the requisite "who, what, when, where, and

how" and therefore failed to satisfy FRCP 9(b). 2024 U.S. Dist. LEXIS 48930, at *9 (M.D. Fla. Mar. 20, 2024), *appeal filed* Apr. 4, 2024. The court reasoned "[plaintiff] has not identified any posts by [the influencer defendant] that caused him to purchase the Luli Fama products, nor any posts constituting allegedly misleading advertisements." *Id.* He, like Plaintiff, "has also failed to allege when he himself viewed such posts." *Id.* "Further, he has not provided any details of the Luli Fama Defendants' alleged scheme to pay [the influencers] . . . to promote Luli Fama products, other than asserting that Luli Fama pays the Influencers 'significant monies' to promote its products." *Id.* The plaintiff also failed to "describe[] the products he purchased from Luli Fama, why they were of inferior quality, or why he was unable to return or resell the products." *Id.*

Just so here. Plaintiff never identifies any posts or representations by any Defendants that she saw and relied on to make her purchase. Plaintiff never alleges she saw or relied on the three Instagram posts cited in the Complaint, which appear to be included merely as demonstrative examples. *See* Compl. ¶¶ 34–36. She does not identify the specific Celsius products she saw on social media or those that she purchased. Plaintiff likewise never alleges specific facts supporting the alleged "scheme" between Celsius and the Influencer Defendants. *See id.* ¶ 19. Plaintiff does not even distinguish between the two Celsius entities and admits she has no clue what each Celsius entity did or might've done. *See id.* ¶ 33. She also does not explain how Celsius charges a "premium" because she "failed to allege what 'comparable products' [s]he is referring to in the complaint." *Rahman*, 2014 U.S. Dist. LEXIS 11767, at *28.

Even if FRCP 9(b) did not apply to the entire Complaint (it does), Plaintiff still fails to satisfy FRCP 8(a)(2)'s lower standard, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." In cases with multiple defendants, courts have required that the complaint state with particularity which allegations are attributable to which defendants. In *McHenry v. Renne*, for example, the Ninth Circuit upheld the dismissal of a complaint on the grounds that it did not "properly notify individual defendants of the allegations with which they are charged," as the claims "vaguely refer[red] to 'defendants' . . . ." 84 F.3d 1172, 1175 (9th Cir. 1996). The same is true here. Plaintiff's Complaint lumps every Defendant together and fails to make any independent allegations that would notify Defendants as to who is responsible for what

alleged conduct. This defect is compounded by the total lack of any identifiable misrepresentations or omissions and any allegations establishing that Plaintiff paid a "premium" for her products or that those products were "inferior."

The Court need go no further: dismissal can be granted for this reason alone. *See Vess*, 317 F.3d at 1103–04 (motion to dismiss should be granted if, after disregarding insufficiently pleaded averments of fraud, there is effectively nothing left of the complaint); *see also Abramson v. Marriott Ownership Resorts, Inc.*, 155 F. Supp. 3d 1056 (C.D. Cal. 2016) (same).

## VII.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (FRCP 12(b)(6)).

Dismissal under FRCP 12(b)(6) is proper either "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief" or when the plaintiff fails to plead sufficient facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

### A.  Plaintiff's Entire Complaint Fails Because She Fails to Adequately Plead an Omissions-Based Deception Theory.

Plaintiff fails to plead any affirmative representations that were false or misleading. Her entire Complaint instead appears to rest on unidentified "omissions" as to the Influencer Defendants' relationship with Celsius that fail to support a cognizable omissions-based deception theory under binding California authority.

#### 1.  Plaintiff Fails to Allege a Duty to Disclose.

"[A] failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL[,]" and therefore not actionable. *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 838 (2006). The same is true of CLRA claims. *Rubenstein v. The Gap, Inc.*, 14 Cal. App. 5th 870, 881 (2017) (circumscribing actionable omissions to those facts a defendant had a duty to disclose). Each of Plaintiff's claims fail because

she does not (and cannot) allege that each Defendant owed her a duty to disclose. *See Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1025–26 (N.D. Cal. 2016).

Plaintiff does not allege any facts showing that Defendants had any cognizable duty to disclose. Defendants (1) were not Plaintiff's fiduciaries, (2) did not actively conceal or have exclusive knowledge of material facts (as is demonstrated by the #celsiusofficial and #celsiusbrandpartner references in their posts), and (3) did not make partial representations. *See LiMandri v. Judkins,* 52 Cal. App. 4th 326, 336–37 (1997) (enumerating specific circumstances where duty to disclose may be imposed under California law and finding no duty); *see, e.g., Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 989 (N.D. Cal. 2016) (confirming the existence of duty to disclose is a question of law proper for determination on motion to dismiss and declining to impose a "fiduciary duty on institutions in all commercial transactions"). There is no allegation of a fiduciary relationship (because there is none). Plaintiff also cannot allege active concealment or exclusive knowledge of a *material* fact, which, as explained below, must relate to the product's safety or central functionality to be actionable. *See infra* Section VII.A.2. That Celsius had a business relationship with the Influencer Defendants is not a "material" fact because it has nothing to do with product safety or functionality. And Plaintiff cannot show a "partial" representation because she never alleges any representations at all, and the few Instagram posts in her Complaint contain no representations about product safety or functionality. *See* Compl. ¶¶ 34–36.

Nor was a duty to disclose created by law. While Plaintiff will point to "the FTC guidelines regarding advertising on social media," Compl. ¶ 53, those FTC Guidelines were only revised to address social media posts on July 26, 2023, *after* Plaintiff made her supposed Costco purchase of Celsius products on May 17, 2023 and *long after* the 2020 and 2022 posts by Influencer Defendants. *See* Compl. ¶¶ 34–36. This precludes any supposed duty based on the Guidelines.

Moreover, as a matter of law, these are mere *guidelines* that do not give rise to a duty. They "lack the force of law." *FTC v. Garvey*, 383 F.3d 891, 903 (9th Cir. 2004) (examining "endorser liability" under the FTC Guides Concerning Use of Endorsements and Testimonials in Advertising and noting that even "[t]he FTC acknowledges that the Guides lack the force of law"). The FTC's

recent "Guides Concerning Use of Endorsements and Testimonials in Advertising," codified at 16 C.F.R. ch. 1, sub. chap. pt. 255 et seq. (the "FTC Guidelines"), cabin their own reach: as set forth in section 255.0, the FTC Guidelines merely "provide the basis for voluntary compliance with the law by advertisers and endorsers." The FTC Guidelines therefore do not supply any legal duty to disclose. And the FTC Act, which the Guidelines purport to interpret, "does not provide individuals with a private right of action" and therefore does not create a legal disclosure duty either. *BMA LLC v. HDR Glob. Trading Ltd.*, 2021 WL 4061698, at *16 (N.D. Cal. Sept. 7, 2021).

## 2.    Plaintiff Does Not Plead an Actionable Omission Because the Purported Omission Is Not Central to the Product's Function.

Binding precedent limits omissions-based false advertising claims to those pertaining to the central functionality of a product. *Hodsdon*, 891 F.3d 863 (omission-based claim as to a product must relate to a product defect that implicates the "central functionality" of the product). As the Ninth Circuit holds, "California courts have generally rejected a broad obligation to disclose," and instead held that the "duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." *Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (quotation marks omitted).[5] Put another way, an omission is only actionable where the nondisclosing party concealed a material fact that poses a concern about the safety or central functionality of the product. *Wilson*, 668 F.3d at 1142 (citing *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007)) (explaining that for the omission to be material, the failure must [still] pose 'safety concerns.'").

The Ninth Circuit explains that to satisfy the "central function" prong as applied to a food (including a beverage product like Celsius), Plaintiffs must plausibly allege that Defendants'

---

[5] *See also Marcus v. Apple Inc.*, 2015 WL 151489, at *6 (N.D. Cal. Jan. 8, 2015) (relying on *Wilson* and dismissing UCL and CLRA claims where plaintiffs "failed to plead the existence of any affirmative misrepresentations by Apple, and have not alleged any safety issues"); *Willis v. Buffalo Pumps Inc.*, 34 F. Supp. 3d 1117, 1132 (S.D. Cal. 2014) ("In *Wilson*, the Ninth Circuit rejected a broad obligation to disclose all material facts, but accepted that a manufacturer would be 'bound to disclose' a defect that posed safety concerns or risk of physical injury."); *Hodges v. Apple Inc.*, 2013 WL 6698762, at *4 (N.D. Cal. Dec. 19, 2013) ("To survive a motion to dismiss [a CLRA claim], the plaintiff must plead with particularity that the defendant made an actual misrepresentation, an omission 'contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose' related to safety concerns.").

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER
Case No. 5:25-cv-00180-MRA-SP

supposed undisclosed fact renders the Products "incapable of use by any consumer." *Hodsdon*, 891 F.3d at 864.

Plaintiff does not and cannot allege an actionable omission under California law. As a threshold issue, Plaintiff does not identify *what* specific Celsius products she purchased. Setting that aside, Plaintiff cannot allege that the supposed undisclosed influencer link rendered Celsius incapable of use. At most, Plaintiff alleges that Defendants did not disclose that the Influencer Defendants had been compensated to create social media posts featuring Celsius. Compl. ¶¶ 23–27. This alleged omission does not relate to the product's safety or even the features of the product. Federal courts in California have dismissed many omissions-based claims against food products on a 12(b)(6) motion because the presence or absence of information or an ingredient did not render the product unusable and ceasing to act as a food. *See, e.g.*, *In re Theos Dark Chocolate Litig.*, 750 F. Supp. 3d 1069, 1090–91 (N.D. Cal. 2024) (granting motion to dismiss omissions-based claim where the food was not unusable); *In re Plum Baby Food Litig.*, 2024 U.S. Dist. LEXIS 56920, 2024 WL 1354447, at *6 (finding that trace heavy metals in baby food do not "render[] the product incapable of nourishment"). Binding precedent precludes Plaintiff's entire theory of liability.

Last, an omissions-based theory is not an actionable basis for a negligent misrepresentation claim because such claims require an affirmative representation. *See Byrum v. Brand*, 219 Cal. App. 3d 926, 942 (1990) (negligent misrepresentation claim unavailable for an implied representation or negligent concealment); *see also infra* Section VII.F.

### 3.    Plaintiff's Allegations Fail the "Reasonable Consumer" Test.

Plaintiff cannot plausibly plead that a reasonable consumer would be deceived by the alleged omission, as she must to state a false advertising claim.

The governing standard for Plaintiff's claims is whether a reasonable consumer would be deceived by the product labels and advertising. *See Moore v. Trader Joe's Co.*, 4 F.4th 874, 885 (9th Cir. 2021) (holding false or deceptive advertising claims under the FAL, the CLRA, and the fraudulent and unfair prongs of the UCL are governed by the "reasonable consumer" standard). As the Ninth Circuit has explained, the "reasonable consumer" standard "requires more than a mere possibility that [Defendants'] label "might conceivably be misunderstood by some few consumers

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER
Case No. 5:25-cv-00180-MRA-SP

viewing it in an unreasonable manner." *Id.* at 882; *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Rather, the reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*; *see also Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (granting motion to dismiss where no reasonable consumer would be misled by product advertising). A court may dismiss a claim on this basis where it "can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging." *Werbel v. Pepsico, Inc.*, 2010 U.S. Dist. LEXIS 76289, at *8–9 (N.D. Cal. Jul. 2, 2010); *Moore*, 4 F.4th at 885 (affirming dismissal of claims where no reasonable consumer would be misled by the purported misrepresentations about the product).

In the context of claims based on product advertisement, "[a]dvertising which merely states in general terms that one product is superior is not actionable"; a plaintiff must instead allege "misdescriptions of specific or absolute characteristics" to state a claim. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990). This distinction between misdescription of specific facts or absolute characteristics of a product compared to mere "puffery" has been applied to UCL and FAL claims. *See, e.g.*, *Henderson v. Gruma Corp.*, 2011 WL 1362188, at *11 (C.D. Cal. Apr. 11, 2011).

As a threshold issue, Plaintiff fails to identify any particular social media posts or omissions, meaning she fails to plead that a "reasonable consumer" would be misled by any alleged posts or omissions.

Moreover, the three Instagram posts featured in the Complaint do not state a plausible claim for deception under the "reasonable consumer" test. Each of the three posts tags the official Celsius Instagram account and features Celsius hashtags in the caption that would put a reasonable consumer on notice that the Influencer Defendants were affiliated with Celsius. *See* Compl. ¶ 34 (tagging @CELSIUSofficial and using #CELSIUSLiveFit conspicuously displayed in the caption); ¶ 35 (tagging @CELSIUSofficial and using #celsiuslivefit and #celsius conspicuously displayed in the caption). At least one of the posts by Wheaton, *see id.* ¶ 36, features language recommended for influencer endorsements in the FTC Guidelines because it contains a Celsius

hashtag *and* #celsiusbrandpartner in the clear and conspicuous caption of the post.[6] A reasonable consumer would assume that this means what it says: the Influencer Defendant is a Celsius brand partner. A reasonable consumer who uses Instagram would also understand that clearly and conspicuously disclosed Celsius hashtags and official Celsius account tagging indicates that the Influencer Defendants had an affiliation with Celsius.

Further, although Plaintiff never identifies what social media posts she actually saw or relied on, Plaintiff's generic allegations that Defendants misled her about the superiority of the product, Compl. ¶ 23, would be nothing more than nonactionable puffery. Product superiority claims that are vague or highly subjective are nonactionable puffery under California law. *Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools*, 673 F. Supp. 3d 1083, 1094 (N.D. Cal. 2023). Accordingly, Plaintiff's allegations fail the "reasonable consumer" test.

## B.    Plaintiff's UCL and CLRA Claims Fail Because She Lacks Statutory Standing (Counts I & II).

Plaintiff lacks statutory standing—which is "substantially narrower" than Article III standing, *see Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322, 324 (2011)—to sue under her two statutory claims. "Under the CLRA, any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person." Cal. Civ. Code § 1780(a); *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 643 (2009). And under the UCL, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact . . . and (2) show that that economic injury was the result of . . . the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset*, 51 Cal. 4th at 322. The same is true under the FAL (which underpins Plaintiff's UCL claim). *See Obesity Rch. Inst., LLC v. Fiber Rch. Int'l, LLC*, 165 F. Supp. 3d 937, 947 (S.D. Cal. 2016) (quoting *Kwikset*, 51 Cal. 4th at 322).

---

[6] *See* 2023 FTC Guidelines (Q: "Would "#ambassador' or 'partner' work in a tweet? What about or '#XYZ_Ambassador' or '#XYZ_Partner'?" A: "The use of '#ambassador' or 'partner' is ambiguous and confusing. **'#XYZ_Ambassador' or '#XYZ_Partner' will likely be more understandable (where XYZ is a brand name)**.") (emphasis added) (https://www.ftc.gov/business-guidance/resources/ftcs-endorsement-guides-what-people-are-asking#ftcactapply) (last visited May 2, 2025).

For the same reasons explained in Section VII.B, Plaintiff does not have statutory standing to bring these claims because she does not (and cannot) allege that Defendants caused her "damage[] by [their alleged] failure to comply with th[ose] statute[s]." *Naseri v. Greenfield World Trade, Inc.*, 2021 WL 3511040, at *2 (C.D. Cal. Aug. 10, 2021). Because Plaintiff cannot meet Article III's lower standard for injury-in-fact, she likewise cannot meet the statutory standing requirement. Plaintiff fails to allege the loss of any money or property as a result of the purportedly unfair and fraudulent conduct. *See, e.g.*, *Bragg Live Food Prods., LLC v. Nat'l Fruit Prod. Co.*, 2022 WL 3574423, at *4 (C.D. Cal. July 22, 2022) (granting motion to dismiss UCL claim because plaintiff did not allege any form of economic injury). Plaintiff's naked allegation that she paid an unquantified "premium" for her unidentified Celsius products—a dubious assertion in light of the fact that she made her purchase at a *wholesale* retailer, Costco—is insufficient because she fails to link that alleged monetary loss to any specific misconduct by Defendants. There is no causal nexus to any supposed deception by each Defendant. Plaintiff thus fails to demonstrate statutory standing.

## C.    Plaintiff's CLRA Claim Fails For Additional Reasons (Count I).

In addition to her failure to plead an omissions-based claim, and her lack of standing, Plaintiff's Complaint fails to plead any actionable claim under any part of the CLRA.

The CLRA makes unlawful various unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer. *Herremans v. BMW of N. Am., LLC*, 2014 WL 5017843, at *8 (C.D. Cal. Oct. 3, 2014) (citing Cal. Civ. Code § 1770(a)). Conduct that misleads *any* consumer does not necessarily violate the CLRA—only conduct that is likely to mislead a *reasonable* consumer. *Id.* Here, Plaintiff fails to allege facts showing that Defendants violated any specific CLRA provision or caused her harm from any alleged violation. Plaintiff's attempt to graft liability onto benign Instagram posts that never make any representations about the product or its safety and that *she never viewed* strains credulity. *See Millam v. Energizer Brands, LLC*, 2022 WL 19001330, at *3 (C.D. Cal. Dec. 9, 2022) (dismissing FAL, UCL, and CLRA claims and rejecting plaintiffs' "reinterpretation" of marketing statements as inconsistent with the

reasonable consumer standard). Although Plaintiff fails to cite the subsections of the CLRA that Defendants purportedly violated, her conclusory allegations of a violation fail on their face.

### 1.    Defendants Did Not Violate Section 1770(a)(2).

Plaintiff alleges that "Defendants misrepresented the source, sponsorship, approval, or certification of the goods or services," Compl. ¶ 93, which appears to allege a violation of Civil Code section 1770(a)(2). This alleged violation fails because, as explained above, the Influencer Defendants' posts sufficiently put reasonable consumers on notice of their affiliation with Celsius, including through the FTC-recommended use of brand partner hashtags. Plaintiff, moreover, never pleads any specific misrepresentation or omission that any Defendant made about "the source, sponsorship, approval, or certification of the goods or services." Nor does she even plead what "goods" were allegedly misrepresented or what "goods" she purchased, which fails to satisfy her minimum pleading standard under FRCP 9(b).

### 2.    Defendants Did Not Violate Section 1770(a)(3).

Plaintiff alleges "Defendants misrepresented the affiliation, connection, or association with, or certification by another," Compl. ¶ 94, which appears to allege a violation of Civil Code section 1770(a)(3). For the reasons stated above, including because the brand relationship is clear to any reasonable consumer viewing the posts in the Complaint, Plaintiff fails to plead sufficient facts that would constitute a violation under this subsection. *See supra* Section VII.A.3.

### 3.    Defendants Did Not Violate Section 1770(a)(5).

Plaintiff alleges "Defendants represented that the goods or services have approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have," Compl. ¶ 95, which appears to allege a violation of Civil Code section 1770(a)(5). Plaintiff pleads no facts showing any misrepresentation about "approval, characteristics, ingredients, uses, benefits, or quantities" of the unidentified Celsius products she bought. She likewise does not establish that Defendants misrepresented "a sponsorship, approval, status, affiliation, or connection that the person does not have." Quite the opposite: Plaintiff claims that Defendants represented that there was *no* sponsorship, affiliation, etc. There is thus no claim under subsection (a)(5).

### 4.  Defendants Did Not Violate Section 1770(a)(9).

Plaintiff alleges that "Defendants advertised goods or services with intent not to sell them as advertised," Compl. ¶ 96, which appears to allege a violation of Civil Code section 1770(a)(9). But Plaintiff's Complaint does not identify the advertisements that were purportedly misleading. It is impossible to allege, then, any facts showing that Defendants had an "intent" not to sell the unidentified Celsius products in a manner inconsistent with how they were advertised. Plaintiff's attempt to allege a violation of this subsection therefore fails.

### 5.  Plaintiff Does Not Plead Reasonable Reliance.

As explained above in Section VII.A.3, Plaintiff does not plead reasonable reliance. "[A] plaintiff asserting a CLRA claim which sounds in fraud must establish reliance and causation." *Williamson v. Apple, Inc.*, 2012 WL 3835104, at *4 (N.D. Cal. Sept. 4, 2012). Her conclusory, self-serving allegations that she "relied" on unidentified social media posts in choosing to buy unidentified Celsius products are not enough to survive dismissal. Plaintiff was required—but failed—to plead facts linking specific misrepresentations or omissions to the purchase of her products. *See Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946 (S.D. Cal. 2007) ("California requires a plaintiff suing under the CLRA for misrepresentations in connection with a sale to plead and prove she relied on a material misrepresentation.").[7] Accordingly, Plaintiff fails to plead the necessary element of reasonable reliance under the CLRA.

### D.  Plaintiff's UCL Claim Fails (Count II).

Plaintiff's UCL claim also fails on the independent grounds that (1) she fails to allege any unfair, unlawful, or fraudulent conduct and (2) she fails to plead any basis for equitable remedies.

### 1.  Plaintiff Fails to State a Claim Under the "Unlawful" Prong.

Plaintiff's UCL claim under the unlawful prong fails because she cannot establish a violation of the CLRA or FAL, the only two legal bases alleged for her unlawful prong UCL claim.

---

[7] *See Silver v. BA Sports Nutrition, LLC*, 2020 U.S. Dist. LEXIS 99320, at *30 (N.D. Cal. June 4, 2020) ("[T]he complaint contains numerous references to non-label advertising such as in-store displays, billboards, social media posts, and posts by third party reviewers. If plaintiffs wish to proceed on deceptive or misleading advertising claims (or related unfair or deceptive business acts claims) based on non-label marketing and advertising, plaintiffs must be able to allege that they saw and relied on those specific advertisements to their detriment. Further, the Court is skeptical that such claims can be brought on a class basis.").

*See* Compl. ¶¶ 105–09; *Martinez v. Ford Motor Co.*, 2022 WL 14118926, at *3–4 (S.D. Cal. Oct. 24, 2022).

### a.    Plaintiff fails to allege a CLRA violation.

Although Plaintiff's alleged violations of the CLRA form, in part, the basis of her "unlawful" prong UCL claim, Compl. ¶ 105, those claims fail as a matter of law as explained in Sections VII.B–C above. *See Martinez*, 2022 WL 14118926, at *4 ("Plaintiff fails to plead the unlawful prong of the UCL because . . . he fails to adequately plead a violation of the Song-Beverly Act. A UCL claim stands or falls depending on the fate of antecedent substantive causes of action.") (quotation marks and citation omitted). Plaintiff's UCL claim, to the extent predicated on a CLRA violation, must fall with the CLRA claim.

### b.    Plaintiff fails to allege a FAL Violation.

Plaintiff's "unlawful" prong claim based on a purported FAL violation fares no better. Plaintiff fails to state a FAL violation because the (unidentified) social media posts are neither false nor misleading. Plaintiff bases her FAL claim, which prohibits false or misleading advertising, Cal. Bus. & Prof. Code § 17500, on the same alleged representations discussed above—i.e., Defendants allegedly failed to sufficiently disclose that the Influencer Defendants were compensated to create social media posts that featured Celsius. This allegation fails for the same reason Plaintiff's other statutory claims fail. Defendants therefore incorporate their arguments as to those counts to avoid repetition. *See* Sections VII.B–C. For the many reasons explained above, these alleged omissions are not plausibly false or misleading as a matter of law.

### c.    Plaintiff Cannot Predicate Her Claim on the FTC Guidelines.

Plaintiff also bases her suit on her allegation that the unidentified social media posts by the Influencer Defendants were misleading because they did not comply with the FTC Guidelines. *See* Compl. ¶¶ 85–87.

The 2023 FTC Guidelines that Plaintiff relies on throughout her Complaint became effective *after* the cited Instagram posts. [8] Compl. ¶¶ 34–36. They became effective after Plaintiff's

---

[8] Wheaton's post was on September 2, 2020, Wheaton Decl. Ex. A; Windsor's post was on July 25, 2022, Windsor Decl. Ex. A; and Tanner's post was on June 20, 2022, Tanner Decl. ¶ 7. The Court may consider these exhibits because it is permitted to consider documents that are referenced

Celsius purchase. *See* ¶ 56. The Instagram posts, even if they did amount to a violation, would not constitute an actionable basis for a UCL claim: a statement that was lawful when made but later declared unlawful does not constitute a misleading or false statement as a matter of law. *See Janis v. Cal. State Lottery Comm'n*, 68 Cal. App. 4th (1998) (dismissing UCL claim where plaintiffs filed suit after the Supreme Court declared the game of Keno to constitute illegal gambling because "[w]hen [the plaintiff] and other class members played Keno, it had not yet been declared 'illegal.' Thus, [defendants'] statements concerning the legality of the game were not misleading or false as a matter of law.") (emphasis added).

Moreover, FTC Guidelines are "voluntary" and lack the force of law. Plaintiff cannot base her UCL claim on a supposed violation of the voluntary guidelines. Even the FTC Act, on which the FTC Guidelines provide interpretive guidance, "does not provide individuals with a private right of action and cannot be used as a predicate for a UCL claim." *BMA LLC*, 2021 WL 4061698, at *16; *see also O'Donnell v. Bank of Am., N.A.*, 504 F. App'x 566, 568 (9th Cir. 2013) (affirming dismissal of UCL claim premised on a violation of FTC Act because "[t]he federal statute doesn't create a private right of action . . . and plaintiffs can't use California law to engineer one").

Setting all this aside, and assuming, for argument's sake, that Plaintiff had identified which social media posts she saw and relied on and was allegedly deceived by and could use the FTC Guidelines as a predicate for liability (she does not and cannot), the Instagram posts alleged in the Complaint substantially complied with the FTC Guidelines, which is "sufficient" under California law. *See Huijers v. Demarrais*, 11 Cal. App. 4th 676, 684 (1992) (under California law, "[s]ubstantial compliance with a statute is sufficient unless the intent of the statute can only be served by demanding strict compliance.").

The FTC Guidelines "reflect the basic truth-in-advertising principle that endorsements must be honest and not misleading." *See* FTC Endorsement Guides: What People Are Asking, https://www.ftc.gov/business-guidance/resources/ftcs-endorsement-guides-what-people-are-asking#ftcactapply (last visited May 12, 2025). "An endorsement must reflect the honest opinion

in the complaint, or on which the complaint necessarily relies. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006).

of the endorser and can't be used to make a claim the marketer of the product couldn't legally make." *Id.* As explained above in Section VII.A.3, the three Instagram posts substantially comply with those standards because they contain a number of clear and conspicuous statements that there is a link between the poster and Celsius. *See* Compl. ¶ 12. As such, this substantial compliance negates UCL liability here.

### 2. Plaintiff Fails to State a Claim Under the "Unfair" Prong.

The Ninth Circuit recently held that courts may consider three tests when analyzing the unfair prong of the UCL. *Doe v. CVS Pharm., Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020) ("*CVS*"), *cert. granted in part*, 141 S. Ct. 2882 (2021), *cert. dismissed*, *CVS Pharmacy, Inc. v. Doe, One*, 142 S. Ct. 480 (2021). Plaintiff's UCL "unlawful" claim fails under all three.

#### a. The Complaint fails under the first "unfair" prong test.

The first test is "whether the challenged conduct is 'tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law. . . .'" *CVS*, 982 F.3d at 1214 (quoting *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366 (2010)). Here, Plaintiff's UCL claim under the "unfair" prong appears to be solely predicated on her allegation that Defendants violated the "[s]ection 5(a) of 15 U.S.C. § 45(a)," Compl. ¶ 102.[9]. But this conclusory allegation fails the test for at least four reasons.

**First**, violation of the FTC Guidelines construing the FTC Act does not amount to "unfair" or "unlawful" conduct because the "voluntary" FTC Guidelines are not binding and cannot serve as a predicate for a UCL claim, as explained above in Section VII.D.1.c.

**Second**, as explained above, the FTC Guidelines were not revised to include guidance on social media marketing disclosures until July 26, 2023. *See supra* Section VII.D.1.c. As such, the cited Instagram posts were not even subject to the FTC Guidelines when revised.

**Third**, Plaintiff fails to establish a violation of the nonbinding FTC Guidelines. The FTC Guidelines recommend "endorsements . . . reflect the honest opinions, findings, beliefs, or experience of the endorser." 16 C.F.R. § 255.1(a). To establish a violation, a plaintiff must show (1) an "endorsement" within the meaning of the FTC Act, and (2) "substantiation"—that is, an

---

[9] Notably, Plaintiff alleges this against a *different company*, "ALO." *See* Compl. ¶ 102.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER
Case No. 5:25-cv-00180-MRA-SP

"express or implied representation that would be deceptive if made directly by the advertiser." *See* 16 C.F.R. § 255.1. Because Plaintiff here fails to even identify what "endorsement" she ever relied, she fails to demonstrate a *prima facie* violation of the FTC Guidelines.

*Last*, where, like here, a UCL claim fails on the unlawful prong, any alleged unfair business practices brought under the "unfair" prong that "overlap entirely" with those addressed in the unlawful prong fail too. *See In re Sequoia Benefits & Ins. Data Breach Litig.*, 2024 WL 1091195, at *8 (N.D. Cal. Feb. 22, 2024) (granting motion to dismiss UCL claim, reasoning "because the unlawful prong fails, and the alleged unfair business practices 'overlap entirely' with those addressed in the unlawful prong, 'the unfair prong of the UCL cannot survive.'").

### b.    The Complaint fails under the second "unfair" prong test.

The second test is "whether the practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *CVS*, 982 F.3d at 1214–15 (quoting *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009)). As explained above in Sections VI and VII.A, Plaintiff fails to plead facts showing that Defendants engaged in such a business practice because she cannot identify any social media posts on which she herself—or any member of the class, for that matter—injuriously relied. In any case, as explained in Section VII.D.1.c, Defendants completely or at least substantially complied with the subsequently issued, voluntary FTC Guidelines by disclosing their affiliation with Celsius in a clear and conspicuous manner. This negates any contention that their conduct was "immoral, unethical, oppressive, unscrupulous or substantially injurious."

### c.    The Complaint fails under the third "unfair" prong test.

The third test is "whether the practice's impact on the victim outweighs 'the reasons, justifications and motives of the alleged wrongdoer.'" *CVS*, 982 F.3d at 1215 (quoting *Morgan*, 177 Cal. App. 4th at 1254). Again here, the impact on the "victim" (Plaintiff) does not exist because she fails to allege any concrete injury that relates to or was caused by Defendants' alleged conduct. There is thus no impact or harm to Plaintiff that outweighs the alleged noncompliance with the FTC Guidelines.

### 3.    Plaintiff Fails to State a Claim Under the "Fraudulent" Prong.

For the reasons stated above in Sections V.II.A and B, Plaintiff utterly fails to allege sufficiently specific facts establishing that she was defrauded or that any Defendant committed a redressable fraud. As such, her fraudulent prong UCL claim fails.

### 4.    Plaintiff Fails to Allege Any Basis for Equitable Relief.

Plaintiff cannot seek injunctive relief or restitution, which are the only available UCL remedies. As explained above in Section V.B, Plaintiff has no standing to seek an injunction because she cannot allege an irreparable injury or a threat of future injury. And to seek restitution, Plaintiff must show "[d]amages or harm," which "are an element of all three types of prohibited business practices" under the UCL. *Express, LLC v. Fetish Grp., Inc.*, 464 F. Supp. 2d 965, 979 (C.D. Cal. 2006). But, as explained above in Section VII.B, Plaintiff has not established any monetary harm linked to the purported UCL violation.

Plaintiff also fails to state a claim for any equitable relief because she has an adequate remedy at law. A plaintiff seeking equitable relief under the UCL in a federal court must establish that they lack an adequate remedy at law. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Because Plaintiff seeks legal damages under her CLRA and negligent misrepresentation claims, she admittedly has an adequate legal remedy and therefore cannot show entitlement to equitable relief. *See Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009) ("[E]quitable relief is not appropriate where an adequate remedy exists at law.").

### E.    Plaintiff's Unjust Enrichment Claim Fails (Count III).

Plaintiff's unjust enrichment claim fails for several independent reasons. ***First***, unjust enrichment is not a standalone cause of action. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Accordingly, unjust enrichment must be predicated on an actionable claim. *See Goudie v. Wells Fargo Bank, N.A.*, 2015 WL 12803765, at *3 (C.D. Cal. June 8, 2015) (unjust enrichment must be based on other claims, as it "is not a stand-alone claim in California"). Plaintiff's unjust enrichment claim therefore falls with all of her other claims.

***Second***, Plaintiff's claim fails even when repackaged as a quasi-contract claim. When a plaintiff alleges unjust enrichment, a court may "construe the cause of action as a quasi-contract claim seeking restitution." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231

(2014). A quasi-contract claim is only warranted where a defendant has been unjustly conferred a benefit "through mistake, fraud, coercion, or request." *Astina*, 783 F.3d 753, 762 (9th Cir. 2015) (quotations omitted). A quasi-contract theory cannot salvage Plaintiff's unjust enrichment claim, however, because Plaintiff does not allege facts establishing a benefit to Defendants derived from "mistake, fraud, coercion, or request"—she does not plead mistake, coercion, or request, and she fails to plead any facts plausibly establishing fraud. Plaintiff also fails to allege that her purchase conferred a benefit to the Influencer Defendants. Courts have dismissed unjust enrichment claims against social media influencers allegedly engaged in deceptive marketing for this very reason. *See Pop*, 2024 U.S. Dist. LEXIS 48930, at *17 ("Even assuming that [the Influencer Defendants] received a portion of the revenues from all Luli Fama sales, which is a generous assumption, this payment would indicate an indirect benefit at best.").

      **Third**, Plaintiff's unjust enrichment claim fails because she is not entitled to equitable relief, as explained above in Section VII.D.4. Because the remedy for unjust enrichment is restitution (an equitable remedy), Plaintiff must show she lacks an adequate remedy at law, *see Hartford Casualty Ins. v. J.R. Marketing, LLC*, 61 Cal. 4th 988, 998 (2015)—something she cannot do. Her unjust enrichment claim fails as a result.

### F.   Plaintiff's Negligent Misrepresentation Claim Fails (Count IV).

      Plaintiff fails to plausibly allege facts satisfying the elements of negligent misrepresentation, which are (1) that defendant made a representation as to a past or existing material fact; (2) the representation was untrue; (3) defendant made that representation without any reasonable ground for believing it to be true; (4) defendant had an intent to induce plaintiff to rely upon it; (5) plaintiff was unaware of the representation's falsity and therefore justifiably relied on the representation; and (6) plaintiff sustained damage as a result of his justifiable reliance. *Allen v. Woodford*, 2006 WL 1748587, at *19 (E.D. Cal. June 26, 2006) (citing *Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 475–76 (2003)).

      Plaintiff's negligent misrepresentation claim fails out of the gate because she never alleges a *misrepresentation*. As discussed above in Section VII.A, Plaintiff's entire Complaint rests on an omission theory. This claim thus fails as a matter of California law. Negligent misrepresentation is

the "**assertion**, as a *fact*, of that which is not true, by one who has no reasonable ground for believing it to be true." Cal. Civ. Code § 1710(2) (emphasis added). Under California law, while fraud liability can be based on "suppression of a fact," negligent misrepresentation is narrower and requires an affirmative "false statement of a past or existing material fact." *Shamsian v. Atlantic Richfield Co.*, 107 Cal. App. 4th 967, 984 (2003); *see also* Cal. Civ. Code § 1710(2). Negligent misrepresentation cannot be based on the omission nor suppression of a material fact, which is all Plaintiff attempts to allege here. *See Byrum*, 219 Cal. App. 3d at 941–42 ("[C]learly a representation is an essential element [of negligent misrepresentation]."); *Huber, Hunt & Nichols, Inc. v. Moore*, 67 Cal. App. 3d 278, 304 (1977) ("No . . . court [has] held that the doctrine of negligent misrepresentation applies to [i]mplied representations. In all cases a 'positive assertion' was involved."). Courts routinely hold that omission theories or allegations of insufficient disclosure cannot give rise to a negligent misrepresentation claim. *See Hall v. Marriott Int'l, Inc.*, 344 F.R.D. 247, 267 (S.D. Cal. 2023), *on reconsideration in part*, 2023 WL 9692466 (S.D. Cal. June 6, 2023) ("Because Plaintiffs' remaining theory rests on the inadequacy of [defendant's] disclosures rather than its publication of a false statement, Plaintiffs cannot bring a negligent misrepresentation claim.").

Plaintiff also fails to allege specific facts that would show Defendants' knowledge or intent, or her own justifiable reliance, as explained above in Sections VI and VII. And, as an independent reason to dismiss, Plaintiff fails to allege damages sustained due to her justifiable reliance on any particular false statement by any defendant. She therefore fails to state a claim for negligent misrepresentation.

## VIII.    CONCLUSION

Plaintiff cannot overcome her fundamental inability to establish standing, show personal jurisdiction in this venue, or state a viable claim. For these reasons, Plaintiff's Complaint should be dismissed. Alternatively, the Court should transfer this action to the more convenient venue of the Southern District of Florida.

1  DATED: May 12, 2025                    RACHEL LOWE
2                                         JOE TULLY
                                          BROOKE H. BOLENDER
3                                         EMMA BRADEN
                                          **ALSTON & BIRD LLP**
4

5                                         */s/ Rachel E. K. Lowe*
6                                         Rachel E. K. Lowe
                                          Attorneys for Defendants
7                                         **CELSIUS HOLDINGS, INC., CELSIUS, INC.,**
8                                         **ERIKA WHEATON, DEVON WINDSOR, AND**
                                          **EMILY TANNER**
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATION OF PAGE LIMIT**

The undersigned, counsel of record for Defendants certifies that the above Memorandum contains 35 pages, which complies with the Court's Order granting leave to file additional pages. *See* ECF No. 30.

DATED:  May 12, 2025

*/s/ Rachel E. K. Lowe*
Rachel E. K. Lowe
Attorneys for Defendants
**CELSIUS HOLDINGS, INC., CELSIUS, INC.,
ERIKA WHEATON, DEVON WINDSOR, AND
EMILY TANNER**

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER
Case No. 5:25-cv-00180-MRA-SP