William M. Aron (SBN No. 234408)
**ARON LAW FIRM**
15 West Carrillo Street, Suite 217
Santa Barbara, CA 93101
Tel: (805) 618-1768
Email: bill@aronlawfirm.com

Keith L. Gibson (*Pro Hac Vice*)
**KEITH GIBSON LAW, P.C.**
586 Duane Street, Suite 102
Glen Ellyn, IL 60137
Telephone: (630) 677-6745
Email: keith@keithgibsonlaw.com

Bogdan Enica (*Pro Hac Vice*)
**KEITH GIBSON LAW, P.C.**
1200 N Federal Hwy, Ste.300
Boca Raton FL 33432
Telephone: (305) 306-4989
Email: bogdan@keithgibsonlaw.com

*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| MARIANA DUBREU, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br>v.<br><br>CELSIUS HOLDINGS INC. a/k/a CELSIUS PRODUCTS HOLDINGS INC., DEVIN WINDSOR, ERIKA WHEATON, and EMILY TANNER<br><br>Defendants. | Case No.: 5:25-cv-00180-MRA-SP<br><br>Hon. Monica Remirez Almadani<br>Courtroom 10B<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE TRANSFER** |

# TABLE OF CONTENTS


TABLE OF CONTENTS ........ II

TABLE OF AUTHORITIES ........ IV

I. INTRODUCTION ........ 1

II. STATEMENT OF MATERIAL FACTS ........ 2

IV. LEGAL STANDARD ........ 4

V. ARGUMENT ........ 6

I. DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION IN THIS COURT ........ 6

A. THE COURT HAS GENERAL JURISDICTION OVER DEFENDANT EMILY TANNER ........ 7

B. SPECIFIC JURISDICTION EXISTS BASED ON DEFENTANTS' EXTENSIVE CONTACTS WITH CALIFORNIA ........ 7

(1) DEFENDANTS HAVE PURPOSELY DIRECTED THEIR CONDICT TO CALIFORNIA ........ 8

(2) PLAINTIFF'S CLAIMS ARE RELATED TO DEFENDANTS' CONTACTS WITH CALIFORNIA ........ 10

(3) EXERCISING JURISDICTION OVER DEFENDANTS IS REASONABLE ........ 11

II. DEFENANTS' MOTION TO TRANSFER VENUE IS WITHOUT MERIT ........ 13

A. VENUE IS PROPER IN THIS DISTRICT ........ 13

B. THE COURT SHOULD NOT TRANSFER VENUE TO FLORIDA ........ 14

III. PLAINTIFF HAS STANDING TO BRING THIS ACTION ........ 26

7

A. PLAINTIFF HAS ALLEGED AN INJURY-IN-FACT ........ 16

B. PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF ........ 17

IV. PLAINTIFF'S CLAIMS SATISFY THE PLEADING REQUIREMENTS OF RULE 9(B) .. 19

V. THE COMPLAINT PROPERLY STATES A CLAIM UNDER FRCP 12(B)(6) ............ 21

VI. FAILURE TO DISCLOSE MATERIAL CONNECTIONS IS A VIOLATION OF THE CONSUMER PROTECTION STATUTES ........................................................ 22

VII. PLAINTIFF HAS STATUTORY STANDING TO BRING CLAIMS UNDER UCL AND CLRA ........................................................................................ 23

VII. PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS PROPERLY RAISED ................... 26

IX. PLAINTIFF'S NEGLIGENT MISSREPRESENTATION CLAIM IS PROPERLY PLED ... 27

CONCLUSION ........................................................................................ 28

# TABLE OF AUTHORITIES

**Statutes**


Cal. Civ. Code § 1750 et seq. .......... passim

Cal. Bus. & Prof. Code § 17200 *et seq.* .......... 22

15. U.S.C. §41 et. seq (Federal Trade Commission Act). .......... passim

28 USCA § 1404 .......... 15


**Rules and Regulations**


216 CFR §255.5. .......... passim

Fed. R. Civ. P. 9(b).. .......... passim

Fed.R.Civ.P. 12 .......... passim


**Cases**


*A Allstar Mktg. Grp., 666 F.Supp.2d, 1109, 1130 (C.D. Cal. 2009)*. .......... 15

*AT&T v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir. 1996). .......... 8

*AnchorBank FSB v. Hofer,* 649 F.3d 610, 615 (7th Cir. 2011). .......... 20

*Apex Directional Drilling, LLC v. SHN Consulting Eng'rs & Geologists, Inc.,* 119 F. Supp. 3d 1117, 1126 (N.D. Cal. 2015*)*. .......... 27

*Arcona, Inc. v. Farmacy Beauty, LLC,* No. 2:17-cv-07058, 2018 WL 1441155, *8 (C.D. Cal, March 22, 2018).. .......... B15,16

*Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)*.. .......... 5

*Bates v. United Parcel Serv., Inc.,* 511 F.3d 974 (9th Cir. 2007).. .......... 18

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). .......... 5

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985). .................................. 8

*Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996). ...................... 4

*Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 737 (7th Cir. 2014).......... 19

*Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 946 (9th Cir. 2011). .......... 18

*Chase v. Hobby Lobby Stores, Inc*., No. 17-CV-00881-GPC-BLM, 2017 WL 4358146, at *10 (S.D. Cal. Oct. 2, 2017). ........................................................ 19

*Decker Coal Company v. Commonwealth Edison Company,* 805 F.2d 834, 842 (9th Cir. 1985). ................................................................................................ 15

*Dole Foods Co., Inc. v. Watts,* 303 F.3d 1104, 1108 (9th Cir. 2002) ....................... 7

*Elite Apparel, LLC v. Dallas Cowboys et al.,* No. 13-cv-1038, 2013 WL 12116606, at *4 (S.D. Cal., Nov. 4, 2013). ....................................................................... 16

*Eminence Cap., LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051 (9th Cir. 2003)............ 6

*Foman v. Davis,* 371 U.S. 178, 182 (1962). .......................................................... 7

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.,* 905 F.3d 597, 607 (9th Cir. 2018) ................................................................................................... 12

*Getz v. Boeing Co.,* 547 F.Supp.2d 1080, 1085 (N.D. Cal. 2008). ......................... 16

*Gonzalez v. Palo Alto Labs, Inc., No.* C 10-2456 MEJ, 2010 WL 3930440, at *5 (N.D. Cal. Oct. 6, 2010)........................................................................... 9

*Hall v. Marriott Int'l, Inc., No.* 19CV1715-JO-AHG, 2023 WL 9692466, at *1 (S.D. Cal. June 6, 2023), ........................................................................... 27

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wash. 2d 778, 784, 719 P.2d 531, 535 (1986)...................................................................... 21

*Herbal Brands Inc. V. Photoplaza Inc.*, 72 F.4th, 1085, 1093 (9th Cir. 2023)...... 8,9

*Hinojos v. Kohl's Corp.,* 718 F.3d 1098, 1109 (9th Cir. 2013)*, as amended on denial of reh'g and reh'g en banc* (July 8, 2013). ......................................................... 24

*In re W. States Wholesale Nat. Gas Antitrust Litig.,* 715 F.3d 716, 742 (9th Cir. 2013). ....................................................................................................23

*Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154 .................................................................8

*Johnson v. Nissan N. Am., Inc.,* No. 17-CV-00517-WHO, 2018 WL 6267838......19

*Jones v. GNC Franchising Inc.,* 211 F.3d 495, 498 (9th Cir. 2000). ....................14

*Le v. Kohls Dep't Stores, Inc.,* 160 F. Supp. 3d 1096, 1107 (E.D. Wis. 2016).......18

*Loomis v. Slendertone Distribution, Inc.,* 420 F. Supp. 3d 1046, 1080 (S.D. Cal. 2019)..............................................................................................................25

*Lopes v. Vieira,* 488 F. Supp. 2d 1000, 1033 (E.D. Cal. 2007) ..............................19

*Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1227-28 (9th Cir. 2011) . ..........................................................................................................................8

*Maya v. Centex Corp.,* 658 F.3d 1060 (9th Cir. 2011)...........................................16

*McClellon v. Bank of Am., N.A.,* No. C18-0829-JCC, 2018 WL 4852628, at *5 (W.D. Wash. Oct. 5, 2018). ...............................................................................21

*McHenry v. Renne,* 84 F.3d 1172, 1175 (9th Cir. 1996)........................................21

*Millam v. Energizer Brands, LLC, No.* 5:21-CV-01500-JWH-SHKX, 2022 WL 19001330, (C.D. Cal. Dec. 9, 2022), *aff'd,* No. 23-55192, 2024 WL 2988210 (9th Cir. June 14, 2024*)*...............................................................................24

*Mui Ho v. Toyota Motor Corp.,* 931 F. Supp. 2d 987, 996 (N.D. Cal. 2013).........25

*Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1154-55 (9th Cir. 2006). ..................7

*Peterson v. Cellco P'ship,* 80 Cal. Reptr 3d 316 (Ct. App. 2008).. ........................26

*Pitts v. Terrible Herbst, Inc.,* 653 F.3d 1081 (9th Cir. 2011) ................................16

*Prescott v. Slide Fire Solutions,* LP, 341 F. Supp.3d 1175, 1185 (D. Nev. 2018)..10

*Rano v. Sipa Press Inc.,* 987 F.2d 580, 588 (9th Cir. 1993). ...................................8

*Rhapsody Int'l Inc. v. Lester,* No. 13-cv-05489, 2014 WL 709899, at *6 (N.D. Cal. Feb. 24, 2014) .......... 9

*Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1020 (9th Cir. 2002) .......... 9

*Roth v. Marquez,* 942 F.2d 617, 620 (9th Cir. 1991) .......... 7

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union,* 65 F.4th 1012, 1022 (9th Cir.), cert. denied, 144 S. Ct. 190, 217 L. Ed. 2d 77 (2023) .......... 16

*Sava et al. v. 21st Century Spirits, LLC et al.,* No. 1:22-cv-6083, 2024 WL 3161625 at *4 (N.D. Ill. June 25, 2024) .......... passim

*Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004) .......... 8

*Spokeo, Inc. v. Robins,* 578 U.S. 330, 337, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016) .......... 16

*Taubler v. Giraud,* 655 F.2d 991, 993 (9th Cir. 1981) .......... 7

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.,* 117 F. Supp. 3d 1092, 1111 (C.D. Cal. 2015) .......... 26

*United States v. Mariner Health Care, Inc.,* 552 F. Supp. 3d 938, 946 (N.D. Cal. 2021).. .......... 21

*Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097 (9th Cir. 2003).. .......... 19

*Williams v. Gerber Products Co.,* 552 F.3d 934, 939 (9th Cir. 2008).. .......... 21

# INTRODUCTION

Defendants have deceived millions of consumers by using false and misleading advertising and endorsements to deceptively market Celsius products on social media. Plaintiff's lawsuit is a class action filed on behalf of consumers who were deceived by the Defendants into purchasing Celsius products. The Defendant Influencers misrepresented the material relationship they have with the Celsius brand by promoting and endorsing Celsius products without disclosing the fact that they were paid to do it, in violation of the law. As a result of Defendant's deceptive advertising and false endorsements, Plaintiff purchased Celsius products and paid a premium for them, compared to the actual value of the products.

Plaintiff's Complaint is clear that she purchased Celsius products for which she, and the class members, paid more than their actual value due to false advertising and endorsements posted on social media by the Influencers[1]. This is not a product liability case, but rather a case where consumers got hurt by the unfair and unlawful business practices of Celsius and the Influencers.

This Court has jurisdiction over the Defendants through their contacts with California and, in the case of Influencer, Emily Tanner, because of her residence in California. Further, this Court should not transfer venue of this case to Florida as it would be simply transferring the convenience from one party to another party and the factors do not weigh in favor of transfer to Florida.

For all of the reasons stated below, the Court should deny Defendants' Motion in its entirety. Alternatively, if the Court is inclined to grant the Motion in any form, Plaintiff should be granted to leave to amend her Complaint as requested herein.

---

[1] "Influencers" are defined in the Complaint as Defendants Devon Barbara, Erika Wheaton, and Emily Tanner. Compl. ¶34-36.

## STATEMENT OF MATERIAL FACTS

*Celsius*

Celsius Holdings Inc. a/k/a Celsius Products Holdings, Inc. manufactures and sells energy drink products. *Compl*. ¶ 8. A good percentage of Celsius product sales are generated by undisclosed advertising on social media. *Compl*. ¶ 13. Celsius and its paid influencers have been omitting any reference on social media to the fact that the endorsements are paid advertising rather than the Influencers' honest opinion. *Compl*. ¶ 18. Celsius pays the Influencers to post the undisclosed paid endorsements on social media. *Compl*. ¶ 19. Plaintiff's Complaint plainly states that the Defendant Influencers knowingly posted depictions of themselves consuming Celsius while mentioning the brand and including the brand's tag in their social media posts. *Compl.* ¶ 23. Celsius' business model is to use influencers to pretend to use Celsius products and present this as fact to the influencers' social media followers, while being compensated but without disclosing the significant money they are paid. *Id.* ¶ 50. This was done for the purpose of having Plaintiff and class members purchase Celsius products at inflated prices exclusively because of the misleading way they are advertised on social media. *Id.* ¶ 51.

*The Influencers*

In the last ten years, Instagram has become one of the most popular ways to influence consumer behavior on social media. *Compl.* ¶46. The Influencers are social media users with hundreds of thousands or millions of followers. *Id.* ¶¶ 34-36; They post regularly on Instagram, about their daily life and their social interactions. Plaintiff is following the Influencers, meaning that the Influencer's posts are showing in Plaintiff's feed and in the feed of everyone else following the Influencers. *Id* ¶¶ 55,62. The Influencers are including in their posts Celsius products and tag the company on Instagram. *Id.* ¶¶ 34-36. Celsius and the Influencers are completely omitting or hiding any reference to the fact that the social media posts are not the Influencer's honest

opinion, but rather illegal paid endorsements. *Id.* ¶18. Celsius pays the Influencers for their advertising. *Id.* at ¶ 19. In order to artificially inflate the prices for the Celsius products, both Celsius and the Influencers devised a scheme where the Influencers promote Celsius products by endorsing or recommending them on Instagram, while pretending they are disinterested consumers. *Id*. ¶3.

Influencers are not informing their followers that the posts are sponsored, by completely omitting any indication that the post is the result of a partnership. *Compl.* ¶¶ 34,35, or by using "#celsiusbrandpartner" buried and mixed in a list of 10 other hashtags after the user is required to click "More". *Id.* ¶36.

*Plaintiff and the Class Members*

Plaintiff saw Celsius products being promoted by the Influencers she followed. *Compl*. ¶55. By looking at the posts, prior to making her purchase, Plaintiff was unable to discern the fact that those posts were paid endorsements, rather than organic, honest recommendations by the Influencers. *Id.* ¶¶ 18, 24, 26. Relying on the undisclosed endorsements, Plaintiff purchased assorted Celsius energy drinks from Costco on May 17, 2023. *Id.* ¶ 56. Plaintiff purchased the Celsius products at a Costco located in Eastvale, California. Ex. 1, Declaration of Mariana Dubreu, ¶ 2. Plaintiff has seen Celsius energy drinks for sale in other retail locations in California, including Slater Bros. Markets, Albertson's grocery stores and at many gas stations. *Id.* ¶ 3.

Plaintiff relied upon Influencers' Instagram posts when making her purchasing decision. Relying on the undisclosed advertising Plaintiff and Class Members purchased Celsius products and paid a premium, while the products purchased proved to be of a much lower quality and value than the price paid. *Compl*. ¶4. In fact, the only reason Plaintiff purchased the products was the way they were advertised: "But for the undisclosed advertising by the Influencers and the misleading advertising claims, Plaintiff and the Class Members would not have purchased Celsius products." *Id*. *at* ¶50. "Plaintiff and Class Members followed what they believed to be the honest

endorsement of the Influencers." *Id.* ¶26. Despite being compensated for endorsing Celsius and pretending to consume or consuming Celsius products, none of the Influencers use the "paid partnership" label suggested by the FTC, making it impossible for a social media user to discern the fact that the post was sponsored. *Id.* at ¶ 24,52.

## LEGAL STANDARD

### A. Motions to Dismiss

Under Rule 12(b)(6), when a defendant seeks to dismiss a complaint for failure to state a claim upon which relief can be granted, a court must accept all allegations of material fact in the complaint as true and construe them in the light most favorable to the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). A complaint will survive a Rule 12(b)(6) motion so long as it articulates "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. The FTC Guidelines

Defendant repeatedly claims that the "2023 FTC Guidelines that Plaintiff relies on throughout her Complaint became effective *after* the cited Instagram posts" (Motion at 29). However, this is not factually accurate. In fact, the FTC Guidelines regarding social media influencers were published in November 2019.

FEDERAL TRADE COMMISSION
business.ftc.gov
November 2019

Screenshot available at: https://www.ftc.gov/system/files/documents/plain-language/1001a-influencer-guide-508_1.pdf

The 2019 Guidelines for Social Media Influencers specifically interpret the FTC

Act to say that:

- "Keep in mind that tags, likes, pins, and similar ways of showing you like a brand or product are endorsements."
- "Make sure people will see and understand the disclosure.
- Place it so it's hard to miss.
- The disclosure should be placed with the endorsement message itself; Disclosures are likely to be missed if they appear only on an ABOUT ME or profile page, at the end of posts or videos, or anywhere that requires a person to click MORE.
- Don't mix your disclosure into a group of hashtags or links.
- If your endorsement is in a picture on a platform like Snapchat and Instagram Stories, superimpose the disclosure over the picture and make sure viewers have enough time to notice and read it.

As it is undisputed that the FTC guidelines were published in November 2019, the Court should ignore the arguments as to the FTC guidelines being effective only after Plaintiff's purchase and after the date of the posts. In fact, both the Guidelines and the FTC Act precede both the posts and the purchase.

The same provisions are, in fact, included in the 2009 version of 16 C.F.R. § 255.5 (December 1, 2009). An "endorsement" is defined as "any advertising message (including verbal statements, demonstrations, or depictions of the name, signature, likeness or other identifying personal characteristics of an individual or the name or seal of an organization) that consumers are likely to believe reflects the opinions, beliefs, findings, or experiences of a party other than the sponsoring advertiser .... The party whose opinions, beliefs, findings, or experience the message appears to reflect will be called the endorser and may be an individual, group, or institution." 16 C.F.R. § 255.0(b) (December 1, 2009). "Endorsements" and "testimonials" are treated "identically" by the FTC, and "[w]hether a particular endorsement or testimonial is

deceptive will depend on the specific factual circumstances of the advertisement at issue." 16 C.F.R. § 255.0(a), (c) (December 1, 2009). *Sava v. 21St Century Spirits, LLC,* No. 22 C 6083, 2024 WL 3161625, at *19 (N.D. Ill. June 25, 2024).

**C. Leave to Amend**

Where courts believe a complaint requires additional facts to state a claim, "Rule 15 advises the court that 'leave shall be freely given when justice so requires.' This policy is 'to be applied with extreme liberality.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (motions for leave to amend should be granted with "extreme liberality"). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"[2] *Id.* at 1052 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Should the Court believe that Plaintiff has failed to include detailed enough allegations regarding personal jurisdiction, standing, or any other issue, Plaintiff respectfully requests leave to amend to allege these facts.

## ARGUMENT

### I. DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION IN THIS COURT

Personal jurisdiction must satisfy both the long arm statute of the state and constitutional due process. *Taubler v. Giraud*, 655 F.2d 991, 993 (9th Cir. 1981). Generally, personal jurisdiction exists if (1) it is permitted by the forum state's long-arm statute and (2) the "exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154-55 (9th Cir. 2006).

[2] None of these factors are present here, and should the Court find merit to any of Defendants' arguments, all of their concerns could be rectified by amendment.

California's long arm statute extends to the limits of constitutional due process. *Roth v. Marquez*, 942 F.2d 617, 620 (9th Cir. 1991). "Uncontroverted allegations in the complaint must be taken as true" and conflicts "over statements contained in affidavits must be resolved in plaintiff's favor". *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996); *Dole Foods Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). Here, Defendant Emily Tanner ("Tanner") is subject to general jurisdiction in this Court. This is undisputed. The Florida Defendants are subject to specific jurisdiction based on the extent of their contacts with California. For these reasons, Defendants' motion to dismiss for lack of jurisdiction should be denied.

***A. The Court has General Jurisdiction Over Defendant Emily Tanner.***

Defendant Emily Tanner is subject to the general jurisdiction of this Court. Tanner is a citizen of California who resides in Los Angeles, California. (*Compl.,* ¶ 35). This is undisputed. Defendants' Motion indicate that Tanner "consents to proceed" in the Southern District of Florida. (Def. Motion, pg. 13). Although it is offered in the context of Defendant's venue arguments, it does not divest the Court of jurisdiction over Emily Tanner and should not be construed as such. Further, Tanner's argument that the forum selection clause in her contract with Celsius weighs in favor transfer to the Florida court is without merit (*See supra*) and should not be considered by this Court when addressing jurisdictional arguments.

**B. *Specific Jurisdiction Exists Based on Defendants Extensive Contacts with California.***

Defendants are subject to the specific jurisdiction of this Court. A court may assert specific jurisdiction over a claim for relief that arises out of a defendant's forum-related activities. *Rano v. Sipa Press Inc.*, 987 F.2d 580, 588 (9th Cir. 1993). Three factors are evaluated in determining specific jurisdiction. Three factors are evaluated in determining specific jurisdiction: (1) the defendant must "purposefully direct his activities or consummate some transaction with the forum or resident thereof;" (2) the claim must arise out of or result from defendant's forum-related activities; and (3) the

exercise of jurisdiction must be reasonable. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227-28 (9th Cir. 2011). As the Supreme Court has held, a physical presence in the forum state is not needed. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). If plaintiff establishes the first two prongs, then it is the defendant's burden to "present a compelling case" that the third prong, reasonableness, has not been satisfied. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174). Here, Plaintiff has met her burden as to the first two requirements and Defendants have failed to meet their burden as to the third requirement, reasonableness. For these reasons, the Florida Defendants' Rule 12(b)(2) motion to dismiss should be denied.

**(1) Defendants Have Purposefully Directed Their Conduct to California.**

The Ninth Circuit applies the "effects" test from *Calder v. Jones*, 465 U.S. .783 (1984), to determine a defendant's "purposeful direction" towards the forum state. *Schwarzenegger*, 374 F.3d at 803. A defendant is subject to specific jurisdiction if the defendant: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole*, 303 F.3d at 1111.

*(a) It Is Undisputed That Defendants' Willful Activities of Advertising and Product Sales in California Constitutes and Intentional Act.*

Under the "effects" test, an intentional act is one committed with "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Rhapsody Int'l Inc. v. Lester*, No. 13-cv-05489, 2014 WL 709899, at *6 (N.D. Cal. Feb. 24, 2014) (quoting *Schwarzenegger*, 374 F.3d at 806 (9th Cir. 2004)). The personal jurisdiction inquiry rests on the concept of "fair play and substantial justice." *Herbal Brands Inc. V. Photoplaza Inc.*, 72 F.4th, 1085, 1093 (9th Cir. 2023) (citing *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154 (citation and internal quotations mark omitted). Pre-internet, the "distribution in the forum state of

goods originating elsewhere" was a paradigmatic example of conduct purposefully directed at the forum state. *Herbal Brands, Inc.*, 72 F.4th at 1093 citing to *Schwarzenegger*, 374 F.3d at 803.

*(b) Defendants' Conduct Was Expressly Aimed at California.*

Defendants conduct was expressly aimed at California. According to the Ninth Circuit, "operating even a passive website in conjunction with 'something more' – conduct directly targeting the forum – is sufficient to confer personal jurisdiction." *Life360, Inc. v. Advanced Ground Info. Sys., Inc.*, No. 15-cv-00151-BLF, 2015 WIL 5612008 (N.D. Cal. Sept. 21, 2015) (internal quotation marks omitted) (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002)). In determining this "something more', the Ninth Circuit considers "the interactivity of defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant has 'individually targeted' a plaintiff known to be forum resident." *Mavrix Photo*, 647 F.3d at 1229.

Here, Defendants have engaged in sufficient conduct targeting California to support a finding that it expressly aimed its intentional acts at California. "Personal jurisdiction is appropriate where an entity is conducting business over the internet and has offered for sale and sold its products to forum residents. It is well established that "the distribution in the forum state of goods originating elsewhere," constitutes evidence that a "defendant purposefully directed his conduct toward a forum state." *Prescott v. Slide Fire Solutions, LP*, 341 F. Supp.3d 1175, 1185 (D. Nev. 2018) (quoting *Schwarzenegger*, 374 F. 3d at 803. *See, e.g.*, *Gonzalez v. Palo Alto Labs, Inc.*, No. C 10-2456 MEJ, 2010 WL 3930440, at *5 (N.D. Cal. Oct. 6, 2010) ("[A]s it appears that Defendant has marketed and continues to market Paravol product through numerous retail outlets in California … it has delivered its products into the stream of commerce with the expectation that they will be purchased by consumers in [the forum].").

Here, Plaintiff has met its burden to demonstrate Defendants have purposefully availed themselves of the California forum. Plaintiff purchased Defendant Celsius products at a Costco retailer on May 17, 2023. (*Compl*., ¶ 56). Plaintiff's purchase was made at the Costco retail store located in Eastvale, California. (Ex. A, Plaintiff's Declaration, ¶ 2). Plaintiff has personally viewed Celsius products for sale at other California locations, specifically Slater Bros. Markets, Albertson's grocery stores, and at many gas stations. (*Id*, ¶ 3). Plaintiff viewed Influencer Defendants' Erica Wheaton and Devon Windsor's Instagram posts while physically located in California. (*Id*, ¶ 4). Further, the Influencer Defendants Erica Wheaton and Devon Windsor's Instagram posts can be used to purchase Celsius products by clicking on the tag in their Instagram posts advertising those products. (*Id*, ¶ 5). These facts, which must be taken as true for the purposes of this motion, definitively demonstrate that Defendants purposefully availed themselves of the California forum.

*(c) Defendants Knew That Their Actions Would Lead to Harm in California.*

Plaintiff's Complaint is plain that the Defendant Influencers knowingly posted depictions of themselves consuming Celsius while mentioning the brand and including the brand's tag in their social media posts. (*Compl.* ¶ 23). Celsius' business model is to use influencers to pretend to use Celsius products and present this as fact to the influencers' social media followers, while being compensated but without disclosing the significant money they are paid. *Id.* ¶ 50. This was done for the purpose of having Plaintiff and class members purchase Celsius products at inflated prices exclusively because of the misleading way they are advertised on social media. *Id.* ¶ 51. Plaintiff's Complaint sufficiently allege that Defendants knew their actions would lead to consumer purchasing Celsius in California and therefore to harm in California.

**(2) Plaintiff's Claims Are Related to Defendants' Contacts with California.**

Plaintiff's claims directly related to the Defendants' contacts with California because the Defendants, through the Influencers Instagram posts, deceptively

advertised Defendant Celsius' products which, after being viewed by Plaintiff in California, caused Plaintiff to purchase Celsius products at a retail store in California. At the root of each of Plaintiff's causes of action is the deceptive marketing of Celsius products on Instagram, which led to Plaintiff's purchase of Celsius products. Because of that deceptive advertising by the Influencers, at the behest of Celsius, Plaintiff and the class members were harmed.

The Ninth Circuit has adopted a "but for" test for determining whether a plaintiff's cause of action arises out of the defendant's forum-related activities. *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013). "[A] lawsuit arises out of the defendant's contacts with the forum state, if a direct nexus exists between those contacts and the cause of action." *Id.*

Plaintiff's claims, which allege harm caused by Defendant Celsius' sales of products, clearly arise out of and relate to Defendant's conduct of selling those same products to residents of California. As previously stated, Influencer Defendant Tanner is subject to general jurisdiction in California. Influencer Defendants Windsor and Wheaton illegally promoted Celsius products on Instagram with the intent that those promotions would reach California residents and cause them to purchase Celsius products. Thus, the Defendants' promotion, sale, and distribution of products in the forum state related to Plaintiff's claims.

**(3) Exercising Jurisdiction Over Defendants Is Reasonable**

Once Plaintiff satisfies the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable. *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 476-78, 105 S.Ct. 2174). In the Ninth Circuit, Courts employ a balancing test that weighs seven factors: (1) the extent of the defendant's purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's

interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Herbal Brands, Inc.*, 72 F.4th at 1096 (citing *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 607 (9th Cir. 2018)).

Applying these factors demonstrates that Defendants have not met their burden to show that the exercise of jurisdiction would not be reasonable. First, Defendants purposefully injected their business Into California. The Celsius Defendants promoted, distributed and sold their energy beverage drinks at numerous retailers in California. Further, Influencers Wheaton and Windsor promoted Celsius products to California residents on Instagram and made it possible to purchase Celsius products through links on their Instagram posts. Second, the burden on Defendants to litigate in California is low. Defendants would have to do its' investigation and document production whether the case was pending in California or Florida. Plaintiff's counsel has indicated its agreement and consent to take the depositions of Defendants and their representatives in Florida (Ex. B, Declaration of Bogdan Enica), thereby making it unnecessary for Defendants to travel to California. Defendants' counsel is located in California. Defendants have not met their burden.

Third, Defendants have not shown any conflict with the sovereignty of their home state.

Fourth, California has an interest in adjudicating this dispute. Plaintiff resides in California and the products at issue were promoted, distributed and sold at California retailers. Further, Plaintiff's claims are based on California statutory law.

Fifth, California affords the most efficient judicial resolution of Plaintiff's statutory California claims. It would be unreasonable for a Florida court to adjudicate California claims. Further, it would be inefficient and unreasonable for cases to proceed

in both Florida in California, a possibility if the Court finds that it has jurisdiction over certain Defendants but no other Defendants.

Sixth, California is important to Plaintiff's interest in convenient and effective relief as it is Plaintiff's place of residence and the claims arise under California statutory law.

Lastly, while Defendants have suggested Florida, it is based in part on a faulty argument regarding the contractual forum selection clause to which Plaintiff is not even a party. While Florida may have some connection to the discovery in this case as it is the home state of certain defendants, it is not the proper venue, as argued herein. For all of these reasons, Defendants have not met their burden to show that the exercise of jurisdiction over the Defendants is not reasonable.

## II. DEFENDANTS' MOTION TO TRANSFER VENUE IS WITHOUT MERIT.

### A. Venue is Proper in This District

Venue is proper where Defendants have promoted and sold their products. Under 28 U.S.C. § 1391(b), when jurisdiction for a civil action is not brought solely on diversity of citizenship, it may be brought in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no other district in which the action may otherwise be brought. Here, venue is proper in California because a substantial part of the events or omissions giving rise to the claim occurred in California.

Plaintiff resides in Riverside, California. (*Compl,* ¶ 29). Defendant Emily Tanner resides in Los Angeles, California. (*Id.* ¶ 35). Plaintiff purchases the Celsius energy drinks at issue at a Costco retail store located in Eastvale, California. (Ex. A, Plaintiff's Declaration ¶ 2). Plaintiff viewed the various Instagram posts promoting

Celsius products referenced in the Complaint while physically present in California. (*Id.* ¶ 4).

In support of their arguments regarding the proper venue, Defendants rely on a contractual forum selection clause in an alleged agreement between Defendant Tanner and Defendant Celsius. (*Motion*, at 13). Defendants' argument should be disregarded by the Court. Plaintiff Dubreu is not a party to this contract, and it is not binding in any way on her. Further, there are no claims between Tanner and Celsius that would even plausibly make this contractual provision relevant to the issue of venue in this case. Defendants also submit that the Southern District of Florida is proper because Celsius develops its social media strategy there, including engaging with brand ambassadors to promote Celsius products. (*Id.* at pgs. 12-13). Even if this is true, it does not outweigh the fact that a substantial part of the events or omission related to Plaintiff's claims occurred in California.

**B. The Court Should Not Transfer Venue to Florida**

Defendants request to transfer venue to Florida under 28 U.S.C. § 1404(a) is without merit. In determining whether a transfer is appropriate under section 1404(a), the Ninth Circuit requires district courts to weigh multiple factors. *Jones v. GNC Franchising Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). The district court must adjudicate motions to transfer venue according to an individualized, case-by-case consideration of convenience and fairness. *Allstar Mktg. Grp.*, 666 F.Supp.2d, 1109, 1130 (C.D. Cal. 2009). In deciding a motion to transfer venue, the Court weighs several factors, including, (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the location of books and records; (5) which forum's law applies; (6) the interests of justice; and (7) administrative concerns. *Id.* To show cause for a transfer, a defendant must make strong showing of inconvenience under these factors. *Decker Coal Company v. Commonwealth Edison Company*, 805 F.2d

834, 842 (9th Cir. 1985). A transfer should not be ordered if the result is merely to shift the inconvenience from defendant to plaintiff. *Id.*, 805 F.2d at 843.

A plaintiff's choice of venue is generally accorded deference. *Allstar Mktg. Grp.*, 666 F.Supp2d. at 1131. When a plaintiff chooses to litigate in their home forum, this factor weighs against transfer. *Arcona, Inc. v. Farmacy Beauty, LLC*, No. 2:17-cv-07058, 2018 WL 1441155, *8 (C.D. Cal, March 22, 2018). Here, Plaintiff's home forum is California, and it should be accorded deference.

The convenience of the parties and witnesses does not weigh in favor of transfer to Florida. While transfer to Florida may be more convenient for certain of the Defendants, it would create a significant inconvenience for the Plaintiff to travel outside of California to prosecute her case. Ultimately, if a transfer would simply be the exchange of one party's inconvenience for that of another, the factor should be considered neutral. *See Arcona, Inc.*, 2018 WL 1441155 at *8.

Where the primary claims involve state law, there is a presumption that a Court in the state under whose laws the claims are brought, will be more familiar with the relevant law. *Elite Apparel, LLC v. Dallas Cowboys et al.*, No. 13-cv-1038, 2013 WL 12116606, at *4 (S.D. Cal., Nov. 4, 2013). A California district court is more familiar with California law that district courts in other states. *Id.* citing *Getz v. Boeing Co.*, 547 F.Supp.2d 1080, 1085 (N.D. Cal. 2008). Additionally, there is no Florida subclass pled in Plaintiff's Complaint. Other than the Nationwide Class, the only other class pled is a California Subclass. *Compl.,* ¶ 74. A California district court would have more of an interest in the California Subclass than a Florida district court. With no Florida Subclass in Plaintiff's Complaint, a Florida court would have no particular interest in adjudicating the claims of the California Subclass.

Defendants argue that Plaintiff's Counsel, Keith Gibson Law, P.C. is a plaintiff's law firm based in Boca Raton, Florida and that Plaintiff's choice of forum is only reflective of forum shopping. (Motion, at 14-15). This is a factually incorrect

statement and there is no basis to suggest forum shopping. While it does have an office in Boca Raton, Florida, the firm Keith Gibson Law, P.C. is actually based in Glen Ellyn, Illinois and registered as a professional corporate under the laws of Illinois and with the Illinois Supreme Court. (Ex. C, Keith Gibson Declaration, ¶ 4). Further, Plaintiff has counsel in California, William Aron, who is located in the Central District of California. It is clear from the Complaint that Plaintiff herself resides in California and that the transaction at the heart of her claims occurred in this district. It is disingenuous to suggest forum shopping based on the record before this Court and Defendants' suggestion to that effect should be stricken and disregarded by the Court.

For these reasons, Defendants' Motion to Transfer Venue should be denied.

## III. PLAINTIFF HAS STANDING TO BRING THIS ACTION

### A. Plaintiff has alleged an Injury-in-fact

Article III of the U.S. Constitution limits the jurisdiction of federal courts 'to the resolution of actual cases or controversies. *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union, 65 F.4th 1012, 1022 (9th Cir.), cert. denied,* 144 S. Ct. 190, 217 L. Ed. 2d 77 (2023) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016)).

At the outset of litigation, a controversy exists if the plaintiff demonstrates that she has standing, meaning "legally cognizable interest in the outcome of the litigation." *Pitts v. Terrible Herbst, Inc.,* 653 F.3d 1081 (9th Cir. 2011). To establish standing, Plaintiff must demonstrate "(1) it has suffered an injury in fact that is concrete and particularized, and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Maya v. Centex Corp.,* 658 F.3d 1060 (9th Cir. 2011). Plaintiff's Complaint demonstrates all three elements.

First, Plaintiff purchased Celsius products and paid a premium. *Compl.* ¶¶4, 7,

29, 68.

Second, Plaintiff's decision to purchase […] and pay a premium for the Celsius products was determined by the undisclosed paid endorsements posted by Influencers she followed. *Id.* The false endorsements and misrepresentations were the central reason for Plaintiff and similarly situated consumers to choosing to purchase Celsius products over other alternatives, and to pay a premium for those products. *Id.* ¶¶8-15.

Lastly, Plaintiff is seeking monetary damages, restitution, injunctive and declaratory relief from the Defendants. *Id.* pg.16. Plaintiff's allegations are sufficient to confer standing in this Court.

"Where plaintiffs allege that they understood that they would be receiving a product of a certain quality and with certain attributes but instead received a product that deviated from their expectations […] This is a classic economic injury through which standing invariably obtains." *Sava v. 21st Century Spirits, LLC,* No. 22 C 6083, 2024 WL 3161625, at *5 (N.D. Ill. June 25, 2024). To the extent the Court requires the Plaintiff to further allege facts to support this argument, by alleging a comparative value for the damages, Plaintiff respectfully requests leave to amend.

**B. Plaintiff has standing to seek injunctive relief**

To have standing for prospective injunctive relief, a plaintiff must face a real and immediate threat of repeated injury. *Chapman v. Pier 1 Imports (U.S.) Inc*., 631 F.3d 939, 946 (9th Cir. 2011). This is exactly the case here.

"Social media emerged in the last years as a main source of information and communication for billions of users," including the Plaintiff. *Compl.* ¶43. As millions of other consumers, Plaintiff is active on Instagram and does not plan to close her Instagram account any time soon. Also, Plaintiff is following the Influencers on Instagram. *Id* ¶55. Injunctive relief would require the influencers to properly disclose their paid relationship with an advertiser. It is not now, nor will it be possible in the future, for Plaintiff to discern which posts are sponsored absent a clear disclosure.

While now Plaintiff knows the truth about Celsius products, Plaintiff cannot assume that all endorsements and recommendations on Instagram are paid, because this is not the case. A judicial decision requiring adequate disclosures from Influencers would benefit the named plaintiff and the class members in the future. In other words, absent judicial intervention, she is "facing a "real and immediate" threat of future injury." Past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury. *Bates v. United Parcel Serv., Inc.,* 511 F.3d 974 (9th Cir. 2007). Indeed, without being able to discern which endorsements are real and which ones are paid, Plaintiff may fall for the same trap in the future.

The same is true about Celsius. In a case addressing a retailer's pricing policy, at least one court held that viewing the facts in the light most favorable to [Plaintiff], the Court concludes that [Plaintiff] has alleged a "significant likelihood and immediacy" of injury from [Defendant] advertising scheme, and that an order from this Court would be able to redress that harm […] when the allegedly deceptive advertising scheme was "company-wide, pervasive, and continuous." *Le v. Kohls Dept. Stores, Inc.,* 160 F. Supp. 3d 1096, 1103-04 (E.D. Wis. 2016).

"For example, just because someone is aware that the police have acted brutally in the past does not automatically deprive that person of standing to enjoin brutal police activity *so long as* they can show such brutality is *likely* to harm him/her in the future." *Le,* 160 F. Supp. 3d at 1111. At least one court in California found *Le* as being persuasive. *See Chase v. Hobby Lobby Stores, Inc.,* No. 17-CV-00881-GPC-BLM, 2017 WL 4358146, at *10 (S.D. Cal. Oct. 2, 2017).

Indeed, without an order requiring that Celsius modifies its company-wide, pervasive, and continuous policies of requiring undisclosed paid endorsements, it would be impossible for the Plaintiff to know if the pricing is artificially inflated. In other words, it would always be impossible to discern if a lack of disclosures means that the endorsement is real (and no disclosure is necessary) or is the endorsement is

paid, but Celsius, unlike its competitors, fails to comply with the requirements of the FTC Act, while overcharging for its products.

## IV. **PLAINTIFF'S CLAIMS SATISFY THE PLEADING REQUIREMENTS OF RULE 9(B)**

Although Rule 9(b) "'ordinarily requires describing the who, what, when, where, and how of the fraud[,]'" the "precise level of particularity required … depends upon the facts of the case[.]" *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 737 (7th Cir. 2014) (quoting *AnchorBank FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)); see also *Johnson v. Nissan N. Am., Inc.,* No. 17-CV-00517-WHO, 2018 WL 6267838, at *2 (N.D. Cal. May 17, 2018 (Rule 9(b) requires "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff").

In a case where fraud is not an essential element of a claim, only allegations of fraudulent conduct must satisfy the heightened pleading requirements; allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003).

Also, Rule 9(b) may be relaxed to permit discovery in a limited class of corporate fraud cases where the evidence of the fraud is within a defendant's exclusive possession. *Lopes v. Vieira*, 488 F. Supp. 2d 1000, 1033 (E.D. Cal. 2007). This is applicable to this case, where any evidence of payments between Celsius and the Influencers is in Defendants' exclusive possession.

Regarding the Influencers, the Motion states that the Plaintiff failed to identify whose posts she viewed and relied upon before deciding to make her product purchase (Motion at 30). However, the Complaint is clear about the fact that "Plaintiff is "following" all the Influencers on Instagram. "Plaintiff's decision to purchase Celsius products and pay a premium for those products was determined by the Influencers she

followed, specifically by the Influencers in this case and the fact that they promoted Celsius products." *Compl.* ¶ 55.

The plain language meaning of the paragraph is that Plaintiff is "following" the Influencers now and she was following them before making the purchase. It is these Influencers (the Defendants) **who** induced the Plaintiff to make her purchase.

There are other influencers that are involved in this pricing scheme, (*see Compl.* ¶ 68), but the Plaintiff does not allege that she is following them or that they induced her to purchase Celsius products. Certainly, the other influencers induced other members of the putative class to purchase Celsius products and pay a premium for them.

Plaintiff's Complaint is also clear as to the "**what**" required by Fed. R. Civ. Pro. 9(b) Plaintiff alleges that her claims are based on the Instagram posts published by the Influencers in which they endorse Celsius. Specifically, Plaintiff alleges that "[b]y looking at the posts, prior to making their purchases, Plaintiff was unable to discern the fact that those posts were paid endorsements, rather than organic, honest recommendations and candid endorsements by the Influencers by the Influencers." *Compl.* ¶ 24.

"Plaintiff and Class Members followed what they believed to be the honest endorsement of the Influencers." *Compl.* ¶ 26. Despite being compensated for endorsing Celsius and pretending to consume or consuming Celsius

products, none of the Influencers use the "paid partnership" label suggested by the FTC, making it impossible for a social media user to discern the fact that the post was sponsored. *Compl.* ¶ 63. The Complaint also includes screenshots of infringing posts, each one of them containing all the elements required under Rule 9(b): who, when, where and what.

So, regarding the "**what**," it is the endorsements on social media, specifically Instagram, that the Influencer Defendants ("Influencers") are posting without using

appropriate disclosures.

Rule 9(b) does not require the introduction of evidence at the pleadings stage, but the court accepts factual allegations as true. *United States v. Mariner Health Care, Inc.,* 552 F. Supp. 3d 938, 946 (N.D. Cal. 2021).

Defendants rely on *McHenry v. Renne*, 84 F.3d 1172, 1175 (9th Cir. 1996), but their reliance is misplaced. In *Renne*, the court observed that “only by months or years of discovery and motions can each defendant find out what he is being sued for.” Id. at 1178.

**Reasonable consumer standard**

A practice is unfair or deceptive if it violates a consumer protection statue or it has the capacity to deceive a substantial portion of the public. *McClellon v. Bank of Am., N.A.*, No. C18-0829-JCC, 2018 WL 4852628, at *5 (W.D. Wash. Oct. 5, 2018) quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wash. 2d 778, 784, 719 P.2d 531, 535 (1986).

Courts have recognized that “[w]hether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and which usually cannot be made on [a motion to dismiss].” *Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th Cir. 2008).

Arguments improperly challenge the factual accuracy of the allegations and are irrelevant at this stage of the litigation. Nevertheless, a reasonable consumer, when comparing an Instagram post containing “#ad” and “Paid partnership” with one omitting the references to a sponsor can only conclude that the social media user making the post was not compensated for the post without references to sponsorship.

## V. <u>THE COMPLAINT PROPERLY STATES A CLAIM UNDER FRCP 12(B)(6)</u>

Plaintiff’s Complaint states a cause of action as to statutory violations, unjust enrichment and negligent misrepresentation.

Defendant’s Omissions-Based Deception Theory is a red herring. As explained

below, Influencer Defendants advertised and endorsed Celsius products without disclosing material connections to the brand. While the Motion alleges that the FTC Guidelines were not addressing social media before July 2023, the argument does not have any legal basis. Even if we take as true the interpretation that the November 2009 were not codified at the time of posting,

It is true that the FTC Act does not provide for a private cause of action, but none is alleged. Specifically, the violations of the FTC Act are "not pled as an independent cause of action." *Compl.* pg.13.

Also, this is not a product liability case, therefore the "product function" is irrelevant in this case.

## VI. FAILURE TO DISCLOSE MATERIAL CONNECTIONS IS A VIOLATION OF THE CONSUMER PROTECTION STATUTES

"California Consumers Legal Remedy Act (CLRA), Cal. Civ. Code § 1750 et seq., and the California Unlawful Competition Act (CUCL), Cal. Bus. & Prof. Code § 17200 *et seq*. […] are among a larger group of state statutes that are "known as 'Little-FTC Acts' because they are patterned on" the FTC Act. While the FTC Act provides for only government enforcement of its prohibitions, the Little FTC Acts "provide private rights of action" to enforce their prohibitions of "unfair business practices, including deceptive advertising." In their own ways and to different extents, these Little FTC Acts incorporate by reference the FTC Act and its implementing rules and regulations, as well as interpretations of the same set forth by the FTC and the federal courts." *Sava v. 21St Century Spirits, LLC*, No. 22 C 6083, 2024 WL 3161625, at *9 (N.D. Ill. June 25, 2024).

16 C.F.R. § 255.0(b)–(c) applies broadly to "any advertising message ... that consumers are likely to believe reflects the opinions, beliefs, findings, or experiences of a party other than the sponsoring advertiser. *Id* at *19

In *Sava*, like here, the Influencers sometimes "only posed next to a bottle of [drink] and tag [the drink manufacturer] in their posts, suggesting that this is their drink of choice when it comes to" [in our case, energy drinks]. "Drawing all reasonable inferences in plaintiffs' favor, at least a significant majority of these posts qualify as "advertising message[s] ... that consumers are likely to believe reflect[ ] the opinions, beliefs, findings, or experiences" of the Influencers rather than of "the sponsoring advertiser," *Id* at *20

In this case, similar to *Sava*, Plaintiff specifically alleges that she took the Influencers to be offering "honest opinion" about Celsius, *Compl*. ¶18, and "would not have purchased [Celsius] products if they knew that the Influencers were paid" to promote it. (*Compl.* ¶ 57) "In short, the court [in Sava] agrees with plaintiffs that the Influencers' posts come within the scope of Section 255.5 and the material connection between the Influencers and [the sponsor] "might materially affect the weight or credibility of the [Influencers'] endorsements." *Sava*, 2024 WL 3161625, at *20

Therefore, according to Section 255.5 the court in *Sava* concluded that the paid relationship between [the sponsor] and the Influencers should have been disclosed by the Influencers. Furthermore, recognizing that whether the Instagram posts are "deceptive ... depend[s] on the specific factual circumstances" surrounding the posts, see 16 C.F.R. § 255.0(a), the court concluded that the […] Complaint plausibly allege[d] that the Influencers' failures to disclose were "deceptive acts." *Id*, at *21.

## VII. <u>THE PLAINTIFF HAS STATUTORY STANDING TO BFING CLAIMS UNDER UCL AND CLRA</u>

In this case, the standard under the UCL is similar to Article III standing. Plaintiff has to allege that she was deprived of money. The motion alleges that "because the Plaintiff cannot meet the lower Article III's standing for injury-in-fact, she likewise cannot meet the statutory standing requirement." Motion at 26.

However, as discussed supra, Plaintiff's allegations are sufficient to satisfy the

statutory standing requirements. "California Supreme Court held that all a consumer need allege to establish standing to bring a UCL or FAL claim is that (1) the defendant made a false representation about a product, (2) the consumer purchased the product in reliance on the misrepresentation, and (3) he would not have purchased the product otherwise." *Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1109 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013). This is exactly the case here. Defendants falsely pretended that the influencers are disinterested consumers and endorse the product. In deciding to purchase Celsius products, Plaintiff and Class Members followed what they believed to be the honest endorsement of the Influencers and relied on the misrepresentation *Compl.* ¶26. But for the false endorsements by the Influencers and the misleading advertising claims, Plaintiff and the Class Members would not have purchased Celsius products at the price they purchased it for. *Compl.* ¶25.

As discussed supra, Plaintiff here does not make a "reinterpretation" of the Instagram posts, and a reasonable consumer would be deceived by failure to disclose material connections. Reliance on *Millam v. Energizer Brands, LLC*, No. 5:21-CV-01500-JWH-SHKX, 2022 WL 19001330, (C.D. Cal. Dec. 9, 2022), *aff'd,* No. 23-55192, 2024 WL 2988210 (9th Cir. June 14, 2024) is misplaced. In that case the Plaintiff interpreted the statement "up to 50% long lasting," […] to mean that the batteries are ***always*** *or* ***consistently*** 50% longer lasting. *Id.* at *4. This is not the case here, the Instagram posts clearly endorse Celsius, and no interpretation is necessary.

Defendants' assertion that the Instagram posts at issue here contain a "Celsius hashtag *and* #celsiusbrandpartner in the clear and conspicuous caption of the post" *Motion* at 25, is blatantly false. As clearly showed in the examples in the Complaint, the Influencers failed to include the #celsiusbrandpartner altogether or mixed it in a block of 10 hashtags visible only after the user was required to click "MORE.*" See Compl.* ¶¶34-36. As such, since the brand relationship is not clear to any reasonable

consumer, Defendants arguments regarding the lack CLRA violations fail for lack of factual support. California Civil Code § 1770 lists unlawful practices under the CLRA. *Loomis v. Slendertone Distribution, Inc.,* 420 F. Supp. 3d 1046, 1080 (S.D. Cal. 2019). False endorsements are a violation of Civil Code Sections 1770(a)(2), 1770(a)(3), 1770(a)(5) and 1770(a)(9).

As to the argument that Defendants did not misrepresent a sponsorship because "Defendants represented that it was no sponsorship, affiliation, etc." Motion at 27, it defies the plain language of the statute. Misrepresenting a sponsorship means both making false representations about the existence and the non-existence of the sponsorship. Further, the Influencers endorsed Celsius products and pretended that the products have their approval. They were merely paid to promote Celsius and hide the material nature of the relationship.

Further, sections 1770(a)(5) and 1770(a)(7) of the CLRA are held to encompass both representations, per the explicit text of the statute, as well as omissions. To be actionable, an omission must be "[…] an omission of a fact the defendant was obliged to disclose." *Id.* A fact is material, rendering a defendant potentially obligated to disclose it, if a "reasonable consumer would deem it important in determining how to act in the transaction at issue." *Mui Ho v. Toyota Motor Corp.,* 931 F. Supp. 2d 987, 996 (N.D. Cal. 2013) (internal citations omitted). This is exactly the case here. As explained above, omitting the fact that the Instagram endorsements are not the honest opinion of the Influencer but rather paid advertising, is material and violates Civil Code sections 1770(a)(5) and 1770(a)(7). The named Plaintiff and a reasonable consumer would act differently on viewing an advertising and an honest opinion of an experienced person (in our case, an influencer with hundreds of thousands or millions of followers).

## VIII. PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS PROPERLY RAISED

Plaintiff has sufficiently alleged damages to maintain a cause of action for unjust enrichment. In California, the elements of an unjust enrichment claim are: 1) Defendant received a benefit; 2) Defendant's benefit was at the Plaintiff's expense; and 3) it would be unfair for the defendant to keep the benefit without compensating a proportionate amount to the plaintiff. *See Peterson v. Cellco P'ship*, 80 Cal. Reptr 3d 316 (Ct. App. 2008).

Again, all the elements are present in the Complaint: (1) Plaintiff has paid a premium for Celsius products. Plaintiff conferred a benefit to Defendants by allowing them to collect a premium. (2) paying the high prices demanded by Celsius, Plaintiff and Class Members conferred a direct benefit to all the Defendants and (3) it would be inequitable for the Defendants to retain said benefit and reap unjust enrichment.

Also, because Plaintiff have sufficiently and properly pled the elements of each of her statutory-based claims, and because her allegations must be accepted as true and construed in the light most favorable to her, Plaintiff has properly pled a cause of action as to unjust enrichment.

## IX. PLAINTIFF 'S NEGLIGENT MISSREPRESENTAUION CLAIM IS PROPERLY PLED

The elements of negligent misrepresentation are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.,* 117 F. Supp. 3d 1092, 1111 (C.D. Cal. 2015).

California courts generally follow the Restatement (Second) of Torts § 552. California Supreme Court expressly adopted section 552(2) of the Restatement (Second) of Torts as the test for identifying "the category of who may recover"—i.e., those plaintiffs to whom a defendant owes a duty of care—under a negligent misrepresentation theory, "provided all other elements are met." *Apex Directional*

*Drilling, LLC v. SHN Consulting Eng'rs & Geologists, Inc., 119 F. Supp. 3d 1117, 1126 (N.D. Cal. 2015)*

Under that section of the Restatement, a "[m]isrepresentation" may "denote not only words spoken or written but also any other conduct that amounts to an assertion not in accordance with the truth," and "words or conduct asserting the existence of a fact constitute a misrepresentation if the fact does not exist." Restatement (Second) of Torts § 552 (1977). The Influencers assert that they choose Celsius products for a healthier lifestyle, that Celsius is keeping them: fueled" that they are "semi addicted to Celsius". *Compl.* ¶¶ 34-36. In reality, the Influencers only chose Celsius because they are paid to do so. *Compl.* ¶¶ 2. Defendants' argument that Plaintiff does not properly allege misrepresentations is without merit. Plaintiff's allegations regarding Defendants' misrepresentations and false statements as set forth herein are more than sufficient to meet their burden in response to a motion to dismiss.

Defendant's reliance on inadequately disclosed its resort fees in *Hall v. Marriott Int'l, Inc.,* No. 19CV1715-JO-AHG, 2023 WL 9692466, at *1 (S.D. Cal. June 6, 2023), *Motion* at 35, is without merit. Here, the misrepresentation is the actual endorsement, the statement made by the influencers, together with the Celsius tag. If the material relationship between Celsius and the Influencers would not have resulted in statements made in a post, in other words, if Celsius would have sponsored the influencers but not request that they tag Celsius in their posts, then the situation would have been different. But here, the Influencers are posting about Celsius, they are endorsing Celsius and all Defendants are liable for negligent misrepresentation.

**CONCLUSION**

For the reasons stated herein, Plaintiff respectfully requests that Defendants' motion to dismiss or, in the alternative, motion to transfer, be denied. Alternatively, the Court should grant leave to Plaintiff to amend her Complaint.

Dated: July 11, 2025.

Respectfully submitted,

/s/ Keith L. Gibson

Keith L. Gibson (*Pro Hac Vice*)
**KEITH GIBSON LAW, P.C.**
586 Duane Street, Suite 102
Glen Ellyn, IL 60137
Telephone: (630) 677-6745
Email: keith@keithgibsonlaw.com

Bogdan Enica (*Pro Hac Vice*)
1200 N Federal Hwy, Ste.300
Boca Raton FL 33432
Telephone: (305) 306-4989
Email: bogdan@keithgibsonlaw.com

William M. Aron (SBN No. 234408)
**ARON LAW FIRM**
15 West Carrillo Street, Suite 217
Santa Barbara, CA 93101
Tel: (805) 618-1768
bill@aronlawfirm.com

*Counsel for Plaintiff and the Putative Class*

**Certificate of Service**

I certify that on July 11, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification of such filing to all attorneys of record.

DATED: July 11 2025.

/s/ Bogdan Enica

Bogdan Enica (*Pro Hac Vice*)
KEITH GIBSON LAW, P.C.