RACHEL LOWE (Cal. Bar No. 246361)
rachel.lowe@alston.com
BROOKE H. BOLENDER (Cal. Bar No. 340689)
brooke.bolender@alston.com
**ALSTON & BIRD LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100

EMMA BRADEN (Cal. Bar No. 359591)
emma.braden@alston.com
**ALSTON & BIRD LLP**
55 Second Street, Suite 2100
San Francisco, CA 94105
Telephone: (415) 243-1000
Facsimile: (415) 243-1001

JOE TULLY (admitted *Pro Hac Vice*)
joe.tully@alston.com
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016-1387
Telephone: (212) 210-9522
Facsimile: (212) 922-3873

Attorneys for Defendants
**CELSIUS HOLDINGS INC., CELSIUS INC., ERIKA WHEATON, DEVON WINDSOR, AND EMILY TANNER**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MARIANA DUBREU, individually and on behalf of all those similarly situated,

Plaintiffs,

v.

CELSIUS HOLDINGS INC., a/k/a CELSIUS PRODUCTS HOLDINGS INC., DEVON WINDSOR, ERIKA WHEATON, and EMILY TANNER,

Defendants.

Case No.: 5:25-cv-00180-MRA-SP

Hon. Mónica Ramírez Almadani, Courtroom 10B

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*Filed concurrently with Declarations of Suzanne Goldberg, Emily Tanner, Devon Windsor, Erika Wheaton, and Brooke Bolender; Request for Judicial Notice; and (Proposed) Order*

Date: December 15, 2025
Time: 1:30 p.m.
Courtroom: 10B

Complaint filed: January 22, 2025

**TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO ALL INTERESTED PARTIES:**

PLEASE TAKE NOTICE that on December 15, 2025, at 1:30 p.m., in the courtroom for the Honorable Mónica Ramírez Almadani, 350 West First Street, Courtroom 10B, Los Angeles, CA 90012, or as soon thereafter as this matter may be heard, Defendants Celsius Holdings, Inc., Celsius, Inc., Erika Wheaton, Devon Windsor, and Emily Tanner ("Defendants") will and hereby do move the Court pursuant to Federal Rules of Civil Procedure ("FRCP"), Rules 8(a), 9(b), 12(b)(1), (2), and (6) for an order dismissing each claim and demand for relief asserted by Plaintiff Mariana Dubreu ("Plaintiff"), individually and on behalf of all those similarly situated, in the First Amended Complaint, ECF No. 49 ("FAC") or, in the alternative, move the Court pursuant to 28 U.S.C. § 1404(a) for a transfer of this action to the more convenient venue of the Southern District of Florida. This Motion is made on the following grounds:

***First***, Plaintiff's FAC should be dismissed under FRCP 12(b)(2) because there is no general or specific personal jurisdiction over the Florida Defendants—Celsius Holdings, Inc., Celsius, Inc., Erika Wheaton, and Devon Windsor.

***Second***, Plaintiff's FAC should be dismissed under FRCP 12(b)(1) because Plaintiff lacks Article III standing.

***Third***, Plaintiff's FAC should be dismissed because she fails to meet FRCP 9(b)'s heightened pleading standard and the Complaint violates FRCP 8.

***Fourth***, the FAC should be dismissed under FRCP 12(b)(6) because Plaintiff fails to state a claim on which relief can be granted. Despite alleging claims for violations of California's consumer protection statutes (the Consumers Legal Remedies Act and the Unfair Competition Law), negligent misrepresentation, and for unjust enrichment, Plaintiff does not allege facts showing she reasonably relied on a single advertisement, representation, or omission by any Defendant before buying Celsius products. Plaintiff fails to plead facts establishing elements of her various statutory, common law, and equitable causes of action, thereby failing to state a claim for relief.

For any or all of these reasons, the Court should dismiss this action.

Alternatively, under 28 U.S.C. § 1404(a), this Court should transfer this entire action to the venue of the Southern District of Florida because that represents the more convenient forum.

As set forth in the accompanying Declaration of Brooke Bolender, this Motion is made following the telephonic conference of counsel pursuant to L.R. 7-3, which took place on October 7, 2025. *See* Bolender Decl. ¶ 2. The Parties were not able to reach an agreement, necessitating this Motion.

This Motion is based upon this Notice of Motion and Motion; the supporting Memorandum of Points and Authorities; the Request for Judicial Notice; the Declarations of Suzanne Goldberg, Devon Windsor, Erika Wheaton, Emily Tanner, and Brooke Bolender; the papers and pleadings on file in this matter; and any such other written or oral argument as may be presented prior to or at the time of the hearing on this matter.

DATED: October 15, 2025

RACHEL LOWE
JOE TULLY
BROOKE H. BOLENDER
EMMA BRADEN
**ALSTON & BIRD LLP**

*/s/ Rachel Lowe*
Rachel Lowe
Attorneys for Defendants
**CELSIUS HOLDINGS, INC., CELSIUS, INC., ERIKA WHEATON, DEVON WINDSOR, AND EMILY TANNER**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. SUMMARY OF ALLEGATIONS ..... 2

III. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (FRCP 12(b)(2)) ..... 4

A. The Florida Defendants Are Not Subject to General Jurisdiction. ..... 5

B. The Florida Defendants Are Not Subject to Specific Jurisdiction. ..... 5

1. There Is No Purposeful Direction at California Residents. ..... 5

a. Celsius Defendants ..... 6

b. Erika Wheaton and Devon Windsor ..... 8

2. There Are No Suit-Related Contacts with California. ..... 9

a. Celsius Defendants ..... 10

b. Erika Wheaton and Devon Windsor ..... 11

3. Jurisdiction in California Offends Fair Play and Substantial Justice. ..... 11

IV. MOTION TO DISMISS FOR LACK OF STANDING (FRCP 12(b)(1)) ..... 12

A. Plaintiff Has Not Alleged Concrete Injury. ..... 12

B. Plaintiff Has Not Alleged a Traceable Injury. ..... 14

C. Plaintiff Has No Standing to Seek Injunctive Relief. ..... 16

V. MOTION TO DISMISS FOR FAILURE TO SATISFY FRCP 9(b). ..... 16

VI. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (FRCP 12(b)(6)) ..... 18

A. Plaintiff Fails to Adequately Plead any Deception Theory. ..... 19

1. Plaintiff Fails to Allege a Duty to Disclose. ..... 19

2. Plaintiff Does Not Plead an Actionable Omission Because the Purported Omission Is Not Central to the Product's Function. ..... 20

B. Plaintiff's New Affirmative Misrepresentations Allegations Fail as a Matter of Law. ..... 22

C. Plaintiff's Allegations Fail the "Reasonable Consumer" Test. ..... 24

D. Plaintiff's Lacks Statutory Standing Under the CLRA & UCL (Counts I & II)............ 25
E. Plaintiff's CLRA Claim Fails for Additional Reasons (Count I).................................. 25
F. Plaintiff's UCL Claim Fails (Count II)............................................................................ 27
1. Plaintiff Fails to State a Claim Under the "Unlawful" Prong........................ 27
a. Plaintiff fails to allege a CLRA violation. ..................................... 27
b. Plaintiff fails to allege a FAL Violation. ....................................... 28
c. Plaintiff cannot predicate her claim on the FTC Guidelines............... 28
2. Plaintiff Fails to State a Claim Under the "Unfair" Prong............................ 29
3. Plaintiff Fails to State a Claim Under the "Fraudulent" Prong...................... 30
4. Plaintiff Fails to Allege Any Basis for Equitable Relief................................ 30
G. Plaintiff's Unjust Enrichment Claim Fails (Count III). .................................................. 31
H. Plaintiff's Negligent Misrepresentation Claim Fails (Count IV). .................................. 31
VII. DISMISSAL SHOULD BE ENTERED WITHOUT LEAVE TO AMEND. ................ 32
VIII. MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a)) ......................................... 33
A. Venue Is Proper in the Southern District of Florida..................................................... 33
B. Section 1404(a)'s Factors Supporting Transfer............................................................ 33
C. Plaintiff's Choice of Forum Is Not Entitled to Deference.......................................... 35
IX. CONCLUSION .............................................................................................. 35

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Abramson v. Marriott Ownership Resorts, Inc.*,
155 F. Supp. 3d 1056 (C.D. Cal. 2016) .......... 18, 25

*Adina Design, Inc. v. Adina's Jewels, Inc.*,
2018 WL 6427364 (C.D. Cal. Nov. 29, 2018) .......... 4, 10

*Alani Nutrition, LLC v. Ryse Up Sports Nutrition, LLC*,
2024 WL 148969 (N.D. Ill. Jan. 12, 2024) .......... 6, 8, 9, 10

*Allen v. Woodford*,
2006 WL 1748587 (E.D. Cal. June 26, 2006) .......... 32

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*,
551 F.2d 784 (9th Cir. 1977) .......... 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 18

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) .......... 31

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) .......... 6

*Babaian v. Dunkin' Brands Grp., Inc.*,
2018 WL 11445613 (C.D. Cal. June 12, 2018) .......... 13

*Becerra v. Dr Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) .......... 32

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 18

*BMA LLC v. HDR Glob. Trading Ltd.*,
2021 WL 4061698 (N.D. Cal. Sept. 7, 2021) .......... 20, 28

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) .......... 7, 11

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) .......... 6, 12

*Bristol-Myers Squibb Co. v. Super. Ct.*,
582 U.S. 255 (2017) ....................5

*Cattie v. Wal-Mart Stores, Inc.*,
504 F. Supp. 2d 939 (S.D. Cal. 2007) ....................27

*Chulick-Perez LLC v. CarMax Auto Superstores Cal.*,
2014 WL 2154479 (E.D. Cal. May 20, 2014) ....................16

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ....................16

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
911 F.2d 242 (9th Cir. 1990) (per curiam) ....................23

*Corcoran v. CVS Health Corp.*,
169 F. Supp. 3d 970 (N.D. Cal. 2016) ....................19

*Cybersell, Inc. v. Cybersell, Inc.*,
130 F.3d 414 (9th Cir. 1997) ....................7

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ....................5

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ....................16

*Davis v. Abbott Labs*,
562 F. Supp. 3d 585 (C.D. Cal. 2021) ....................17

*Doe v. CVS Pharm., Inc.*,
982 F.3d 1204 (9th Cir. 2020), *cert. granted in part*, 141 S. Ct. 2882 (2021), *cert. dismissed*, *CVS Pharmacy, Inc. v. Doe, One*, 142 S. Ct. 480 (2021) ....................29, 30

*Doe v. SuccessfulMatch.com*,
70 F. Supp. 3d 1066 (N.D. Cal. 2014) ....................15

*Doss v. Gen. Mills, Inc.*,
No. 18-61924-CIV, 2019 WL 7946028 (S.D. Fla. June 14, 2019), *aff'd*, 816 F. App'x 312 (11th Cir. 2020) ....................13

*DZ Rsrv. v. Meta Platforms, Inc.*,
96 F.4th 1223 (9th Cir. 2024) ....................16

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ....................24

*Edwards v. Marin Park, Inc.*,
356 F.3d 1058 (9th Cir. 2004) ........ 17

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ........ 12, 25

*Express, LLC v. Fetish Grp., Inc.*,
464 F. Supp. 2d 965 (C.D. Cal. 2006) ........ 30

*Ford Motor Co. v. Mont.Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) ........ 11

*FTC v. Garvey*,
383 F.3d 891 (9th Cir. 2004) ........ 20

*Gharavi v. FloSports, Inc.*,
2025 WL 815699 (N.D. Ill. Mar. 14, 2025) ........ 9

*Gomez v. Intel Corp.*,
2023 WL 7211394 (9th Cir. Nov. 2, 2023) ........ 21

*Goudie v. Wells Fargo Bank, N.A.*,
2015 WL 12803765 (C.D. Cal. June 8, 2015) ........ 31

*Gram v. Intelligender, LLC*,
2010 WL 11601035 (C.D. Cal. Oct. 8, 2010) ........ 22

*Hanson v. Denckla*,
357 U.S. 235 (1958) ........ 12

*Henderson v. Gruma Corp.*,
2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ........ 23

*Hodsdon v. Mars, Inc.*,
162 F. Supp. 3d 1016 (N.D. Cal. 2016), *aff'd,* 891 F.3d 857 (9th Cir. 2018) ........ 19, 21

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) ........ 20, 21

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*,
485 F.3d 450 (9th Cir. 2007) ........ 6

*In re Bang Energy Drink Mktg. Litig.*,
2020 WL 9815622 (N.D. Cal. Sep. 14, 2020) ........ 14, 21, 23

*In re Boon Glob. Ltd.*,
923 F.3d 643 (9th Cir. 2019) .......... 8

*In re Plum Baby Food Litig.*,
2024 WL 1354447 (N.D. Cal. Mar. 28, 2024), *aff'd*, 2025 WL 1200700 (9th Cir. Apr. 25, 2025) (unpublished) .......... 21

*In re Sequoia Benefits & Ins. Data Breach Litig.*,
2024 WL 1091195 (N.D. Cal. Feb. 22, 2024) .......... 29

*In re Theos Dark Chocolate Litig.*,
750 F. Supp. 3d 1069 (N.D. Cal. 2024) .......... 21

*Johansson v. Cent. Garden & Pet Co.*,
2010 WL 4977725 (N.D. Cal. Dec. 2, 2010) .......... 34

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 17

*Kelly v. BP West Coast Prods. LLC*,
2014 WL 7409220 (E.D. Cal. Dec. 30, 2014) .......... 26

*Lanovaz v. Twinings N. Am., Inc.*,
726 F. App'x 590 (9th Cir. 2018) .......... 16

*Leadsinger, Inc. v. BMG Music Publ'g*,
512 F.3d 522 (9th Cir. 2008) .......... 33

*Lee v. Toyota Motor Sales, U.S.A., Inc.*,
992 F. Supp. 2d 962 (C.D. Cal. 2014) .......... 13, 14, 22

*Lorentzen v. Kroger Co.*,
532 F. Supp. 3d 901 (C.D. Cal. 2021) .......... 15

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 12

*Martinez v. Ford Motor Co.*,
2022 WL 14118926 (S.D. Cal. Oct. 24, 2022) .......... 27

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) .......... 7

*McGee v. S-L Snacks Nat'l*,
982 F.3d 700 (9th Cir. 2020) .......... 13

*Metz v. U.S. Life Ins. Co.*,
674 F. Supp. 2d 1141 (C.D. Cal. Dec. 11, 2009)....................34

*Meza v. Procter & Gamble Co.*,
2023 WL 3267861 (C.D. Cal. Apr. 27, 2023)....................34

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021)....................24

*O'Donnell v. Bank of Am., N.A.*,
504 F. App'x 566 (9th Cir. 2013) (unpublished)....................28

*Obesity Rch. Inst., LLC v. Fiber Rch. Int'l, LLC*,
165 F. Supp. 3d 937 (S.D. Cal. 2016)....................25

*Parnell Pharm., Inc. v. Parnell, Inc.*,
2015 WL 5728396 (N.D. Cal. Sep. 30, 2015)....................6

*Patterson v. Baller Alert*,
2018 WL 11354104 (C.D. Cal. Dec. 10, 2018)....................7, 9

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006)....................5, 7

*Pop v. Jaxxon, LLC*,
No. 8:25-cv-00311-SVW-ADS (C.D. Cal.)....................35

*Pop v. LuliFama.com LLC*,
145 F.4th 1285 (11th Cir. 2025)....................17, 34

*Pop v. LuliFama.com LLC*,
2024 WL 1194485 (M.D. Fla. Mar. 20, 2024), *aff'd*, 145 F.4th 1285 (11th Cir. 2025) 17, 18, 31

*Puri v. Khalsa*,
674 F. App'x 679 (9th Cir. 2017) (unpublished)....................17

*Rahman v. Mott's LLP*,
2014 WL 325241 (N.D. Cal. Jan. 29, 2014)....................16

*Randles v. Nationstar Mortg., LLC*,
2024 WL 1855720 (E.D. Cal. Apr. 25, 2024)....................33, 34, 35

*Rice v. Sunbeam Prods., Inc.*,
2013 WL 146270 (C.D. Cal. Jan. 7, 2013)....................23, 32

*Ritz Fuente, LLC v. Schafer*,
2024 WL 3746264 (S.D. Cal. Aug. 9, 2024)....6, 7, 9

*Ruiz v. Bradford Exch., Ltd.*,
2025 WL 2473007 (9th Cir. Aug. 28, 2025)....30

*Sec. Alarm Fin. Enters., L.P. v. Nebel*,
200 F. Supp. 3d 976 (N.D. Cal. 2016)....6, 8, 9

*Seider v. City of Malibu*,
2023 WL 6192715 (C.D. Cal. May 2, 2023)....15

*Simoni v. Hi-Tech Pharm., Inc.*,
No. 25 CV 795, 2025 U.S. Dist. LEXIS 176669 (N.D. Ill. Sep. 10, 2025)....20, 34

*Simoni v. Hi-Tech Pharms., Inc.*,
2025 WL 2614685 (N.D. Ill. Sep. 10, 2025)....13, 14, 35

*Simpson v. Cal. Pizza Kitchen, Inc.*,
989 F. Supp. 2d 1015 (S.D. Cal. 2013)....13, 14

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998)....32

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009)....12

*Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools*,
673 F. Supp. 3d 1083 (N.D. Cal. 2023)....23

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....12, 14

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003)....16, 18

*Walden v. Fiore*,
571 U.S. 277 (2014)....4

*Warren v. Fox Family Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003)....19

*Werbel v. Pepsico, Inc.*,
2010 WL 2673860 (N.D. Cal. July 2, 2010)....24

*Whatley v. Bank of Am., N.A.*,
2012 WL 5906709 (E.D. Cal. Nov. 26, 2012) .......... 32

*Williams v. Apple, Inc.*,
449 F. Supp. 3d 892 (N.D. Cal. 2020) .......... 16

*Williamson v. Apple, Inc.*,
2012 WL 3835104 (N.D. Cal. Sep. 4, 2012) .......... 27

*Wisdom v. Easton Diamond Sports, LLC*,
2018 WL 6264994 (C.D. Cal. Oct. 9, 2018) .......... 16

*Wit v. United Behav. Health*,
79 F.4th 1068 (9th Cir. 2023) .......... 14

*Zajonc v. T-Mobile US, Inc.*,
No. 3:25-CV-02860-JSC, 2025 WL 2419267 (N.D. Cal. Aug. 21, 2025) .......... 30

**STATE CASES**

*Byrum v. Brand*,
219 Cal. App. 3d 926 (1990) .......... 21, 32

*Daugherty v. Am. Honda Motor Co., Inc.*,
144 Cal. App. 4th 824 (2006) .......... 19, 23, 26, 27, 30

*Hartford Cas. Ins. v. J.R. Mktg., LLC*,
61 Cal. 4th 988 (2015) .......... 31

*Huber, Hunt & Nichols, Inc. v. Moore*,
67 Cal. App. 3d 278 (1977) .......... 32

*Huijers v. Demarrais*,
11 Cal. App. 4th 676 (1992) .......... 28

*Janis v. Cal. State Lottery Comm'n*,
68 Cal. App. 4th 824 (1998) .......... 28

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) .......... 25

*Lavie v. Proctor & Gamble Co.*,
105 Cal. App. 4th 496 (2003) .......... 24

*LiMandri v. Judkins*,
52 Cal. App. 4th 326 (1997) .......... 19, 20

*Rivelli v. Hemm*,
67 Cal. App. 5th 380 (2021) ........ 10

*Roman v. Liberty Univ., Inc.*,
162 Cal. App. 4th 670 (2008) ........ 9

*Rubenstein v. The Gap, Inc.*,
14 Cal. App. 5th 870 (2017) ........ 19

*Rutherford Holdings, LLC v. Plaza Del Rey*,
223 Cal. App. 4th 221 (2014) ........ 31

**FEDERAL STATUTES**

15 U.S.C. § 45(a) ........ 28, 29

28 U.S.C. § 1404(a) ........ 2, 33, 34, 35

**STATE STATUTES**

Cal. Civ. Code § 1710 ........ 32

Cal. Civ. Code § 1770 ........ 16, 19, 23, 24, 25, 26, 27

Cal. Civ. Code § 1780 ........ 25

Cal. Civ. Proc. Code § 410.10 ........ 4

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ........ 416, 19, 24, 25, 27, 28, 29, 30, 31

Cal. Bus. & Prof. Code § 17500 ........ 28

**RULES**

FRCP 8(a) ........ 1, 18

FRCP 9(b) ........ 1, 16, 17, 18

FRCP 12(b)(1) ........ 12

FRCP 12(b)(2) ........ 4

FRCP 12(b)(6) ........ 2, 18, 21

**REGULATIONS**

16 C.F.R. §§ 255 *et seq.* .......... 20

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

At the last motion to dismiss hearing, this Court noted that it was "skeptical that [Plaintiff] can amend the complaint to survive dismissal" and that "there are many defects that may be fatal in this case." Tr., ECF No. 53, 21:16–17, 23:9–12. Plaintiff's Amended Complaint confirms that. Even after amendment, Plaintiff fails to state a basis for jurisdiction over four out of five Defendants or to state a viable claim that satisfies Article III or FRCPs 9(b) or 12(b)(6) against any Defendant. Plaintiff fails to identify any affirmative statements or omissions by Defendants Celsius Holdings, Inc., Celsius, Inc. (the "Celsius Defendants"), and three social media influencers, Devon Barbara (aka Windsor), Emily Tanner, and Erika Wheaton (the "Influencer Defendants") that plausibly deceived her. Since this Court dismissed her last Complaint, other courts, including the Eleventh Circuit, weighing copycat influencer suits brought by the same counsel have unequivocally rejected substantially similar theories of liability. At bottom, Plaintiff's pleading is a lawsuit in search of a viable legal theory. The Court should dismiss this case without leave to amend for several reasons.

***One***, as the Court previously held, it lacks jurisdiction over Florida Defendants Celsius Holdings, Inc., Celsius, Inc., Devon Windsor, and Erika Wheaton.

***Two***, Plaintiff lacks standing. The Court dismissed the claims in the original Complaint against the sole California Defendant, Emily Tanner, for lack of standing. The FAC fares no better. Plaintiff cannot allege fairly traceable injury-in-fact against any Defendant. Plaintiff alleges she paid a "premium" to Costco (a wholesale retailer) for Celsius products because of social media posts that supposedly did not disclose that the posters were paid Celsius endorsers. But Plaintiff, who claims the products were somehow "inferior," again cannot show that her purported injury is traceable to any alleged misconduct by Defendants. Moreover, Plaintiff pleads no facts showing she did not receive the benefit of her bargain, which negates economic injury. She likewise lacks any risk of future injury.

***Three***, Plaintiff's entire FAC sounds in fraud yet again fails to satisfy FRCP 9(b). Plaintiff never alleges *what* misrepresentations or omissions she relied on, or *when* or *how* she saw them. Plaintiff's FAC also violates FRCP 8(a) by lumping together "Defendants." The FAC is devoid of almost *any*

independent allegations against the five Defendants, leaving them to wonder *who* is responsible for *what* alleged misconduct. Plaintiff failed to address these issues in the FAC.

***Four***, Plaintiff's FAC should be dismissed under FRCP 12(b)(6) because it fails to state a claim against each of the Defendants. Plaintiff does not plead any facts showing reasonable reliance on a specific advertisement, representation, or omission by any Defendant. She nevertheless purports to represent every Celsius consumer in the nation, irrespective of whether they viewed any of the Instagram posts that Plaintiff features in her FAC or the unidentified posts that she claims she saw before purchasing Celsius. Under even the most charitable view, Plaintiff alleges nothing more than vague, nonactionable puffery. Plaintiff cannot satisfy the elements of her statutory, common law, and equitable causes of action, thereby failing to state a claim for relief.

Alternatively, Defendants move to transfer this entire case pursuant to 28 U.S.C. § 1404(a).

For any or all of these reasons, the Court should dismiss this action.

## II. SUMMARY OF ALLEGATIONS

Plaintiff filed this putative class action against the Celsius Defendants and the Influencer Defendants. The Celsius Defendants, Windsor, and Wheaton are residents of Florida. *See* FAC ¶¶ 31, 32, 34, 36. Only Tanner is a resident of California. *See id.* ¶ 35. Plaintiff lumps Celsius Holdings, Inc. and Celsius, Inc. together as "Celsius," and, aside from her jurisdictional allegations, *see id.* ¶¶ 31, 32, she makes no independent substantive allegations about either. Even though Plaintiff already had an opportunity to amend, she concedes she has no facts to allege regarding what each Celsius Defendant supposedly did, if anything. *See id.* ¶ 33 ("Discovery will reveal the precise responsibilities and roles of each of the CELH entities in connection with the allegations in the Complaint.").

Plaintiff claims she "saw Celsius products being consumed by some of the Instagram influencers she followed, which led to her purchasing Celsius products." FAC ¶ 22. Plaintiff asserts that she paid an unquantified "premium" for Celsius products, *id.*, yet still identifies no challenged representations by any Defendant about the "quality" of the products she purchased (there are none). Plaintiff does not claim that the Influencer Defendants made any statements about the quality of Celsius products that were untrue.[1]

[1] Plaintiff includes an entirely irrelevant, improper, and incorrect allegation that Celsius was "banned by the National Collegiate Athletic Association [NCAA]." FAC ¶ 11. Celsius is not, in fact, banned by the NCAA and regularly works with NCAA student athletes; regardless, this Court should ignore this allegation because it is completely irrelevant to Plaintiff's theory of the case.

While Plaintiff alleges that the Influencer Defendants were passing off Celsius social media posts as their "honest opinion" without disclosing that it was paid advertisement, Plaintiff never alleges what those "opinions" were. *Id.* ¶ 17. To the contrary, the three posts featured in Plaintiff's FAC are devoid of any stated "opinion" about Celsius products or their quality or safety. The posts merely show each influencer holding a can of Celsius, tagging the official Celsius Instagram account, and then including hashtags such as #CELSIUSLiveFit or #celsiusbrandpartner. *See, e.g.*, *id.* ¶¶ 34–36.

Plaintiff alleges, at most, that the Influencer Defendants represented that they "consum[ed] Celsius, while mentioning the name of the brand and posting the brand's tag in their social media post." FAC ¶ 21. Plaintiff then claims that she could not "discern the fact that those posts were paid posts, rather than organic, honest recommendations, and candid endorsements by the Influencers." *Id.* ¶ 24.

While Plaintiff mentions three Instagram posts by the Influencer Defendants that feature Celsius products, she tellingly fails to allege how she relied on these posts before she purchased Celsius at Costco on May 17, 2023. *See* FAC ¶ 64. Plaintiff claims she relied on "the fact that [the Influencer Defendants] promoted Celsius products," but never alleges how any statements by the Influencers in the posts deceived her. *Id.* ¶¶ 24–26. Plaintiff claims she would not have purchased Celsius "if she knew that the Influencers were paid to endorse Celsius and that the Influencers' claims were illegal, unfair and misleading." *Id.* ¶ 66. As shown below, courts, including the Ninth Circuit, reject such bare allegations that would not plausibly deceive a reasonable consumer.

To try to save her claims, Plaintiff raises new allegations regarding the caffeine content of Celsius energy drinks. *See* FAC ¶¶ 3, 12, 57. Plaintiff alleges that "it is not medically advisable to consume caffeinated drinks before exercise" and "Celsius has no significant nutritional value and cannot keep a person 'fueled.'" *Id.* ¶¶ 12, 57. But Plaintiff never claims reliance on any *false or deceptive* factual statements by Defendants about the caffeine content of Celsius products (nor could she—it's an energy drink that discloses its caffeine content). Plaintiff tries to somehow link this new, convoluted theory to a supposed premium Plaintiff paid for Celsius products despite the fact that there is nothing misleading by implication or in fact, and without actually alleging she saw or relied on specific plausibly deceptive statements by every Defendant, as is required for false advertising.

Other than these de minimis additions and a smattering of jurisdictional notions, her pleading is

unchanged from the version the Court already dismissed. For the Court's convenience, a redline between the original Complaint and FAC is attached hereto as **Attachment 1**. Plaintiff asserts the same causes of action for (1) violation of the California Consumers Legal Remedies Act, Civil Code sections *1750 et seq.* (the "CLRA"); (2) violation of the California Unfair Competition Law, Business and Professions Code sections 17200 *et seq.* (the "UCL"); (3) unjust enrichment; and (4) negligent misrepresentation. *See* FAC ¶¶ 110–40. Plaintiff seeks damages, injunctive relief, restitution, and attorneys' fees and costs. *See id.*, Prayer. Despite the limited exposure of the supposed Celsius-related Instagram posts by the Influencer Defendants, the fact that they only pertained to a subset of Celsius products, and the fact that Plaintiff purchased Celsius products at a nationwide retailer, Plaintiff seeks to represent a class of "all persons that purchased Celsius products online relying on [undefined] misleading marketing practices and Influencers from January 15, 2021, to present." *Id.* ¶ 93.

## III. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (FRCP 12(b)(2))

Even after amending, Plaintiff cannot satisfy her burden to establish personal jurisdiction over Celsius Holdings, Inc., Celsius, Inc., Devon Windsor, and Erika Wheaton (the "Florida Defendants") because they are not subject to either general or specific jurisdiction in California. Personal jurisdiction only arises if it comports with the requirements of due process. *See Walden v. Fiore*, 571 U.S. 277, 283 (2014); Cal. Civ. Proc. Code § 410.10. Plaintiff bears the burden of establishing personal jurisdiction over each defendant. *Adina Design, Inc. v. Adina's Jewels, Inc.*, 2018 WL 6427364, at *1 (C.D. Cal. Nov. 29, 2018) (citation omitted). Here, she fails to establish both over the Florida Defendants.

This Court previously dismissed the Florida Defendants on jurisdictional grounds, and it should do again so here without further leave to amend. As the Court previously held when finding specific jurisdiction lacking, "Courts have held that having an interactive website should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive site is accessible . . . and that exercising personal jurisdiction over a social media influencer simply because her social media activity reaches forum state residents would mean that every social media influencer is at home in every state"; instead, "Plaintiff must allege something more to demonstrate that the Florida influencers targeted California consumers in some way." Tr. 22:1–11. The FAC fails to allege "something more."

**A. The Florida Defendants Are Not Subject to General Jurisdiction.**

Plaintiff failed to argue—and therefore conceded—that the Florida Defendants are not subject to general jurisdiction. *See* Opp'n, ECF No. 40, 14:7–8. That admission should end the Court's inquiry.

Moreover, there is no basis for general jurisdiction. For an individual, general jurisdiction lies where that person is domiciled, and for a corporation, it is "fairly regarded as at home" where it is incorporated and has its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). The Florida Defendants are domiciled in Florida. Windsor and Wheaton live and work in Florida. *See* FAC ¶¶ 34, 36; Windsor Decl. ¶ 2; Wheaton Decl. ¶ 2. Celsius Holdings, Inc. and Celsius, Inc. are Nevada corporations headquartered in Florida. *See* FAC ¶¶ 31, 32; Goldberg Decl. ¶ 3. Plaintiff alleges no "systematic" activities to establish general jurisdiction. *See generally* FAC; *Daimler*, 571 U.S. at 139.

**B. The Florida Defendants Are Not Subject to Specific Jurisdiction.**

Plaintiff's FAC again fails to meet her burden to establish specific personal jurisdiction over the Florida Defendants by the challenged Instagram posts. Specific jurisdiction requires a nexus between Defendants' concrete activities in the forum state and Plaintiff's alleged injuries. *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017). The Ninth Circuit employs a three-part analysis to determine if a plaintiff has established defendants' sufficient minimum contacts with California: (1) the defendant has "purposefully availed [itself] of the privileges of conducting activities in the forum"; (2) the cause of action arises out of non-resident defendants' forum-related contacts; and (3) exercising jurisdiction over that defendant is fair and reasonable. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). Plaintiff, moreover, may not rest on the bare allegations of the FAC, but must come forward with facts, by affidavit or otherwise, supporting personal jurisdiction. *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). Plaintiff again has not adduced any competent evidence establishing any of these elements, let alone all three.

**1. There Is No Purposeful Direction at California Residents.**

Plaintiff fails to show the Florida Defendants purposefully directed activities at California residents. For this element, the *Calder* effects test requires showing that the Florida Defendants "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant

knows is likely to be suffered in the forum state." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017).

***a. Celsius Defendants***

Again in the FAC, the only "intentional acts" that Plaintiff points to are (1) Celsius' products sales in California, (2) the Influencer Defendants' (not Celsius's) Instagram posts; and (3) the Celsius Defendants' alleged relationship with the Influencer Defendants. *See* FAC ¶¶ 20–27, 31, 32. At the last hearing, Plaintiff admitted this was all she could offer against the Celsius Defendants. Tr. 11:9–24. As with before, these facts do not confer jurisdiction.

***First***, Plaintiff must show more than availability of Celsius products in California because in-state sales alone are never enough to exercise specific jurisdiction. Tr. 22:21–24 ("[P]laintiff concedes that its main argument in support of personal jurisdiction is that Celsius sells its products in California, and that is not enough to establish specific jurisdiction."); *see* FAC ¶¶ 31–32, 64–65; *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007). And "[r]egistering with the Secretary of State is a passive act that is not expressly aimed at California." *Parnell Pharm., Inc. v. Parnell, Inc.*, 2015 WL 5728396, at *4 (N.D. Cal. Sep. 30, 2015). Plaintiff herself admits that Celsius products are sold nationwide and globally, FAC ¶ 39; this does not demonstrate intentional aiming at California.

***Second***, Plaintiff's reliance on Instagram posts alone cannot satisfy the purposeful direction test. As this Court already found, "internet advertising alone is not sufficient to subject the advertiser to jurisdiction in the plaintiff's home state" without "something more." Tr. 22:12–16; *see, e.g.*, *Ritz Fuente, LLC v. Schafer*, 2024 WL 3746264, at *6 (S.D. Cal. Aug. 9, 2024); *Sec. Alarm Fin. Enters., L.P. v. Nebel*, 200 F. Supp. 3d 976, 985 (N.D. Cal. 2016); *Alani Nutrition, LLC v. Ryse Up Sports Nutrition, LLC*, 2024 WL 148969, at *4 (N.D. Ill. Jan. 12, 2024). And, as with before, "[P]laintiff has not alleged something more in this case" beyond the existence of Instagram posts to demonstrate that the Celsius Defendants' activities were directed at *California* residents. Tr. 22:19–20; *see Briskin v. Shopify, Inc.*, 135 F.4th 739, 752 (9th Cir. 2025) ("[N]o court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction.") (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997)). To allege "something more," Plaintiff had to allege facts evincing the website's "interactivity," the "geographic scope" of the activity, and "individual targeting" of a known forum-based plaintiff. *Briskin*,

135 F.4th at 757–58 (finding that knowingly installing tracking software on Californian's devices to collect and sell personal data qualified as "something more"); *see also Pebble Beach*, 453 F.3d at 1158 (holding a passive website and foreseeable effects, without "something more," are insufficient for personal jurisdiction); *cf. Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011) (finding copyrighted photos on defendant's "[website] anticipated, desired, and achieved a substantial California viewer base" as evidenced by the website's "specific focus on" California-centered industries).

Her amendments do not allege any such facts. Plaintiff's FAC vaguely alleges "[s]ocial media platforms are **interactive** digital channels," and Instagram has high "engagement rates" as a general matter. FAC ¶¶ 46, 49. These naked contentions, which the Court need not accept as true on a motion to dismiss, are contradicted by case law and, in any event, do not show the "something more" required ***for the specific Instagram posts she challenges***. Under the Ninth Circuit's sliding scale test for determining whether a website is sufficiently interactive to satisfy purposeful direction, *see Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008), courts hold that Instagram is a passive website and posts alone do not qualify as express aiming, *see Ritz Fuente*, 2024 WL 3746264, at *6 (Instagram is a passive website because it is not used to directly transact business).

Here, Plaintiff never alleges any misleading Instagram posts by either Celsius Defendant or even mention Celsius's Instagram account.[2] She instead relies on the *Influencer Defendants'* Instagram posts to establish jurisdiction over the Celsius Defendants. That is insufficient: it does not reveal any conduct *by the Celsius Defendants*, and regardless, Celsius brand ambassadors' Instagram posts, like the Influencer Defendants' posts here, are used as passive advertising services; they do not engage in any "interactivity" to satisfy purposeful direction. *See Cybersell, Inc.*, 130 F.3d at 419; Goldberg Decl. ¶ 7.

***Third***, online advertising strategy, particularly when the content is unrelated to the forum as here, does not constitute purposeful direction. As Plaintiff admits herself, Celsius does business worldwide and targets a broad base of consumers. *See* FAC ¶¶ 31, 32. Celsius works with brand ambassadors to promote its products because of their large Instagram followings to reach consumers in many jurisdictions. Goldberg Decl. ¶ 7. Given the worldwide reach of an Instagram post's audience, Celsius could not

[2] Similarly, while Plaintiff alleges that the *Influencer Defendants* have followers in California, she does not allege anything about Celsius's Instagram followers. In any event, merely having followers in California is not relevant to specific jurisdiction. *See Patterson v. Baller Alert*, 2018 WL 11354104, at *3 (C.D. Cal. Dec. 10, 2018).

reasonably anticipate the alleged harm to California residents arising out of posts that were not related to or targeted at California. *See Alani Nutrition*, 2024 WL 148969, at *5. Since Plaintiff does not allege purposeful direction at California, Plaintiff has failed to satisfy her jurisdictional burden.

***b. Erika Wheaton and Devon Windsor***

Plaintiff likewise fails to allege facts or adduce evidence of purposeful direction for Wheaton and Windsor. The FAC vaguely alleges that both were "actively soliciting business in California" and "transact[ed] business in California and nationwide *over the internet*." FAC ¶¶ 34, 36 (emphasis added). These boilerplate allegations are not enough—she must come forward with actual facts rebutting Defendants' evidence and establishing jurisdiction. *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019). The actual facts reveal that neither Wheaton nor Windsor purposefully targeted California.

***First***, activities that take place "over the internet" on passive websites like Instagram, without more deliberate targeting, do not satisfy the purposeful direction standard. *See supra* Section III.B.1.a. Nothing about either Wheaton's or Windsor's accounts or the contents of their Celsius posts is purposefully directed at California or even mentions it. *Sec. Alarm Fin. Enters.*, 200 F. Supp. 3d at 985 (dismissing the plaintiff's claims for lack of personal jurisdiction because the plaintiff offered no evidence the defendant "tailored the content of her posts for a California audience."). Faced with a similar question, the court in *Court of Master Sommeliers v. Pilkey* focused on the content and context of the defendant's posts to find it did not have jurisdiction. 2019 WL 9443609, at *6–7 (N.D. Cal. Dec. 9, 2019). Relevant considerations included defendant's username, where the post was made (indicated by a geolocation tag or "geotag"), and the content of the posts (both the hashtags and the topics of the captions). *Id*. at 6. The court found that the defendant's occasional posts about his childhood in California or his California-based employer fell far short of "promoting himself as a sommelier to California in particular." *Id.*

Here, Wheaton's only Celsius-related post alleged in Plaintiff's Complaint was in Mexico, *see* FAC ¶ 36, and all of Wheaton's other historical posted content for Celsius was in Mexico or Florida, Wheaton Decl. ¶¶ 8, 9. Plaintiff's allegations only show that Windsor has posted *once* about Celsius—on July 25, 2022 while in Miami, Florida. *See* FAC ¶ 34; Windsor Decl. ¶ 9. That post does not include any hashtags, geotags, or content relating to California. Her alleged sole Celsius-related post is just one in 3,999 total posts on Windsor's Instagram account. *See* Windsor Decl. ¶ 8. Plaintiff therefore cannot rely

on Wheaton's and Windsor's Instagram posts as "evidence" that they transact business in California.

***Second***, Wheaton's and Windsor's Instagram posts are not used to transact business. *Ritz Fuente*, 2024 WL 3746264, at *6; *Sec. Alarm Fin. Enters.*, 200 F. Supp. 3d at 985; *Alani Nutrition*, 2024 WL 148969, at *5. Plaintiff never alleges she "interacted" with the Instagram posts or purchased the complained-of products through Instagram (because she did not; in fact, no customers could because Celsius products could not be purchased through the Influencer Defendants' posts, *see* Wheaton Decl. ¶ 9; Windsor Decl. ¶ 9; Tanner Decl. ¶ 7).[3] She offers nothing showing that the "geographic scope" of the Instagram posts in her FAC expressly targeted California beyond her conclusory statements that "she was targeted by the Influencer [Defendants] and [Celsius Defendants]." FAC ¶ 23.

***Third***, Plaintiff's allegations regarding Wheaton's and Windsor's Instagram followers in California are also irrelevant. Plaintiff makes vague claims[4] about Wheaton's and Windsor's followers that do not reflect their most recent Instagram insights data, which shows that California makes up a negligible amount of their primarily non-American follower base. *Compare* FAC ¶¶ 34, 36, *with* Windsor Decl. ¶ 5, Ex. A; Wheaton Decl. ¶ 6. This is not evidence of deliberate "targeting." In the absence of any explicit targeting, courts disregard the residence of a posts' viewers as "purely incidental" for personal jurisdiction analysis. *See Gharavi v. FloSports, Inc.*, 2025 WL 815699, at *12 (N.D. Ill. Mar. 14, 2025) (citations omitted); *Patterson*, 2018 WL 11354104, at *3, *9 (dismissing plaintiff's claims for lack of personal jurisdiction because Instagram posts that "reach users in California" "does not suggest that [d]efendants targeted California," and only shows "that [d]efendants' posting reached [p]laintiff, who happened to reside in California.").

In sum, there are no facts demonstrating purposeful direction.

**2. There Are No Suit-Related Contacts with California.**

Plaintiff also fails to show that her claims arise out of the Florida Defendants' contacts with California (because they do not). "[T]he relatedness requirement is satisfied if 'there is a substantial nexus or connection between the defendant's forum activities and the plaintiff's claim.'" *Roman v. Liberty*

[3] It is unclear, then, why Plaintiff seeks to represent a class of persons who "purchased Celsius products online" or how she would ever be an adequate representative of such a class. FAC ¶ 93.
[4] Plaintiff refers to "modash.io" for "demographics" on Wheaton's and Windsor's Instagram followings. But that website itself does not contain any demographics, and Plaintiff does not include any specific hyperlinks, leaving Defendants and the Court to wonder to which "demographics" Plaintiff refers. FAC ¶¶ 34, 36. The website simply does not support the purported demographic data in the FAC.

*Univ., Inc.*, 162 Cal. App. 4th 670, 679–80 (2008) (citation omitted). Even when a defendant has contacts with the forum state, "[i]f the operative facts of the allegations of the complaint do not relate to the [defendant's] contacts in this state, then the cause of action does not arise from that contact such that California courts may exercise specific jurisdiction." *Rivelli v. Hemm*, 67 Cal. App. 5th 380, 399 (2021). There is no such nexus here.

***a. Celsius Defendants***

Plaintiff's only allegations of California-based contacts as to the Celsius Defendants are their (1) sales in California, (2) alleged relationship with Defendant Tanner, and (3) job postings for work unrelated to social media marketing. *See* FAC ¶¶ 31, 32, 35, 40–41. None of these contacts is connected to Plaintiff's claims. ***First***, the mere existence of Celsius sales in California is insufficient because Plaintiff's claims relate to Celsius's supposed business relationships *with the Influencer Defendants*, not California or its residents. *See id.* ¶¶ 20–28; *see also Alani Nutrition*, 2024 WL 148969, at *5 (dismissing claims for lack of personal jurisdiction over defendant despite selling products at nationwide retailers in the forum because those sales were unrelated to defendants' allegedly infringing social media posts); Tr. 22:21–26 ("As for Celsius, plaintiff concedes that its main argument in support of personal jurisdiction is that Celsius sells its products in California, and that is not enough to establish specific jurisdiction.").

***Second***, Plaintiff's claim does not *arise out of* the Celsius Defendants' connection to Tanner, the sole California Defendant. The Influencer Defendants' Instagram posts, including Tanner's, are publicly available worldwide. Instagram reaches consumers globally, which necessarily includes mostly non-California consumers. *See* Goldberg Decl. ¶ 7; FAC ¶¶ 46–48. Even if all the Influencer Defendants lived and posted in Florida, Plaintiff could still have seen the handful of posts and purchased Celsius products from any nationwide retailer in California. Plaintiff thus fails to show a causal link between Tanner's residence in California and the alleged claims. *See Adina Design*, 2018 WL 6427364, at *2.

***Third***, the new allegations of Celsius job postings for California residents are also unrelated to the challenged Instagram posts or Plaintiff's purchase of Celsius. *See* FAC ¶¶ 40–41. Indeed, ***Celsius Fitness Development Sales Representatives and Territory Sales Managers do not participate in Celsius's social media marketing strategy***, which is the conduct that Plaintiff complains of. Goldberg Decl. ¶ 16. Further, the posting for the Field Marketing Ambassador linked in the FAC is not for Celsius products,

but a different brand, and it lists working locations outside of California. *Id.* Even taking Plaintiff's allegations as true, Plaintiff does not show how her claims "arise from" Celsius hiring California residents for positions unrelated to social media marketing or Influencers. The relevant Celsius employees live and work in Florida. *See id.* ¶ 14. Plaintiff has failed to establish any causal connection between her claim and Celsius's California-based contacts. Her claims against the Florida Defendants should be dismissed for lack of personal jurisdiction. *See Boschetto*, 539 F.3d at 1016 (the "jurisdictional inquiry ends, and the case must be dismissed" if plaintiff fails either prong of the three-part test for specific jurisdiction).

***b. Erika Wheaton and Devon Windsor***

There is still no connection between Wheaton or Windsor's alleged conduct (i.e., their Celsius social media posts) and California, so it is not possible for Plaintiff's claims to have a substantial causal nexus with California-based contacts. The location of Wheaton's and Windsor's audiences is (1) not relevant for purposeful direction analysis because they are insufficiently related to *Plaintiff's* causes of action and (2) unhelpful, in any event, because Wheaton and Windsor each have a global following on Instagram. *See* Wheaton Decl. ¶ 6; Windsor Decl. ¶ 5. "[E]xercising personal jurisdiction over a social media influencer simply because her social media activity reaches forum state residents would mean that every social media influencer is at home in every state." Tr. 22:5–9. That would be an inequitable result and defy the due-process purpose of personal jurisdiction. *See Ford Motor Co. v. Mont.Eighth Jud. Dist. Ct.*, 592 U.S. 351, 360 (2021); *Pilkey*, 2019 WL 9443609, at *4 (exerting personal jurisdiction over a nonresident defendant would "offend traditional notions of fair play and substantial justice" where social media posts did not establish purposeful availment).

**3. Jurisdiction in California Offends Fair Play and Substantial Justice.**

Because Plaintiff has failed to satisfy the first two prongs of the Ninth Circuit's three-part jurisdictional test, the Court can grant the motion to dismiss without further analysis. Nevertheless, even if Plaintiff had met the first two prongs, exercise of personal jurisdiction would still fail because it would be unreasonable and unfair. Whether jurisdiction is reasonable and fair under the Due Process Clause requires the court to balance the following factors:

> (1) [T]he extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the

> dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Briskin*, 135 F.4th at 761. As discussed above, the Florida Defendants did not "interject" themselves into California. They are domiciled in Florida and made decisions regarding social media marketing from Florida. Goldberg Decl. ¶ 14; Wheaton Decl. ¶ 2; Windsor Decl. ¶ 2. Nothing in their Instagram marketing activities evinces any intent to target California (or any other state). *See id.* Plaintiff's "unilateral activity . . . cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Further, Plaintiff represents a nationwide class, so the importance of bringing suit in California is minimal. Most importantly, it is far more efficient for Plaintiff to sue in Florida. *See infra* Section VIII.B. Plaintiff failed to meet her burden to establish specific jurisdiction. This Court should dismiss this action against the Celsius Defendants, Wheaton, and Windsor.

## IV. <u>MOTION TO DISMISS FOR LACK OF STANDING (FRCP 12(b)(1))</u>

The Court should determine that it lacks jurisdiction over this suit and dismiss on that basis. If the Court nevertheless wishes to consider Plaintiff's claims, Plaintiff lacks standing and fails to state any claim against any Defendant. Plaintiff, as the party invoking the federal court's jurisdiction, "bears the burden of showing that Article III standing exists." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011). And she must show standing exists "for each form of relief [sought] (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). There are three requirements: (1) an injury in fact that (2) is fairly traceable to the challenged conduct and (3) has some likelihood of redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). This Court already concluded that Plaintiff failed to meet her burden to establish standing in her Complaint. Tr. 4:5–14 (finding no standing over sole Defendant over which the Court had personal jurisdiction). Because there are no new allegations in the FAC that address this finding, this Court should reach the same conclusion and dismiss this case for lack of standing.

### A. <u>Plaintiff Has Not Alleged Concrete Injury.</u>

Plaintiff has no standing because she has not suffered injury-in-fact, which requires that the injury or threat of injury be "concrete and particularized; . . . [and] actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

Plaintiff here alleges only economic injury. *See* FAC ¶¶ 4, 22, 29, 63, 77, 101; Opp'n 17. "[A]n economic injury typically requires a loss of the plaintiff's benefit of the bargain, such as by overpayment, loss in value, or loss of usefulness." *Simpson v. Cal. Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015, 1022 (S.D. Cal. 2013). "[A] purchaser of a product who receives the benefit of [her] bargain has not suffered Article III injury-in-fact traceable to the defendant's conduct." *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 972 (C.D. Cal. 2014). To show that Plaintiff did not receive the benefit of her bargain, she must allege she bargained for a product worth a given value but received a product worth less. *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 705–06 (9th Cir. 2020). "A plaintiff, however, must do more than allege that she 'did not receive the benefit she thought she was obtaining.' The plaintiff must show that she did not receive a benefit for which she actually bargained." *Id.* (citation modified). Mere overpayment is not enough: "In cases such as this one, where the alleged wrong stems from the assertion of insufficient performance of a product or its features, a plaintiff must allege 'something more' than 'overpaying for a "defective" product' to support a claim." *Lee*, 992 F. Supp. 2d at 973.

Yet that is all Plaintiff alleges here. Plaintiff claims she was harmed because she overpaid a "price premium" for "inferior" Celsius products. FAC ¶ 22. But she does not allege "something more"—that is, some fact showing she was deprived of the benefit of her bargain. *See Doss v. Gen. Mills, Inc.*, No. 18-61924-CIV, 2019 WL 7946028, at *3 (S.D. Fla. June 14, 2019) (allegation that plaintiff would not have purchased the product if she had known the "true nature" of the product "is not enough to create an injury in fact"), *aff'd*, 816 F. App'x 312 (11th Cir. 2020); *Babaian v. Dunkin' Brands Grp., Inc.*, 2018 WL 11445613, at *7 (C.D. Cal. June 12, 2018) (finding plaintiff failed to plead economic injury even though he listed competing products because they failed to establish "that a price premium attaches to the Class Products due to the alleged misrepresentation.").

The Northern District of Illinois recently dismissed a similar case challenging influencer statements for lack of standing where the plaintiff did not allege facts "that the influencers made any misrepresentations about [the challenged] products as compared to what [plaintiff] received." *Simoni v. Hi-Tech Pharms., Inc.*, 2025 WL 2614685, at *4 (N.D. Ill. Sep. 10, 2025). There, the "complaint alleges that she 'saw Hi-Tech products being worn or used by Instagram influencers' causing her to make the purchases, but the products 'proved to be of an inferior quality compared with the expectations [Simoni]

had and the premiums she paid for the Hi-Tech products.'" *Id.* But that "theory of injury is rooted in the belief that [plaintiff] suffered economic harm because she was unaware that the influencer-Defendants were paid by Hi-Tech to promote the products," which is nonactionable "buyer's remorse" where the plaintiff "received the products for which she bargained." *Id.* at *9–10.

Just so here—Plaintiff does not plead any facts showing that the product she purchased failed to perform or that she even experienced a problem with it. *See id.*, *Lee*, 992 F. Supp. 2d at 972 (no economic injury where plaintiffs did not allege the product failed to perform as described or that they experienced any problems with the product). To the contrary, per the allegations in her FAC, Plaintiff received the benefit of her bargain. *See Simoni*, 2025 WL 2614685, at *5 ("Hi-Tech promised Simoni Mesomorph, PreWorkout Creatine Monohydrate, and Coffee Trim, and those non-defective products were exactly what she got. Because Simoni fails to allege a concrete, particularized injury, she lacks standing to bring this suit."); *Simpson*, 989 F. Supp. 2d at 1022 ("Plaintiff alleges that she paid for, and therefore lost money due to her purchase of, the Contested Pizzas. She also, however, consumed the pizzas. Consumption is the purpose for which one purchases frozen foods. Thus, Plaintiff received the benefit of her bargain from the purchase of the Contested Pizzas.").[5]

Nor can Plaintiff rely on the mere allegation that Defendants supposedly violated the FTC Guidelines: "[A] violation of guidelines from an agency, or even a violation of the statute itself, without more, does not establish a concrete, particularized injury necessary to confer standing." *Simoni*, 2025 WL 2614685, at *4–5 (dismissing influencer litigation brought by same plaintiff's counsel for lack of standing); *TransUnion*, 594 U.S. at 440. Accordingly, Plaintiff has not alleged a viable economic injury or that she was deprived of the benefit of her bargain. There is thus no concrete injury.

**B. <u>Plaintiff Has Not Alleged a Traceable Injury.</u>**

Fairly traceable injury requires "a causal connection between the injury and the defendant's challenged conduct." *Wit v. United Behav. Health*, 79 F.4th 1068, 1083 (9th Cir. 2023). Where "there are

[5] And to the extent Plaintiff merely alleges some Defendants misrepresented that Celsius is "sports nutrition and good for exercising," "semi-addicted" such that Celsius products are consumed on a "regular basis," or that Celsius keeps you "fueled," those do not provide standing over this dispute. They do not establish an expected benefit of the bargain because ***Plaintiff never alleges that she relied on these statements <u>and</u> believed them to mean Celsius would have "significant nutritional value" and can "keep a person 'fueled.'"*** FAC ¶ 55–57. Even if she had, the challenged statements are nonactionable puffery as a matter of law. *See In re Bang Energy Drink Mktg. Litig.*, 2020 WL 9815622, at *3 (N.D. Cal. Sep. 14, 2020) (energy drink advertising about keeping a consumer "fueled" is puffery).

multiple defendants and multiple claims," the plaintiff must demonstrate standing "as to each defendant and each claim." *Seider v. City of Malibu*, 2023 WL 6192715, at *7 (C.D. Cal. May 2, 2023). Plaintiff fails to trace her nonexistent injury to alleged misconduct by each Defendant, as she must.

Plaintiff complains about the Influencer Defendants' Instagram posts' "misleading advertising claims" and "advice," but the posts—as seen from the face of the FAC—contain no advertising claims or advice at all. *Compare* FAC ¶¶ 25, 26, *with id.* ¶¶ 34–36. She does not show that the specific Celsius products she saw on social media from each Influencer Defendant were the same ones she purchased, because she never pleads which Celsius products she purchased. *See id.* ¶ 64. Plaintiff never explains how each of the three featured Instagram posts actually caused her harm, and she never could: the posts, on their face, do not contain any factual representations about the product's content or characteristics.

Plaintiff also does not point to any post or misrepresentation by either Celsius Defendant.[6]

The balance of the FAC rests on an ***omission*** theory—Plaintiff alleges Defendants failed to disclose that the Influencer Defendants were paid by Celsius to make social media posts featuring Celsius products. Such broad-based allegations do not excuse Plaintiff's obligation to plead plausible *facts* that can trace her injury (paying for unidentified Celsius products) to the alleged omissions by each and every Defendant. *See Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1082 (N.D. Cal. 2014) ("[I]f Plaintiffs did not see the specified representations before they purchased Defendant's services, then Plaintiffs did not rely on these representations and suffered no injury."). To the contrary, plaintiffs can only demonstrate Article III standing for false advertisement where they allege facts showing they relied on a *specific* advertisement for the *specific* product they purchased. *See Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 908–09 (C.D. Cal. 2021) (dismissing, in part, class claims brought as to products the plaintiff did not purchase for lack of standing).[7] Plaintiff never explains how a misrepresentation or omission by each and every Defendant caused her harm. Plaintiff thus fails to plead facts that establish a fairly traceable injury.

[6] Plaintiff claims "Celsius" "falsely promotes its products as being different from the competition" and points to a statement on its website. *See* FAC ¶ 78 n.15. Setting aside that such statements are nonactionable puffery, they are irrelevant—Plaintiff never claims she saw those website statements or relied on them. She only vaguely alleges she saw on the three Instagram posts in the FAC, which are by the Influencer Defendants, not the Celsius Defendants. *See id.* ¶ 23.

[7] Although it is unclear what specific products Defendants misrepresented or what specific products Plaintiff purchased, *see* FAC ¶ 64 (alleging she purchased "assorted energy drink cans"), to the extent her claims are based on products she did *not* purchase, she lacks standing to pursue those. A plaintiff cannot claim injury from similarly false advertising upon which he or she did not injuriously rely (by buying a similar product or otherwise). *See Lorentzen*, 532 F. Supp. 3d at 908–09.

### C. Plaintiff Has No Standing to Seek Injunctive Relief.

Plaintiff lacks standing to assert her claim for injunctive relief for the independent reason that she cannot show an actual and imminent injury or a "sufficient likelihood that [s]he will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). In this context, plaintiff must show she wants or intends to purchase the product in the future. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018); *see also Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) ("A some day intention—without any description of concrete plans, or indeed even any specification of *when* the some day will be—does not support a finding of the actual or imminent injury that Article III requires.") (citation modified).

Even after repleading, Plaintiff fails to allege or even indicate that she will ever buy a Celsius product again. Instead, Plaintiff pleads Celsius products are "inferior." FAC ¶ 22. She "is now fully aware of the alleged misrepresentations" and fails "to allege that [s]he intends to purchase the Class Products again in the future." *Rahman v. Mott's LLP*, 2014 WL 325241, at *10 (N.D. Cal. Jan. 29, 2014) (dismissing injunctive relief demand for lack of standing). And still, there is no allegation that Plaintiff will regularly encounter the purportedly deceptive social media posts. *See Wisdom v. Easton Diamond Sports, LLC*, 2018 WL 6264994, at *2 (C.D. Cal. Oct. 9, 2018) (holding plaintiff lacked standing to seek injunctive relief where he failed to allege he "regularly purchases bats, or is regularly visiting stores where bats are sold"). Where, like here, a plaintiff merely avers that she would have "spent less . . . *in the past* had [s]he known about the truth" without alleging her "desire to purchase . . . in the future," there is no standing. *See DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1241 (9th Cir. 2024) (dismissing injunctive relief claim for lack of standing).

## V. MOTION TO DISMISS FOR FAILURE TO SATISFY FRCP 9(b)

Plaintiff's FAC fails because she again does not satisfy FRCP 9(b)'s heightened pleading standard, which requires she "state with particularity the circumstances constituting fraud." FRCP 9(b) applies to all of Plaintiff's claims because it broadly covers any claims that sound in fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003); *see Chulick-Perez LLC v. CarMax Auto Superstores Cal.*, 2014 WL 2154479, at *6–7 (E.D. Cal. May 20, 2014) (UCL and CLRA claims subject to FRCP 9(b)); *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 911 (N.D. Cal. 2020) (FAL claims subject

to FRCP 9(b)); *Puri v. Khalsa*, 674 F. App'x 679, 690 (9th Cir. 2017) (unpublished) (unjust enrichment based on fraud subject to FRCP 9(b)); *Davis v. Abbott Labs*, 562 F. Supp. 3d 585, 589 (C.D. Cal. 2021) (negligent misrepresentation claim subject to FRCP 9(b)).

Plaintiff's allegations were required to be "specific enough to give defendants notice of the particular misconduct," including "the 'who, what, when, where, and how' of the misconduct charged," *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted), and "the time, place, and specific content of the false representations," *Edwards v. Marin Park, Inc*., 356 F.3d 1058, 1066 (9th Cir. 2004) (citation omitted). Even after amendment, Plaintiff does not even try to plead the "who, what, when, where, and how" of the alleged fraud as required by FRCP 9(b) (because there was none).

Federal courts have dismissed complaints making similar allegations of deceptive social media influencer marketing practices for this very reason. For example, in *Pop v. LuliFama.com LLC*, the Eleventh Circuit recently affirmed the district court's grant of a motion to dismiss because the plaintiff (represented by the *same* Plaintiff's counsel here) failed to allege the requisite who, what, when, where, and how and therefore failed to satisfy FRCP 9(b). 145 F.4th 1285, 1296 (11th Cir. 2025). The court reasoned the plaintiff "did not allege when those [influencer's] posts were made, when he saw them, if he saw those specific posts before purchasing [defendant's] products, or how those posts caused him to purchase the products at issue here." *Id.* at 1297. He, like Plaintiff here, "never even alleged which products he bought, much less how the defendants inspired him to do so." *Id.* Plaintiff also failed to allege the required information—"'the who, what, when[,] where, and how' of the allegedly wrongful conduct"—as to each defendant. *Id.* Pop also failed to adequately allege how the company schemed with the influencers such that the influencers would recommend the company's products and pretend they were "disinterested and unaffiliated consumers"—allegations that were too vague and failed to comply with FRCP 9(b). *Id.*

Just so here. True, Plaintiff has now amended her pleading to allege that she saw the three Instagram posts in the FAC. FAC ¶ 23. But she never alleges facts showing she *relied* on those posts in deciding to purchase Celsius, instead merely averring that she would not have purchased Celsius products "[b]ut for the false endorsements by the Influencers and the misleading advertising claims," which she never specifically defines or identifies. *Id.* ¶ 25. And Plaintiff never identifies the specific Celsius products

she purchased. Plaintiff likewise never alleges specific facts supporting the alleged "scheme" between Celsius and the Influencer Defendants and instead parrots the same language from *Pop* that Defendants pretended the Influencer Defendants were "disinterested" consumers. *See* FAC ¶ 3. Plaintiff does not even distinguish between the two Celsius entities and explain how each deceived her. *See id.* ¶ 33. Despite the opportunity to amend, and despite now having the benefit of the *Pop* ruling (which was issued after Plaintiff briefed her opposition to Defendants' first motion to dismiss), Plaintiff's pleading, like the *Pop* pleading (which her counsel also drafted), still does not satisfy FRCP 9(b).

Even if FRCP 9(b) did not apply to the entire pleading (it does), Plaintiff still fails to satisfy FRCP 8(a)(2)'s lower standard, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." In cases with multiple defendants, courts have required that the complaint state with particularity which allegations are attributable to which defendants. In *McHenry v. Renne*, for example, the Ninth Circuit upheld the dismissal of a complaint on the grounds that it did not "properly notify individual defendants of the allegations with which they are charged," as the claims "vaguely refer[red] to 'defendants' . . . ." 84 F.3d 1172, 1175 (9th Cir. 1996). The same is true here. Plaintiff's Complaint fails to make any independent allegations that would notify Defendants as to who is responsible for what alleged conduct. The Court found as much with the last Complaint, and nothing in the FAC has cured this defect. *See* Tr. 23:6–8 ("The complaint groups or lumps the defendants together, and the injury, the traceability of the injury to this defendant, is simply not clear.").

The Court need go no further: dismissal can be granted for this reason alone. *See Vess*, 317 F.3d at 1103–04 (motion to dismiss should be granted if, after disregarding insufficiently pleaded averments of fraud, there is effectively nothing left of the complaint); *see also Abramson v. Marriott Ownership Resorts, Inc.*, 155 F. Supp. 3d 1056, 1067 (C.D. Cal. 2016) (same).

## VI. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (FRCP 12(b)(6))

Dismissal under FRCP 12(b)(6) is proper either "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief" or when the plaintiff fails to plead sufficient facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not "assume the

truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

**A. Plaintiff Fails to Adequately Plead any Deception Theory.**

Plaintiff's omission theory flaws have not been cured on amendment: Plaintiff cannot show any Defendant owed a duty to disclose, made an actionable omission (including one that pertains to the safety or central functionality of the product), or that Plaintiff reasonably relied on an omission by each and every Defendant. And her new "misrepresentation" theory fares no better. Plaintiff gins up purported affirmative "misrepresentations" that Celsius products are "nutritious and healthy" despite the fact that the Instagram posts Plaintiff claim she saw contain no such representations. *See* FAC ¶¶ 55–57, 63. In any case, her misrepresentation theory is inadequately pleaded and nonactionable as a matter of law.

**1. Plaintiff Fails to Allege a Duty to Disclose.**

"[A] failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL" and therefore not actionable. *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 838 (2006). The same is true of CLRA claims. *Rubenstein v. The Gap, Inc.*, 14 Cal. App. 5th 870, 881 (2017). Each of Plaintiff's claims fail because she does not (and cannot) allege that each Defendant owed her a duty to disclose. *See Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1025–26 (N.D. Cal. 2016), *aff'd,* 891 F.3d 857 (9th Cir. 2018).

Even after amending, Plaintiff does not allege any facts showing Defendants had any cognizable duty to disclose. Defendants (1) were not Plaintiff's fiduciaries, (2) did not actively conceal or have exclusive knowledge of material facts (as is demonstrated by the #celsiusofficial and #celsiusbrandpartner references in their posts), and (3) did not make partial representations. *See LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336–37 (1997) (enumerating specific circumstances where duty to disclose may be imposed under California law and finding no duty); *see, e.g.*, *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 989 (N.D. Cal. 2016) (confirming duty to disclose is a question of law proper for determination on motion to dismiss and declining to impose a "fiduciary duty on institutions in all commercial transactions"). There is no allegation of a fiduciary relationship (because there is none). Plaintiff also cannot allege active concealment or exclusive knowledge of a *material* fact, which, as explained below, must relate to the product's safety or central functionality. *See infra* Section VI.A.2.

That Celsius had a business relationship with the Influencer Defendants is not a "material" fact because it has nothing to do with product safety or functionality.

Nor was a duty to disclose created by law. While Plaintiff points to "the FTC guidelines regarding advertising on social media," FAC ¶ 61, those FTC Guidelines were only revised to address social media posts on July 26, 2023, *after* Plaintiff made her supposed Costco purchase of Celsius products on May 17, 2023 and *long after* the 2020 and 2022 posts by the Influencer Defendants. *See* FAC ¶¶ 34–36. This precludes any supposed duty based on the Guidelines. The 2019 disclosure guidelines, which are relegated to a footnote in the FAC, *see id.* ¶ 53 n.11, likewise do not provide a duty: these "guidelines" are merely a hyperlinked FTC brochure with no codified law or regulation, and they include guidance that the Influencer Defendants nevertheless *complied with*, such as to include brand ambassador hashtags and disclosures in the caption of the post.

Moreover, as a matter of law, these are mere *guidelines* that do not give rise to a duty. They "lack the force of law." *FTC v. Garvey*, 383 F.3d 891, 903 (9th Cir. 2004). "[G]uidelines like § 255.5 are only 'administrative interpretations' of laws enforced by the FTC." *Simoni*, 2025 U.S. Dist. LEXIS 176669, at *13. The FTC's recent "Guides Concerning Use of Endorsements and Testimonials in Advertising," codified at 16 C.F.R. ch. 1, sub. ch. pt. 255 et seq. (the "FTC Guidelines"), cabin their own reach: they merely "provide the basis for voluntary compliance with the law by advertisers and endorsers." And the FTC Act, which the Guidelines purport to interpret, "does not provide individuals with a private right of action," *BMA LLC v. HDR Glob. Trading Ltd.*, 2021 WL 4061698, at *16 (N.D. Cal. Sept. 7, 2021), and therefore does not create a legal disclosure duty either.

**2. Plaintiff Does Not Plead an Actionable Omission Because the Purported Omission Is Not Central to the Product's Function.**

Binding precedent limits omissions-based false advertising claims to those pertaining to the central functionality of a product. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863 (9th Cir. 2018) (omission-based claim as to a product must relate to a product defect that implicates the "central functionality" of the product). California courts reject a broad duty to disclose and instead hold that such a duty only arises where (1) the omission is material, (2) "the defect was central to the product's function," and (3) one of the four factors discussed in *LiMandri* is present. *Id.* (no actionable omission as to use of child labor

because no allegation that "the existence of slave or child labor in the supply chain affects the product's central function"); *Gomez v. Intel Corp.*, 2023 WL 7211394, at *1 (9th Cir. Nov. 2, 2023) (even though security could be material to a consumer, the security risk presented by the defects in the product were not central to the product's function and therefore was not an actionable omission). The Ninth Circuit explains that to satisfy the "central function" prong as applied to a food (including a beverage product like Celsius), a plaintiff must plausibly allege that Defendants' supposed undisclosed fact renders the Products "incapable of use by any consumer." *Hodsdon*, 891 F.3d at 864.

Plaintiff does not and cannot meet this standard. As a threshold issue, Plaintiff does not identify *what* specific Celsius products she purchased. Setting that aside, Plaintiff cannot allege that the supposed undisclosed influencer relationship rendered Celsius products incapable of use. At most, Plaintiff alleges that Defendants did not disclose that the Influencer Defendants had been compensated to create social media posts featuring Celsius.[8] FAC ¶¶ 22–27. This alleged omission does not relate to the product's safety or even the features of the product. Federal courts in California have dismissed many omissions-based claims against food products under FRCP 12(b)(6) where, like here, the presence or absence of information did not render the product unusable and ceasing to act as a food. *See, e.g.*, *In re Theos Dark Chocolate Litig.*, 750 F. Supp. 3d 1069, 1090–91 (N.D. Cal. 2024) (granting motion to dismiss omissions-based claim where the food was not unusable); *In re Plum Baby Food Litig.*, 2024 WL 1354447, at *6 (N.D. Cal. Mar. 28, 2024) (finding that trace heavy metals in baby food do not "render[] the product incapable of nourishment"), *aff'd*, 2025 WL 1200700 (9th Cir. Apr. 25, 2025) (unpublished). Binding precedent like *Hodsdon* precludes Plaintiff's entire theory of liability.

Last, an omissions-based theory is not an actionable basis for a negligent misrepresentation claim because such claims require an affirmative representation. *See Byrum v. Brand*, 219 Cal. App. 3d 926, 942 (1990) (negligent misrepresentation claim unavailable for an implied representation or negligent concealment); *see also infra* Section VI.H.

[8] While Plaintiff's FAC adds vague allegations that Celsius was advertised as "nutritious and healthy," FAC ¶ 63, she never alleges any Defendant made any *omissions* as to the nutritional or health qualities of Celsius. In any case, what she does cite constitutes nonactionable puffery. *In re Bang Energy Drink Mktg. Litig.*, 2020 WL 9815622, at *3.

**B. Plaintiff's New Affirmative Misrepresentations Allegations Fail as a Matter of Law.**

Perhaps suspecting that her omission-based theory of liability will fail yet again, Plaintiff amended her pleading to half-heartedly allege that "the Influencers post statements that are inaccurate and misleading and amplify the false claims regarding Celsius being sports nutrition and good for exercising" and "advertise[]" Celsius as "nutritious and healthy." FAC ¶¶ 55, 63. As supposed "examples," Plaintiff points to Windsor's post that states she is "semi-addicted" to Celsius and Wheaton's post that states Celsius keeps her "fueled." *Id.* ¶ 56. These vague "misrepresentations"—which Plaintiff never specifically alleges she relied on in purchasing Celsius products—fail as a matter of law.

***First***, while Plaintiff now claims Celsius is marketed as "sports nutrition," she never (1) cites any specific representations by any Defendant stating as much; (2) alleges she saw and relied on those representations; or (3) alleges she believed these vague statements meant Celsius had "significant nutritional value." And Plaintiff complains of Windsor's alleged Instagram post stating that she was "semi-addicted" and Wheaton's Instagram post stating Celsius keeps her "fueled," FAC ¶ 56, but neither is plausibly deceptive or linked to her actual purchase.

Further, Plaintiff pleads absolutely no facts showing that she relied on conduct by each and every Defendant for her purchase. It is not enough to merely point to purported "misrepresentations" without alleging *facts* showing she reasonably relied on the same. *See Gram v. Intelligender, LLC*, 2010 WL 11601035, at *3 (C.D. Cal. Oct. 8, 2010) (vague allegations "that Defendant made misrepresentations to her concerning the accuracy of the [product] and that she relied on those misrepresentations in purchasing the product" are insufficient); *Lee*, 992 F. Supp. 2d at 974 ("Plaintiffs have not alleged that they saw, read, or in some way relied on a statement by Toyota promising that the pre-collision braking feature in their Prius' PCS would . . . conform to any particular standard.").

***Second***, the only representations Plaintiff alleges she actually saw, the three Instagram posts,[9] do not contain any representations about health or nutrition. Plaintiff calls out that Windsor's post says she is "semi-addicted" to Celsius and Wheaton's post says Celsius keeps her "fueled." FAC ¶ 56. Those benign statements do not represent anything about the health or nutrition of Celsius products. And nothing in Plaintiff's FAC plausibly links these vague statements to Plaintiff's purported injury (purchasing an

[9] None of these posts were by the Celsius Defendants. *See* FAC ¶¶ 34–36.

"inferior" product at a premium). *See Rice v. Sunbeam Prods., Inc.*, 2013 WL 146270, at *6 (C.D. Cal. Jan. 7, 2013) (representation that the Crock-Pot "cooks all day [ ] while the cook's away" was untethered from the defect that plaintiff complains of (i.e., the exterior temperature of the Crock-Pot) such that no reasonable consumer would be deceived as plaintiff alleges she was); *Daugherty*, 144 Cal. App. 4th at 834 (holding car buyers did not state claim under CLRA because complaint "fail[ed] to identify any representation by Honda that its automobiles had any characteristic they do not have").

***Third***, these alleged misrepresentations are nonactionable puffery. In the context of claims based on product advertisement, "[a]dvertising which merely states in general terms that one product is superior is not actionable"; a plaintiff must instead allege "misdescriptions of specific or absolute characteristics" to state a claim, *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (per curiam) (citation omitted)—a standard that applies to UCL and False Advertising Law ("FAL") claims, *see, e.g.*, *Henderson v. Gruma Corp.*, 2011 WL 1362188, at *11 (C.D. Cal. Apr. 11, 2011). Courts routinely dismiss claims based on nearly identical representations because they are puffery. *See In re Bang Energy Drink Mktg. Litig.*, 2020 WL 9815622, at *3 (N.D. Cal. Sep. 14, 2020) (energy drink advertising about keeping a consumer "fueled" is nonactionable puffery).

Further, although Plaintiff never identifies what representations she actually saw and relied on, her generic allegations that Defendants misled her about the superiority of the product, FAC ¶ 22, are also nonactionable puffery. Product superiority claims that are vague or highly subjective are nonactionable puffery under California law. *Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools*, 673 F. Supp. 3d 1083, 1094 (N.D. Cal. 2023). This Court already found that alleged expectations of a "better product" are purely subjective, which is fatal to Plaintiff's theory of liability. *See* Tr. 23:1–5 ("Plaintiff essentially argues that based on the influencer's endorsement, she was expecting a better product, but better is subjective. There aren't any other allegations that show how or why this plaintiff was injured by this particular defendant.").

***Fourth***, Plaintiff's allegations that these representations were "misleading" or "false" is belied by her own pleading. Plaintiff admits "[c]affeine is the main active ingredient in Celsius," FAC ¶ 3, and she cites a website that states "caffeine content makes energy drinks one of the quickest and most efficient

ways of boosting energy levels," *id.* ¶ 12 n.1. Yet elsewhere in the FAC, Plaintiff alleges it is "misleading" to claim that Celsius "fuels" consumers. *Id.* ¶ 21.

At bottom, the purported misrepresentations are too vague, nonactionable, untethered to the alleged harm, and contradicted by Plaintiff's own pleading. Her misrepresentation allegations thus fail.

### C. Plaintiff's Allegations Fail the "Reasonable Consumer" Test.

Plaintiff cannot plausibly plead that a reasonable consumer would be deceived by the alleged omission, as she must to state a false advertising claim under the FAL, CLRA, or UCL. The governing standard for Plaintiff's claims is whether a reasonable consumer would be deceived by the product labels and advertising. *See Moore v. Trader Joe's Co.*, 4 F.4th 874, 885 (9th Cir. 2021) (false or deceptive advertising claims under the FAL, the CLRA, and the fraudulent and unfair prongs of the UCL are governed by the "reasonable consumer" standard). The Ninth Circuit explains that the "reasonable consumer" standard "requires more than a mere possibility that [Defendants'] label "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Id.* at 882; *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Rather, the reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*; *see also Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (granting motion to dismiss where no reasonable consumer would be misled by product advertising). A court may dismiss on this basis where it "can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging." *Werbel v. Pepsico, Inc.*, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010).

As a gating issue, Plaintiff never alleges facts showing she *relied* on the Instagram posts featured in her FAC in deciding to purchase Celsius, instead merely averring that she would not have purchased Celsius products "[b]ut for the false endorsements by the Influencers and the misleading advertising claims," which she never specifically defines o identifies. FAC ¶ 25. Moreover, the three Instagram posts featured in the FAC do not amount to deception under the "reasonable consumer" test. Each of the three posts tags the official Celsius Instagram account and features Celsius hashtags in the caption that would put a reasonable consumer on notice that the Influencer Defendants were affiliated with Celsius. *See id.* ¶ 34 (tagging @CELSIUSofficial and using #CELSIUSLiveFit conspicuously displayed in the caption);

¶ 35 (tagging @CELSIUSofficial and using #celsiuslivefit and #celsius conspicuously displayed in the caption). At least one of the posts by Wheaton, *see id.* ¶ 36, features language recommended for influencer endorsements in the FTC Guidelines because it contains a Celsius hashtag *and* #celsiusbrandpartner in the clear and conspicuous caption of the post. A reasonable consumer would assume that this means what it says. A reasonable consumer who uses Instagram would also understand that clearly and conspicuously disclosed Celsius hashtags and official Celsius account tagging indicates the Influencer Defendants had an affiliation with Celsius. As to the purported "misleading" statements about Celsius's health or nutritional value, no reasonable consumer would be misled by these statements because they are subjective puffery, as explained above in Section VI.B. "Advertisements that amount to mere puffery are not actionable because no reasonable consumer relies on puffery." *Abramson v. Marriott Ownership Resorts, Inc.*, 155 F. Supp. 3d 1056, 1066 (C.D. Cal. 2016) (citation modified).

Accordingly, Plaintiff's allegations fail the "reasonable consumer" test.

**D. <u>Plaintiff's Lacks Statutory Standing Under the CLRA & UCL (Counts I & II).</u>**

Plaintiff lacks statutory standing—which is "substantially narrower" than Article III standing, *see Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322, 324 (2011)—because she has no viable economic injury. *See* Cal. Civ. Code § 1780(a) (CLRA standing requires actual injury); *Kwikset*, 51 Cal. 4th at 322 (UCL standing requires economic injury in fact); *Obesity Rch. Inst., LLC v. Fiber Rch. Int'l, LLC*, 165 F. Supp. 3d 937, 947 (S.D. Cal. 2016) (same for FAL). For all the same reasons stated in Section IV, Plaintiff has no statutory standing. Plaintiff's naked allegation that she paid an unquantified "premium" for her unidentified Celsius products—a dubious assertion in light of the fact that she made her purchase at a *wholesale* retailer, Costco—is insufficient because she fails to link that alleged monetary loss to any specific misconduct by Defendants. Plaintiff thus fails to demonstrate statutory standing.

**E. <u>Plaintiff's CLRA Claim Fails for Additional Reasons (Count I).</u>**

Plaintiff's CLRA claim fails as a matter of law. Although she fails to cite the subsections of the CLRA that Defendants purportedly violated, her conclusory allegations of a violation fail on their face.

**Section 1770(a)(2).** Plaintiff alleges that "Defendants misrepresented the source, sponsorship, approval, or certification of the goods or services," FAC ¶ 115, which appears to allege a violation of Civil Code section 1770(a)(2). This alleged violation fails because, as explained above, the Influencer

Defendants' posts sufficiently put reasonable consumers on notice of their affiliation with Celsius, including through the FTC-recommended use of brand partner hashtags. *See supra* Section VI.C. Plaintiff, moreover, never pleads any specific misrepresentation or omission that any Defendant made about "the source, sponsorship, approval, or certification of the goods or services." Nor does she even plead what "goods" were allegedly misrepresented or what "goods" she purchased.

**Section 1770(a)(3).** Plaintiff alleges "Defendants misrepresented the affiliation, connection, or association with, or certification by another," FAC ¶ 116, which appears to allege a violation of Civil Code section 1770(a)(3). For the reasons stated above, including because the brand relationship is clear to any reasonable consumer viewing the posts, Plaintiff fails to plead sufficient facts that would constitute a violation under this subsection. *See supra* Sections VI.A, C.

**Section1770(a)(5).** Plaintiff alleges "Defendants represented that the goods or services have approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have," FAC ¶ 117, which appears to allege a violation of Civil Code section 1770(a)(5). Plaintiff pleads no facts showing any misrepresentation about "approval, characteristics, ingredients, uses, benefits, or quantities" of the unidentified Celsius products she bought. *See Daugherty*, 144 Cal. App. 4th at 834 ("[T]he CLRA proscribes a concealment of characteristics or quality "contrary to that represented," but in Daugherty's case, no representation was made to which the alleged concealment was contrary."). She likewise does not establish that Defendants misrepresented "a sponsorship, approval, status, affiliation, or connection that the person does not have." Quite the opposite: Plaintiff claims Defendants represented that there was *no* sponsorship, affiliation, etc. There is thus no claim under subsection (a)(5).

**Section 1770(a)(9).** Plaintiff alleges that "Defendants advertised goods or services with intent not to sell them as advertised," FAC ¶ 118, which appears to allege a violation of Civil Code section 1770(a)(9). Courts have generally applied this subsection to situations where a consumer has been "baited" into purchasing an item that turns out to be different than was advertised. *Kelly v. BP West Coast Prods. LLC*, 2014 WL 7409220, at*8 (E.D. Cal. Dec. 30, 2014) (where plaintiff alleged defendant omitted debit card fee on its gas advertisement, there is no CLRA liability because there were no allegations that defendant intended to sell gas for a different price, to sell a different brand or grade of gas,

or that it promised it would apply no fee to plaintiff's purchase). But Plaintiff does not identify the advertisements that were purportedly misleading, nor does she allege how the Instagram posts "baited" her into buying an item that was different than advertised—she wanted Celsius drinks and bought them. She never alleges there was anything wrong or unusable about the Celsius drinks she bought. It is impossible to allege, then, any facts showing that Defendants had an "intent" not to sell the unidentified Celsius products in a manner inconsistent with how they were advertised. Plaintiff fails to allege a violation of this subsection.

**No reasonable reliance.** As explained above in Section VI.C, Plaintiff does not plead reasonable reliance. "[A] plaintiff asserting a CLRA claim which sounds in fraud must establish reliance and causation." *Williamson v. Apple, Inc.*, 2012 WL 3835104, at *4 (N.D. Cal. Sep. 4, 2012). Her conclusory, self-serving allegations that she "relied" on unidentified advertising are not enough. Plaintiff was required—but failed—to plead facts linking specific misrepresentations or omissions to the purchase of her products. *See Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946 (S.D. Cal. 2007). Accordingly, Plaintiff fails to plead the necessary element of reasonable reliance under the CLRA.

**F. <u>Plaintiff's UCL Claim Fails (Count II).</u>**

Plaintiff's UCL claim also fails on the independent grounds that (1) she fails to allege any unfair, unlawful, or fraudulent conduct and (2) she fails to plead any basis for equitable remedies.

**1. Plaintiff Fails to State a Claim Under the "Unlawful" Prong.**

Plaintiff fails on the unlawful prong because she cannot establish a violation of the CLRA or FAL, the only two legal bases alleged for her unlawful prong UCL claim. *See* FAC ¶¶ 120, 127–30; *Martinez v. Ford Motor Co.*, 2022 WL 14118926, at *3–4 (S.D. Cal. Oct. 24, 2022).

***a. Plaintiff fails to allege a CLRA violation.***

Although Plaintiff's alleged violations of the CLRA form, in part, the basis of her "unlawful" prong UCL claim, FAC ¶ 120, that claim fails as explained in Sections VI.A–E. Plaintiff's UCL claim, to the extent predicated on a CLRA violation, must fall with the CLRA claim. *Daugherty*, 144 Cal. App. 4th at 837 (no unlawful prong liability predicated on CLRA where CLRA claim failed).

***b. Plaintiff fails to allege a FAL Violation.***

Plaintiff fails to state a FAL violation because the social media posts and unidentified "misleading" statements about nutritional value are neither false nor misleading. Plaintiff bases her FAL claim, which prohibits false or misleading advertising, Cal. Bus. & Prof. Code § 17500, on the same alleged representations discussed above. Defendants incorporate their arguments as to those counts to avoid repetition. *See supra* Sections VI.A–E.

***c. Plaintiff cannot predicate her claim on the FTC Guidelines.***

Plaintiff also bases her suit on her allegation that the unidentified social media posts by the Influencer Defendants were misleading because they did not comply with the FTC Guidelines. *See* FAC ¶¶ 107–09, 124. The 2023 FTC Guidelines that Plaintiff relies on became effective *after* the cited Instagram posts, FAC ¶¶ 34–36, and *after* Plaintiff's Celsius purchase, *see id.* ¶ 64. Thus, the Instagram posts are not an actionable basis for a UCL claim because a statement that was lawful when made but later declared unlawful does not constitute a misleading or false statement as a matter of law. *See Janis v. Cal. State Lottery Comm'n*, 68 Cal. App. 4th 824, 832 (1998) (dismissing UCL claim when predicate conduct occurred, "it had not yet been declared 'illegal.' Thus, [defendants'] statements concerning the legality of the game were not misleading or false as a matter of law.").

Moreover, FTC Guidelines are "voluntary" and lack the force of law. Plaintiff cannot base her UCL claim on a supposed violation of the voluntary guidelines. Even the FTC Act, on which the FTC Guidelines provide interpretive guidance, "does not provide individuals with a private right of action and cannot be used as a predicate for a UCL claim." *BMA LLC*, 2021 WL 4061698, at *16; *see also O'Donnell v. Bank of Am., N.A.*, 504 F. App'x 566, 568 (9th Cir. 2013) (unpublished) (affirming dismissal of UCL claim premised on a violation of FTC Act because "[t]he federal statute doesn't create a private right of action . . . and plaintiffs can't use California law to engineer one") (citation omitted).

In any case, the Instagram posts substantially complied with the FTC Guidelines, which is sufficient under California law. *See Huijers v. Demarrais*, 11 Cal. App. 4th 676, 684 (1992) ("Substantial compliance with a statute is sufficient unless the intent of the statute can only be served by demanding strict compliance."). The FTC Guidelines "reflect the basic truth-in-advertising principle that endorsements must be honest and not misleading." *See* FTC Endorsement Guides: What People Are

Asking, https://www.ftc.gov/business-guidance/resources/ftcs-endorsement-guides-what-people-are-asking#ftcactapply (last visited Oct. 15, 2025). As explained above in Section VI.C, the three Instagram posts substantially comply because they contain a number of clear and conspicuous statements that there is a link between the poster and Celsius. This negates UCL liability here.

**2. Plaintiff Fails to State a Claim Under the "Unfair" Prong.**

The Ninth Circuit recently held that courts may consider three tests when analyzing the unfair prong of the UCL. *Doe v. CVS Pharm., Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020) ("*CVS*"), *cert. granted in part*, 141 S. Ct. 2882 (2021), *cert. dismissed*, *CVS Pharmacy, Inc. v. Doe, One*, 142 S. Ct. 480 (2021). Plaintiff's UCL "unlawful" claim fails under all three.

The first test is "whether the challenged conduct is 'tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law. . . .'" *CVS*, 982 F.3d at 1214 (quoting *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366 (2010)). Here, Plaintiff's UCL claim under the "unfair" prong appears to be solely predicated on her allegation that Defendants violated the "[s]ection 5(a) of 15 U.S.C. § 45(a)," FAC ¶ 123. But this conclusory allegation fails the test for at least four reasons.

***First***, violation of the FTC Guidelines construing the FTC Act does not amount to "unfair" or "unlawful" conduct because the "voluntary" Guidelines are not binding and cannot serve as a predicate for a UCL claim. *See supra* Section VI.F.1.c. ***Second***, the FTC Guidelines were not revised to include guidance on social media marketing disclosures until July 26, 2023—after the cited Instagram posts were created. *See id.* ***Third***, Plaintiff fails to establish a violation of the nonbinding FTC Guidelines. *See id.* ***Last***, where, like here, a UCL claim fails on the unlawful prong, an alleged unfair business practice brought under the "unfair" prong that "overlap entirely" with those addressed in the unlawful prong fails too. *In re Sequoia Benefits & Ins. Data Breach Litig.*, 2024 WL 1091195, at *8 (N.D. Cal. Feb. 22, 2024).

The second test is "whether the practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *CVS*, 982 F.3d at 1214–15 (quoting *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009)). As explained above in Sections VI.A.2 and VI.B–C, Plaintiff fails to plead facts showing that Defendants engaged in such a business practice because she cannot identify any social media posts on which she herself—or any member of the class, for that

matter—injuriously relied. In any case, as explained in Section VI.F.1.c, Defendants completely or substantially complied with the subsequently issued, voluntary FTC Guidelines by disclosing their affiliation with Celsius in a clear and conspicuous manner. This negates any contention that their conduct was "immoral, unethical, oppressive, unscrupulous or substantially injurious."

The third test is "whether the practice's impact on the victim outweighs 'the reasons, justifications and motives of the alleged wrongdoer.'" *CVS*, 982 F.3d at 1215 (quoting *Morgan*, 177 Cal. App. 4th at 1254). Again here, the impact on the "victim" (Plaintiff) does not exist because she fails to allege any concrete injury that relates to or was caused by Defendants' alleged conduct. There is thus no harm to Plaintiff that outweighs the alleged noncompliance with the FTC Guidelines.

**3. Plaintiff Fails to State a Claim Under the "Fraudulent" Prong.**

For the reasons stated above in Sections V and VI.A–E, Plaintiff utterly fails to allege sufficiently specific facts establishing that she was defrauded or that any Defendant committed a redressable fraud. In any case, Plaintiff has not pleaded fraud that is likely to deceive *the public*. *See Daugherty*, 144 Cal. App. 4th at 838 ("We cannot agree that a failure to disclose a fact one has no affirmative duty to disclose is 'likely to deceive' anyone within the meaning of the UCL.").

**4. Plaintiff Fails to Allege Any Basis for Equitable Relief.**

Plaintiff cannot seek injunctive relief or restitution, which are the only remedies available under the UCL. As explained above in Section IV.B, Plaintiff has no standing to seek an injunction because she cannot allege an irreparable injury or a threat of future injury. And to seek restitution, Plaintiff must show "[d]amages or harm," which "are an element of all three types of prohibited business practices" under the UCL. *Express, LLC v. Fetish Grp., Inc.*, 464 F. Supp. 2d 965, 979 (C.D. Cal. 2006). But, as explained above in Section IV.B, Plaintiff has not established any monetary harm.

Plaintiff also fails to state a claim for any equitable relief because she has an adequate remedy at law. A plaintiff seeking equitable relief under the UCL in a federal court must establish that they lack an adequate remedy at law. *See Ruiz v. Bradford Exch., Ltd.*, 2025 WL 2473007, at *4 (9th Cir. Aug. 28, 2025). In seeking damages, Plaintiff tacitly admits she has an adequate remedy at law. *See Zajonc v. T-Mobile US, Inc.*, No. 3:25-CV-02860-JSC, 2025 WL 2419267, at *3 (N.D. Cal. Aug. 21, 2025)

(dismissing claim for injunction under the UCL because "Plaintiff's FEHA claim seeks damages, and thus, provides an adequate remedy at law."). Plaintiff cannot show she is entitled to equitable relief.

**G. <u>Plaintiff's Unjust Enrichment Claim Fails (Count III).</u>**

Plaintiff's unjust enrichment claim fails for several reasons. ***First***, unjust enrichment is not a standalone cause of action. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). It must be predicated on an actionable claim. *See Goudie v. Wells Fargo Bank, N.A.*, 2015 WL 12803765, at *3 (C.D. Cal. June 8, 2015). Plaintiff's unjust enrichment claim thus falls with all of her other claims.

***Second***, even though Plaintiff previously failed to argue that her unjust enrichment claim should be construed as a quasi-contract claim, *see* Opp'n 33, the claim—which is substantively identical to the claim pleaded in the original Complaint—fails even when repackaged as a quasi-contract claim. When a plaintiff alleges unjust enrichment, a court may "construe the cause of action as a quasi-contract claim seeking restitution." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014). Quasi-contract is only warranted where a defendant has been unjustly conferred a benefit "through mistake, fraud, coercion, or request." *Astiana*, 783 F.3d at 762 (internal quotation marks omitted). A quasi-contract theory does not work here because Plaintiff does not plead mistake, coercion, or request, and fails to plead any facts plausibly establishing fraud. She also fails to allege that her purchase conferred a benefit to the Influencer Defendants. Courts have dismissed unjust enrichment claims against social media influencers over alleged deceptive marketing for this very reason. *See Pop v. LuliFama.com LLC*, 2024 WL 1194485, at *6 (M.D. Fla. Mar. 20, 2024) ("Even assuming that [the Influencer Defendants] received a portion of the revenues from all Luli Fama sales, which is a generous assumption, this payment would indicate an indirect benefit at best."), *aff'd*, 145 F.4th 1285 (11th Cir. 2025).

***Third***, Plaintiff's unjust enrichment claim fails because she is not entitled to equitable relief, as explained above in Section VI.F.4. Because the remedy for unjust enrichment is restitution (an equitable remedy), Plaintiff must show, but fails to show, she lacks an adequate remedy at law, *see Hartford Cas. Ins. v. J.R. Mktg., LLC*, 61 Cal. 4th 988, 998 (2015). Her unjust enrichment claim thus fails.

**H. <u>Plaintiff's Negligent Misrepresentation Claim Fails (Count IV).</u>**

Plaintiff again fails to plausibly allege facts satisfying the elements of negligent misrepresentation, which are that (1) defendant made a representation as to a past or existing material fact; (2) the

representation was untrue; (3) defendant made that representation without any reasonable ground for believing it to be true; (4) defendant intended to induce plaintiff to rely upon it; (5) plaintiff was unaware of the representation's falsity and therefore justifiably relied on the representation; and (6) plaintiff sustained damage as a result. *Allen v. Woodford*, 2006 WL 1748587, at *18–19 (E.D. Cal. June 26, 2006) (citing *Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 475–76 (2003)).

***First***, Plaintiff cannot predicate this claim on an *omission*: negligent misrepresentation is the "**assertion**, as a ***fact***, of that which is not true, by one who has no reasonable ground for believing it to be true." Cal. Civ. Code § 1710(2) (emphasis added). It cannot be based on the omission nor suppression of a material fact. *See Byrum*, 219 Cal. App. 3d at 941–42 ("[C]learly a representation is an essential element [of negligent misrepresentation]."); *Huber, Hunt & Nichols, Inc. v. Moore*, 67 Cal. App. 3d 278, 304 (1977) ("No . . . court [has] held that the doctrine of negligent misrepresentation applies to *implied* representations. In all cases a 'positive assertion' was involved.").

***Second***, Plaintiff's purported "misrepresentations" about the health and nutritional value of Celsius also fail to amount to negligent misrepresentation. She does not plead misrepresentations by each Defendant, Defendants' knowledge and intent, or facts evincing reasonable reliance[10] and that her damages were as a result of the same. *Rice*, 2013 WL 146270, at *13 ("To adequately state a claim, plaintiff must link particular representations that defendant allegedly made to the particular allegations as to why defendant was without reasonable grounds for believing these representations were true, and how the representations were intended to induce reliance."). She therefore fails to state a claim.

## VII. DISMISSAL SHOULD BE ENTERED WITHOUT LEAVE TO AMEND.

Courts need not grant leave to amend where, as here, it would be futile. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998). Courts routinely deny leave to amend where the court "previously provided Plaintiff with the opportunity to rectify the deficiencies of [her] complaint" but where the amended complaint "[fares] no better than Plaintiff's earlier pleading and fails to remedy the numerous deficiencies previously highlighted by the Court." *Whatley v. Bank of Am., N.A.*, 2012 WL 5906709, at *7 (E.D. Cal. Nov. 26, 2012). A "repeated failure to cure deficiencies by amendments" is

[10] It is also not plausible that a representation that an energy drink with caffeine keeps you "fueled" would deceive a reasonable consumer. *See Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019) ("When considering the term in its proper context, no reasonable consumer" would be misled by the term "diet" in "diet soda.").

sufficient to justify a dismissal without leave to amend. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

This is Plaintiff's second attempt to plead, and she has failed to rectify the deficiencies noted by the Court. This Court was right to be "skeptical that [Plaintiff] can amend the complaint to survive dismissal"; the FAC confirms "there are many defects that may be fatal in this case." Tr. 21:16–17; 23: 9–12. No amendment would change that reality because there are no facts giving rise to personal jurisdiction over the Florida Defendants, is no standing over any Defendant, and are no actionable omissions or misrepresentations that are material to Plaintiff's purchase and that state a viable claim.

## VIII. MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))

As with the prior Motion to Dismiss, this Court should again dismiss the claims against the Florida Defendants on jurisdictional grounds and dismiss the claims against Emily Tanner on standing grounds, at a minimum. If for any reason, the Court declines to dismiss this case on other grounds, in the alternative, the Court should transfer the action to the Southern District of Florida under 28 U.S.C. § 1404(a). Courts have broad discretion to grant a § 1404(a) transfer to a district where the suit could have been brought for the convenience of the parties and in the interest of justice. *Randles v. Nationstar Mortg., LLC*, 2024 WL 1855720, at *2 (E.D. Cal. Apr. 25, 2024) (citing 28 U.S.C. § 1404(a)).

### A. Venue Is Proper in the Southern District of Florida.

A venue transfer to the Southern District of Florida is permissible because this suit might have been brought there. *See* 28 U.S.C. § 1404(a). Venue is proper there because "a substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of Florida, where Celsius is headquartered. *See id.* § 1391(b)(2). This is where the Celsius team develops its social media strategy, which encompassed engaging brand ambassadors to promote Celsius products. Goldberg Decl. ¶¶ 7, 14. Additionally, the only alleged post by Windsor about Celsius was generated in Miami, as were some of Wheaton's Celsius posts. *See supra* Section III.B.1.b. And all Defendants are subject to personal jurisdiction there. *See supra* Section III. As such, suit would be proper in the Southern District of Florida.

### B. Section 1404(a)'s Factors Supporting Transfer.

Courts may balance a number of factors when deciding a motion to transfer under § 1404(a), and while none are dispositive, the most important considerations are judicial economy and convenience of

the witnesses. *See Randles*, 2024 WL 1855720, at *2, *6. Additional factors include accessibility of the evidence and avoiding the evils of forum shopping. *See id.* at *5 (considering ease of access to evidence); *Meza v. Procter & Gamble Co.*, 2023 WL 3267861, at *4 (C.D. Cal. Apr. 27, 2023) (finding interests of justice warranted transfer where plaintiff's counsel had filed similar "copy-cat" lawsuits in other jurisdictions because "there is an equally strong inference of forum shopping when the parallel actions are filed by the same law firm, and such strategic machinations by plaintiff's counsel are equally discouraged under Section 1404(a).").

**Judicial Economy.** This Court lacks personal jurisdiction over the Florida Defendants. *See supra* Section III. There is thus a strong likelihood that this Court should dismiss the case against these Defendants for lack of jurisdiction. Plaintiff may then file suit against these Defendants in Florida, thereby potentially splitting the action against Tanner from the other Defendants. This would be a waste of judicial resources to pursue suits on the same factual allegations and requiring substantially the same evidence in California and Florida. *See Johansson v. Cent. Garden & Pet Co.*, 2010 WL 4977725, at *2 (N.D. Cal. Dec. 2, 2010) ("[I]n putative class actions . . . even where the causes of action are not similar but are based on similar allegations pled in a later-filed action, concerns over judicial efficiency are paramount.").

**Convenience of the Witnesses.** Transferring this matter to Florida is necessary for the convenience of the witnesses, which is one of the most important factors *See Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. Dec. 11, 2009). Nearly all the essential witnesses live and work in Florida, including four out of the five Defendants. It is inconvenient for Windsor and Wheaton to travel across the country to testify in California. Plus, the witnesses with the most firsthand knowledge about Celsius's social media marketing practices are Celsius employees located in Florida. Goldberg Decl. ¶ 14. It would be inconvenient and costly to force them to testify in California.

**Plaintiff's Counsel.** Plaintiff's counsel, Keith Gibson Law, P.C., is a plaintiffs' law firm with an office in Boca Raton, Florida. Defendants believe that Plaintiff's choice of forum is only reflective of forum shopping.[11] As counsel are barred attorneys in Florida, Plaintiff will not be prejudiced by proceeding with suit there.

[11] Plaintiff's counsel has brought strikingly similar suits against other companies in recent months. *See Pop v. LuliFama.com LLC*, 145 F.4th 1285 (11th Cir. 2025) (affirming dismissal); *Simoni v. Hi-Tech Pharm., Inc.*, No. 25 CV 795, 2025 U.S. Dist. LEXIS 176669 (N.D. Ill. Sep. 10, 2025) (dismissed for

### C. Plaintiff's Choice of Forum Is Not Entitled to Deference.

Plaintiff's choice of California as a forum is not entitled to the deference normally afforded to plaintiffs because she alleges a putative *nationwide* class. *Randles*, 2024 WL 1855720, at *4 (citing *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)) (declining to defer to plaintiff's choice of California as a forum under § 1404(a), finding the operative facts occurred in Texas where the defendant was domiciled, making the plaintiff's California-based claims and residency unpersuasive). Here, Plaintiff's choice of forum should not be afforded any deference because she brings her suit on behalf of a putative nationwide class. Other than her residence in California, her claims are unrelated to California. *See supra* Section III.B.2. The operative facts underlying Plaintiff's claims took place in Florida, and that is the proper venue for any claims that survive this Motion.

## IX. CONCLUSION

Plaintiff's FAC did not remedy her prior failures to satisfy her jurisdictional or standing burdens. Nor does she allege a plausible claim against Defendants. For these reasons, this action should be dismissed without further leave to amend.

DATED: October 15, 2025

RACHEL LOWE
JOE TULLY
BROOKE H. BOLENDER
EMMA BRADEN
**ALSTON & BIRD LLP**

*/s/ Rachel Lowe*
Rachel Lowe
Attorneys for Defendants
**CELSIUS HOLDINGS, INC., CELSIUS, INC., ERIKA WHEATON, DEVON WINDSOR, AND EMILY TANNER**

---

lack of standing); *see also Negreanu v. Revolve Group, Inc. et al.*, No. 2:25-cv-03186-MWC-E (C.D. Cal.); *Sulici et al. v. Color Image Apparel d/b/a Alo Yoga et al.*, No. 1:25-cv-03928 (N.D. Ill.); *Alin Pop v. Beach Bunny Swimwear Inc. et al.*, No. 2:25cv4085 (C.D. Cal.); *Pop v. Jaxxon, LLC*, No. 8:25-cv-00311-SVW-ADS (C.D. Cal.); *Bengoechea et al. v. Roadget Business PTE., Ltd. d/b/a Shein et al.*, No. 1:25-cv-01402 (N.D. Ill.). Like *Lulifama* and *Simoni*, this case should be dismissed.

**CERTIFICATION OF PAGE LIMIT**

The undersigned, counsel of record for Defendants certifies that the above Memorandum contains 35 pages, which complies with the Court's Order granting leave to file additional pages. *See* ECF No. 52.

DATED: October 15, 2025

*/s/ Rachel Lowe*
Rachel Lowe
Attorneys for Defendants
**CELSIUS HOLDINGS, INC., CELSIUS, INC., ERIKA WHEATON, DEVON WINDSOR, AND EMILY TANNER**

# ATTACHMENT 1

Plaintiff, MARIANA DUBREU (referred to as "Plaintiff"), individually and on behalf of all those similarly situated, brings this First Amended Class Action Complaint against the above-named Defendants CELSIUS PRODUCTS HOLDINGS INC., and CELSIUS INC. ( together "CELH"), makers, distributors and marketers of Celsius Energy drink ("Celsius"), and so-called "*influencers*"— illegally promoting Celsius products on social media: DEVON BARBARA aka DEVON WINDSOR, EMILY TANNER, and ERIKA WHEATON, (together "Influencers"), and in support thereof states the following:

**INTRODUCTION**

1. Plaintiff brings this action against Defendants on behalf of all consumers in California, and in the United States who, within four years of the filing of this lawsuit, have purchased beverages manufactured by CELH and branded as "Celsius."

2. During the Class Period (defined below), the Influencers misrepresented the material relation they have with the brand by promoting Celsius products without disclosing the fact that they were paid to do itendorse Celsius, in violation of the law.

3. In in order to artificially inflate the prices for the Celsius products, and boost sales, both CELH and the Influencers devised a scheme in which the Influencers will tag or recommend Celsius products, pretending they are disinterested consumers. For example, some Influencers pretended to drink and enjoy Celsius, caffeine. *Infra* at ¶57. Caffeine is the main active ingredient in Celsius.

4. Relying on the undisclosed paid endorsements and misleading advertising, the named Plaintiff and the Class Members (defined below) purchased Celsius products and paid a premium, while the productsproduct proved to be of a much lower value than the price paid.

5. While having large consumer audiences, the Influencers involved are not known to a significant portion of the viewing public as celebrities, none of them having more thanover 10 million followers.

6. Celsius products are consumed mostly by a young audience, most of their customers being social media users exposed to undisclosed advertising.

7. Relying on the undisclosed advertising and misleading endorsements, Plaintiff and the Class Members purchased Celsius products and paid a premium, while the Celsius products purchased proved to be of a lower value than the price paid. Plaintiff filed this action to recover the difference between the price paid and the market value of the products as purchased.

**CELSIUS**

8. CelsiusCELH began in Delray Beach, Florida in 2007 by producing and selling a small variety of energy drink products. The business proved to be profitable, but Celsius needed a way to justify selling a 15¢ can for over $2.00. Social media offered the answer.

9. Following their increased popularity on social media, especially Instagram, CelsiusCELH experienced a boom and quickly became one of the dominant energy drinks onin the USU.S. market.

10. The boom CelsiusCELH experienced could not have been possible without the "sales power" provided by the influencersInfluencers that claimed that they drink and love Celsius.

11. While claiming that it provides "sports nutrition," in 2021, Celsius was in fact banned by the National Collegiate Athletic Association due to it containing Ginseng, guarana, L-carnitine, and taurine, all of which are on the NCAA banned substances list and its suitability for being consumed prior or during exercise is questionable, at best.

12. In fact, despite the fact that it is not medically advised to consume caffeinated drinks before exercise, Celsius is being marketed for gym lovers as suitable "sports nutrition." Erika Wheaton, for example, is targeting her advertising to people interested in fitness, healthy nutrition and a better lifestyle. Those who use consume these drinks prior to their exercising sessions are at risk for extremely elevated heart rates and blood pressure, which increases the risk for adverse events such as cardiac arrest during exercise.[1]

[1] "The Danger of Energy Drinks." Courts Plus, March 11, 2022. https://courtsplus.org/the-danger-of-energy-drinks/ (Last visited Sept. 15, 2025)

13. ~~12.~~ While it is now clear that the Influencers love the free gifts (and the financial compensation they receive for pretending to consume Celsius), their followers are led to believe that ~~they purchased~~the Influencers purchase the product and drink it because they love Celsius. This is a textbook example of deceptive advertising.

14. ~~13.~~ Celsius started without brick-and-mortar stores in the US and historically relied on third-party retailers, as well as sales using various online platforms like Amazon. A good percentage of ~~its~~their sales are generated by the undisclosed advertising and fake endorsements on social media. It is still possible for Instagram users to click the link in the post and purchase Celsius online after being redirected to an online vendor.

15. ~~14.~~ Other brands in the same market are consistently offering lower prices, discounts, or better quality than Celsius. An analysis of identical products that were offered on both Celsius and other energy drinks brands shows that the prices Celsius ~~charges~~ are usually 10-15% more than those of their competitors for the same quality products, with established brands like Monster being an average 20% cheaper than Celsius.

16. ~~15.~~ While competitors like Alani Nu (prior to being acquired by Celsius) and Monster are also using influencer marketing, there is a stark difference in the way all these companies act on social media. Monster Energy, for example is asking ~~its~~the influencers to properly disclose the material relationship with the brand by using the "Paid Partnership" label and the "ad" tag and comply with the FTC interpretation of the FTC Act~~.~~




Fig.1 – Proper disclosure at the industry standards by Monster

17. ~~18.~~ On the other hand, for years, Celsius and the Influencers have been omitting altogether any reference of the fact that ~~their~~the posts are not the Influencer's honest opinion~~,~~ but rather undisclosed advertising and paid endorsements.

18. ~~19.~~ Out of the considerable profits obtained by Celsius from this scheme~~,~~ part of the money is paid to the Influencers for their indispensable role.

**THE ~~UNDISCLOSED ADVERTISING~~PAID ENDORSEMENTS**

19. ~~20.~~ While the practice employed by CELH and the Influencers is very profitable, it is ~~also~~, nevertheless, illegal. Federal law and California law prohibit such commercial behavior.

20. ~~21.~~ Tags in social media posts, demonstrations, depictions of the name, signature, likeness or other identifying personal characteristics of an individual, and the name or seal of an organization can be endorsements. *See.* 16 C.F.R. § 255. This is not only the way the FTC interprets the law for years, but also the way a reasonable consumer understands social media.

21. ~~22.~~ The Influencers are knowingly posting depictions of themselves ~~consuming~~pretending to consume Celsius, while mentioning the name of the brand and posting the brand's tag in their social media post (both on the caption and on the picture) and adding misleading statements like being fueled by the drink or being addicted to the flavor of a drink they don't actually like.

22. ~~23.~~ Plaintiff saw Celsius products being consumed by some of the Instagram influencers she followed~~,~~ which led to her purchasing Celsius products. The Celsius products Plaintiff purchased and consumed proved to be of an inferior quality compared ~~with the expectations Plaintiff had and the premiums~~to the premium she paid for ~~the~~those Celsius products.

23. Plaintiff saw the posts listed in this First Amended Complaint and other infringing posts while physically present in California, where, like many other California social media users, she was targeted by the Influencers and CELH.

24. By looking at the Influencers' Instagram posts prior to making her purchase, Plaintiff was unable to discern the fact that those posts were paid posts, rather than organic, honest recommendations, and candid endorsements by the Influencers.

25. But for the false endorsements by the Influencers and the misleading advertising claims, Plaintiff and the Class Members would not have purchased Celsius products at the price they purchased itthem for.

26. In deciding to purchase Celsius products, Plaintiff and Class Members followed what they believed to be the honest endorsementadvice of the Influencers. None of the posts Plaintiff saw mentioned, as legally required by law, that the Influencers are nothing more than paid advertisers for the brand.

27. This type of undisclosed advertising and false endorsements have been present on Instagram in the last few years. Defendants arehave been advertising and endorsing Celsius products on Instagram for manyover the years, without mentioning even once that they are paid (substantial amounts) to advertise Celsius and keep it quiet.

**NATURE OF THE ACTION**

28. Plaintiff, Mariana Diana Dubreu, on behalf of herself and all those similarly situated Class Members seek damages, declaratory judgment, permanent injunctive relief, disgorgement of ill-gotten monies, attorney's fees and costs, and other relief from Defendants CELSIUS HOLDINGS INC., a/k/a CELSIUS PRODUCTS HOLDINGS INC., DEVON BARBARA, ERIKA WHEATON, and EMILY TANNER,[. . .] for unjust enrichment, fraud, negligent misrepresentation, violations of the FTC Act, 15 U.S.C. § 45(a), and (not pled as an independent cause of action), and, therefore, violations of the state laws, violation of California Unfair Competition Law, violation of California False Adve1tisingAdvertising Law, violations of California's Consumers Legal Remedies Act.

## PARTIES

29. Plaintiff, Mariana Dubreu, is a citizen of California who resides in ~~Riverside~~Los Angeles County, CA and is otherwise sui juris. Mariana Dubreu purchased Celsius products and paid a premium as a direct ~~result~~effect of undisclosed endorsements by Influencers.

30. Plaintiff brings this action on her behalf and on behalf of all other persons similarly situated ~~Class Members~~class members.

31. Defendant CELSIUS PRODUCTS HOLDINGS INC is a company registered in Florida and headquartered in Boca Raton, Florida, doing business worldwide and around the United States, including ~~in the State of~~ California.

32. Defendant CELSIUS, INC. is a company ~~registered~~formed in ~~Florida~~Nevada and headquartered in Boca Raton, Florida, doing business worldwide and around the United States, including ~~in the State of~~ California. CELSIUS, INC is registered with California Secretary of State to market, sell, and distribute beverages and related products in California[2].

33. Discovery will reveal the precise responsibilities and roles of each of the CELH entities in connection with the allegations in the Complaint.

34. Defendant DEVON BARBARA a/k/a Devon Windsor ("Windsor"),~~,~~ is a citizen of Florida who resides in Miami-Dade County and is otherwise sui juris. Windsor is transacting business in California, and nationwide over the internet and actively soliciting business ~~in~~and targeting California, ~~and nationwide.~~via Instagram, an interactive social media website. While caters towards her followers, a significant number of her social media followers are located in Los Angeles. In fact, Los Angeles is the second largest market where her followers are located. Also, she received the third highest number of interactions with her Instagram account, from Los Angeles, CA (Second to only Miami, FL and New York, NY). *See* modash.io for demographics.




[2] Califo… https://t… 509304809506713709 222308

Source https://www.instagram.com/devwindsor/

35. Defendant EMILY TANNER (“Tanner”), is a citizen of California who resides in Los Angeles County and is otherwise sui juris. Tanner is transacting business in California, and nationwide over the internet and actively soliciting business in California, and nationwide.




Source: https://www.instagram.com/emilyytanner/

36. Defendant Erika Richman a/k/a Erika Wheaton (“Wheaton”), is a citizen of Florida who resides in Miami Date County and is otherwise sui juris. Wheaton is transacting business in California, and nationwide over the internet and actively soliciting business in California, and nationwide. According to her Instagram profile, workout routines on Instagram,

TikTok and YouTube for my growing audience of women[3].” Most of Erica’s social media audience is located in Los Angeles (she has twice as many followers in Los Angeles as in Miami). Also, the highest percentage of followers interacting with her profile are located in Los Angeles. *See* modash.io for demographics.




Source: https://www.instagram.com/erikawheaton/

**JURISDICTION AND VENUE**

37. This is a national class action, including every online purchaser of Celsius Products in the United States.

38. Celsius revenue in 2023 was approximately US$ 1.31 Billion, a good part of which can be directly attributed to the undisclosed endorsements received on social media ~~from the Influencers~~, therefore the estimated damages in this case are ~~of~~ at least US$ 450,000,000.

[3] Instagram post available at https://www.instagram.com/p/DKZ3nEgRnE6/ (last visited Sep. 15, 2025)

39. California represents a major market for Celsius with products sold at Costco, Slater various gyms and gas stations.

40. CELH targets California for marketing and selling its products. California is, for example, one of the few states where Celsius has Fitness Development Sales Representatives, a position that involves actively participating in local and regional fitness field sales strategies, planning, and executing key initiatives; visiting 10—15 stores or gyms daily, providing real-time feedback, identifying opportunities, sharing results, and offering strategic direction[4]."

41. Celsius is registered with the California Secretary of State to do business in California and employs a sales workforce in California, including Territory Sales Managers[5] and other marketing and sales representatives (i.e. Field Marketing Ambassadors[6]). Celsius has employees who reside and work in California.

42. ~~39.~~ The Nationwide Class, as defined below, is comprised of at least one million people who purchased Celsius products during the Class Period.

43. ~~40.~~ This Court has jurisdiction over this matter under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: 1) there are at least 100 class members; 2) the combined claims of Class Members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and 3) Defendants and Class Members are citizens of different states.

44. ~~41.~~ The Court also has jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's related state law claims.

[4] "Fitness Development Sales Representative – Celsius." Workable. Accessed September 12, 2025. https://apply.workable.com/celsius/j/FDB0387150/.
[5] https://apply.workable.com/celsius/j/E27509B2E9/
[6] https://apply.workable.com/celsius/j/63415315F5/

45. 42. Venue is proper in the Central District of California, pursuant to 28 U.S.C. § 1391(b)(12) as Plaintiff saw the Instagram posts and purchased the products in Los Angeles and Riverside Counties in California.

**STATEMENT OF FACTS**

46. 43. Social media has emerged in the last few years as a main source of information and communication for billions of users. Social media platforms are **interactive** digital channels that focus on the creation and sharing of thoughts, ideas, and information through virtual networks. These platforms enable users to take part in social networking by creating content, sharing their thoughts, commenting on other user content, and reposting it.[7]

47. 44. There were an estimated 159 million Instagram users in the United States in 2022.

45. In 2021 the platform engaged over 2 billion monthly users.

48. 46. In 2024, Instagram had 2 billion monthly active users accessing the Instagram app globally[8]. In the last ten years, Instagram has become one of the most popular ways to influence consumer behavior on social media. Since 2017, Instagram has grown tremendously, adding 100 million users every few months. Around seven-in-ten Americans ages 18 to 29 (71%) say they use Instagram.

49. Instagram typically has higher engagement rates than other social media platforms because on Instagram, you can interact directly with your audience through comments, likes, and stories[9].

50. 47. Given the enormous reach of the social media platforms, and in an effort to curb online behavior that ignores the law and uses the lack of enforcement as an excuse for

[7] Social Media Platform | Definition & Examples | Webopedia, https://www.webopedia.com/definitions/social-media-platform/ (last visited Sep. 15, 2025).
[8] Freya Laskowski, *12 Reasons Why Instagram Is Good for Marketing in 2024*, Sendible (July 11, 2024), https://www.sendible.com/insights/why-is-instagram-good-for-marketing.(last visited Sep. 15, 2025).
[9] Id.

violating laws across jurisdiction, the Federal Trade Commission (FTC) has published guidelines for influencers regarding proper advertising practices.

51. The FTC formulates its social media guidelines through a meticulous research process that encompasses public comment periods, investigations, consumer fraud statistics, and specialized reports on the data collection methodologies employed by prominent platforms.

52. 48. Indeed, the rapid growth of social media platforms, including Instagram, lead to a allowed for lack of regulation and oversight. Some 80% of social media users said they were concerned about advertisers and businesses accessing the data they share on social media platforms, and 64% said the government should do more to regulate advertisers[10].

53. As the FTC published easy-to-understand guidelines regarding social media endorsements online[11], most influencers are following these guidelines as the industry standard regarding disclosures and false advertising.

54. 49. This results in some unscrupulous "influencers" who are acting However, this does not stop a small number of to act as advertisers for hire, making it a habit of posting fake reviews for sponsored products or failing to disclose the fact that they were paid to create the content displayed on their profile. More than often than not, these "influencers" would advertise everything from alcohol to cannabinoids, from political ideas to illegal giveaways, as long as they are paid the significant obscene amounts they are demanding.

55. 50. According to this business model, a number of carefully selected influencers will pretend to use drink Celsius products and present this as fact to their social media followers, while being properly compensated but, without disclosing any material relationship with any Celsius entity. CELH entity. Further the Influencers post statements that are inaccurate and

[10] Lee Rainie, , (Mar. 27, 2018), https://www.pewresearch.org/short-reads/2018/03/27/americans-complicated-feelings-about-social- media-in-an-era-of-privacy-concerns/ (last visited Sep. 15, 2025).

[11] Federal Trade Commission. 2019. *Disclosures 101 for Social Media Influencers*. Available at: https://www.ftc.gov/system/files/documents/plain-language/1001a-influencer-guide-508_1.pdf

misleading and amplify the false claims regarding Celsius being sports nutrition and good for exercising.

56. For example, Windsor states that she is "semi-addicted" to Celsius, suggesting that she drinks Celsius on a regular basis, while Wheaton states that Celsius keeps her "fueled" for the day.

57. In fact, Celsius has no significant nutritional value and cannot keep a person "fueled" While Celsius drinks offer some B vitamins and chromium, they primarily contain water, flavorings, caffeine, and other stimulants rather than significant nutritional value[12]. Windsor's addiction to the flavor of Celsius Arctic Vibe proved to be an act for the camera. In a video posted on YouTube, Windsor claims that she stopped drinking caffeine, while describing the side effects of caffeine on her body: being super sluggish, having migraines, etc.[13] Celsius Arctic Vibe contains 200 milligrams of caffeine per 12-ounce can.

58. What Plaintiff did not know when she purchased Celsius is that the Influencers are only making these statements because they are paid to do so.

59. ~~51.~~ Plaintiff and Class Members ~~purchase~~purchased Celsius products ~~such as Celsius~~ at inflated prices, exclusively because of the way the Celsius products are advertised on social media and the misleading content of the Celsius advertisement.

60. ~~52.~~ Despite being ~~handsomely~~ compensated for pretending to drink and promoting Celsius brands, none of the Influencers use the "paid partnership" label suggested by the FTC, or buried a small disclosure (after the user has to press "More") so it would be almost impossible for a social media user to discern the fact that the post was sponsored.

[12] Adam, Maya. "Is Celsius as Healthy as It Advertises?" Edited by Linas Cerniauskas. MedReport Foundation, May 7, 2025. https://www.medreport.foundation/post/is-celsius-as-healthy-as-it-advertises.
[13] https://www.youtube.com/watch?v=FTpH9r3pHy0

61. ~~53.~~ Therefore, the Influencers fail to be compliant with the FTC Act as interpreted by the FTC found in 16 C.F.R. § 255.5 and the FTC guidelines regarding advertising on social media.

lelines and properl or them to disguis




Source: https://www.instagram.com/erikawheaton/

63. ~~55.~~ Plaintiff is “following” ~~all~~ the Influencers on Instagram. Plaintiff’s decision to purchase Celsius products and pay a premium for those products was determined by the Influencers she followed, specifically by the ~~Influencers~~Defendants in this case and the fact that they promoted Celsius products, as well as by the way Celsius is advertised as nutritious and healthy.

64. ~~56.~~ Plaintiff ~~purchased assorted~~paid money to purchase Celsius assorted energy ~~drinks~~drink cans from Costco on ~~05/17/2023~~Eastvale, California on May 17, 2023.

65. Plaintiff has personally seen Celsius energy drinks offered for sale at other retail locations in California, including Costco, Slater Bros. Markets, Albertson’s grocery stores and at many gas stations.

66. ~~57.~~ Plaintiff would not have purchased the Celsius products if she knew that the Influencers were paid to endorse Celsius and that the ~~Influencers'~~ claims made by Celsius were ~~illegal,~~ unfair and misleading.

**~~THE~~SOCIAL MEDIA ADVERTISING**

67. ~~58.~~ Facebook, the parent company of Instagram, offers various products that advertisers can use for commercial use. For example, an advertiser may promote content using a boosted post or an Instagram ad for a price paid directly to Facebook. Both the post and the ad are created by the advertiser that wants to promote a certain message, service, or product. They are clearly marked as advertising by Instagram.

68. ~~59.~~ The same advertisers can also promote content by directly paying influencers to create a collaboration post. Influencers can also be paid for ads to be posted on the influencer's account, as part of the grid (the pictures and videos displayed for a user when accessing or refreshing an account) or as part of stories (short videos that only show for a limited amount of time and, usually, can only be viewed once). Such collaboration is usually properly disclosed.

69. ~~60.~~ Another way Instagram allows advertisers to use the platform is by sponsoring independent content generated by the influencers themselves. In this case the influencer should take advantage of the "paid partnership" tag offered by Instagram to show that influencer is being compensated to generate this content. A "paid partnership" tag is also a step in maintaining compliance with the Federal Trade Commission's ("FTC") rules and guidelines.

70. ~~61.~~ Since, at times, Instagram algorithms may spot and remove posts where the "paid partnership" label is not present, Influencers and CELH are going to great lengths to hide the nature of their partnership.

71. ~~62.~~ Every time an influencer advertises a product, such advertisement appears in the Instagram feed of everybody following the influencer.

72. ~~63.~~ The FTC has repeatedly ~~publicized~~made public guidelines for influencers regarding proper advertising practices, publishing a plain language interpretation of the FTC Act.

73. 64. As recognized by the FTC, "[c]ompanies that use deceptive endorsements and reviews inflict an **injurious** double whammy. TheyFirst, they harm consumers with misleading tactics that subvert their choices at check-out. And**Second**, they take business away from honest competitors that work hard to comply with the law."[14]

74. 65. By advertising Celsius products without regards to the disclosure requirements, the Influencers are in violation of 15 U.S.C. § 45(a) and therefore in violation of the "little FTC Act" enacted in California.

75. 66. By instructing and allowing the Influencersinfluencers to advertise its products without making the proper disclosures, CELH is in violation of 15 U.S.C. § 45(a) and therefore in violation of the "little FTC Acts" enacted in California.

76. 67. Given the fact that Celsius products are endorsed by many of the Influencers she followed, after seeing the undisclosed advertising, Plaintiff decided to purchase Celsius products only after seeing the undisclosed advertising.

77. 68. Plaintiff and the Class Membersclass members purchased Celsius products and paid a premium for them.

78. Celsius also falsely promotes its products as being different from the competition: "Stay active and energized all day long with CELSIUS by your side. We're different from other energy drinks because we focus on movement. When combined with exercise, our formula is clinically proven to boost your metabolism and help you burn body fat.[15]"

79. In fact, the main ingredient in Celsius is caffeine, the same ingredient as in many other energy drinks, including Monster. The "clinical studies" cited on CELH website, deceivingly, do not compare Celsius to Monster, but rather it compares Celsius to Coca Cola.

[14] Claburn, Thomas. "FTC Cracks down on Fake Review and Influencers." FTC cracks down on fake review and influencers • The Register, June 30, 2023. https://www.theregister.com/2023/06/30/us_trade_watchdog_revises_rules/.
[15] https://www.celsius.com/the-science/#study1

## VALUE DECEPTIVELLY CREATED

80. Brands advertise on social media in order to increase the retail value of the products they sell.

81. The interest of millions of consumers in a product applies an upward price pressure on the product, which creates a new market equilibrium at the higher price that includes the social media added value.

(Added)




Fig. 1
Using traditional social media advertising

Fig.2
Using undisclosed paid endorsements

82. The value that the undisclosed paid endorsements (disguised as honest use of the product) add to a product is higher than the value that traditional social media adve1iising adds because of many factors.

83. For example, consumers value more honest opinions than those of paid advertising. As such consumers attribute a higher value to a product that is used/consumed by successful people, in this case the Influencers and are willing to pay more for such products.

84. Also complying with the FTC guidelines represents the standard industry practice on Instagram. When the vast majority of Influencers comply with the FTC regulations, it is natural for a consumer to assume the undisclosed paid endorsements are honest opinions, since the disclosures are missing.

85. Another reason targets the Instagram algorithm; posts that are not marked as adve1tising are more likely to be organically shared by users, amplifying the upward trend in the price.

86. Also, Instagram promotes posts not marked as adve1tising through the "Suggested for You" program showing the infringing posts to consumers that are not following the Influencers.

87. As such, when purchasing Celsius products, consumers have to pay a price that includes a portion attributable to the undisclosed advertising. The difference in price is not bargained for by consumers.

88. Other brands, properly disclosing their relationship with social media influencers, sell identical, if not superior, products for a lower price.

89. For example, Monster Energy, an established brand offering products similar or superior to Celsius, is generally priced lower per unit than Celsius in retail stores, with Monster cans sometimes costing around $1.60-$1.75 for 16 oz, while Celsius cans are often in the $2.00-$2.50 range for 16 oz, though this varies significantly by location, retailer, and promotions"[16]. As such, difference in price represents an economic injury and can be attributed exclusively to the way Celsius is endorsed on social media.

90. Generally speaking, studies show that, first, fake reviews make consumers more likely to choose lower quality products, and, second, the estimated welfare losses from such reviews may be the order of $.12 for each dollar spent.[17]"

[16] *AI on Google Search*, 2025 version, Google, 15 Sep. 2025, https://ai.google.com/ analyzing prices on the web, including the following websites: https://www.fool.com/investing/2025/06/07/best-stocks-to-buy- monster-stock-vs-celsius-stock/, https://www.binance.com/en/price/celsius, https://www.target.com/c/energy-drinks-beverages-grocery/monster-energy/-/N-4uez2Z561ol, https://www.instacart.com/products/42567-monster-energy-original-16-fl-oz

[17] Akesson, J., Hahn, R., Metcalfe, R., & Monti-Nussbaum, M. (2023). *The impact of fake reviews on demand and welfare*. National Bureau of Economic Research. https://doi.org/10.3386/w31836

## CLASS ALLEGATIONS

91. ~~69.~~ Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully re-written herein.

92. ~~70.~~ Plaintiff asserts the counts stated herein as class action claims pursuant to Fed. R. Civ. ~~Pro~~P. 23.

93. ~~71.~~ Plaintiff is filing this lawsuit on behalf of all persons that purchased Celsius products online relying on misleading marketing practices and Influencers from January 15, 2021, to present ("Class Period").

94. ~~72.~~ Plaintiff is a citizen of California and seeks to represent two classes composed of and defined as follows:

95. ~~73.~~ Nationwide Class: All consumers that purchased Celsius products in the United States.

96. ~~74.~~ California Subclass: All consumers, residents of California, who purchased Celsius products in the United States

97. ~~75.~~ Collectively the members of the Nationwide Class and all Subclasses shall be referred to as "Class Members")

98. ~~76.~~ The classes exclude counsel representing the class, governmental entities, ~~Defendants~~Defendant, any entity in which ~~Defendants have~~Defendant has a controlling interest, ~~Defendants~~ Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

99. ~~77. Plaintiff reserves~~Plaintiffs reserve the right to amend or modify the class descriptions with greater particularity or further division into subclasses or ~~limitation~~limitations to particular issues.

100. ~~78.~~ This action has been brought and may properly be maintained as a class action under-defined community of interest in the litigation and the class is readily and easily ascertainable.

101. ~~79.~~ Numerosity: At least one million consumers have been injured by Defendants' deceptive marketing practices, including the named Plaintiff. At least one million consumers have purchased Celsius ~~misrepresentations~~products and paid a premium for them in reliance on the Defendants' representations.

102. ~~80.~~ Each of the classes represented by the named Plaintiff has at least one million members and the joinder of all members is impracticable.

103. ~~81.~~ Typicality: Plaintiff's story and his claims are typical for the class and, as the named Plaintiff is aware of other persons in the same situation. Plaintiff and the members of each class sustained damages arising out of Defendants' illegal course of business.

104. ~~82.~~ Commonality: Since the whole class purchased Celsius products and such products are promoted by the Defendants, the questions of law and fact are common to the class.

105. ~~83.~~ Adequacy: Dubreu will fairly and adequately protect the interests of each class she represents.

106. ~~84.~~ Superiority: As questions of law and fact that are common to class members predominate over any questions affecting only individual members, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**VIOLATIONS OF 15 U.S.C. § 45(A)**
(not pled as an independent cause of action)

107. ~~85.~~ By failing to disclose their material connection with the brand, the Influencers are in violation of 15 U.S.C. § 45(a).

108. ~~86.~~ By failing to mandate and enforce disclosure of material connections with the Influencers, ~~CELH~~CHP is in violation of 15 U.S.C. § 45(a).

109. ~~87.~~ The violations of the 15 U.S.C. § 45(a) are not pled as an independent cause of action, but as an element of one or more of the causes of action detailed in this Complaint.

**COUNT I:**
VIOLATION OF THE CONSUMERS LEGAL REMEDY ACT.
CAL. CIV. CODE. §§ 1750, ET SEQ.

110. ~~88.~~ Plaintiff incorporates by reference paragraphs ~~1-87~~1-108 of this Complaint as if fully ~~re-written~~re- written herein. Plaintiff asserts this ~~Count I~~count on her own behalf and on behalf of the Nationwide Class, and California Subclass, as defined above, and pursuant to ~~Fed. R. Civ. Pro.~~Rule 23.

111. ~~89.~~ Defendants are each a "person" within the statutory meaning of Cal. Civ. Code § 176l(c).

112. ~~90.~~ Defendants provided "goods" within the meaning of Cal. Civ. Code §§ 1761(a), 1770.

113. ~~91. Plaintiff~~Plaintiffs and Class Members of the Nationwide Class and California Subclass are "consumers" within the meaning of Cal. Civ. Code §§ l76l(d), 1770, and have engaged in a "transaction" within the meaning of Cal. Civ. Code §§ 1761(e), 1770.

114. ~~92.~~ As set forth herein, Defendants' acts and practices, undertaken in transactions violate §1770 of the Consumers Legal Remedies Act in that:

115. ~~93.~~ Defendants misrepresented the source, sponsorship, approval, or certification of the goods or services.

116. ~~94.~~ Defendants misrepresented the affiliation, connection, or association with, or certification by another.

117. ~~95.~~ Defendants represented that the goods or services have approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; and

118. ~~96.~~ Defendants advertised goods or services with intent not to sell them as advertised.

119. ~~97.~~ Pursuant to the provision of Cal. Civ. Code §1780, ~~Plaintiff seeks~~Plaintiffs seek an order enjoining Defendants from the unlawful practices described herein, a declaration

that Defendants' conduct violates the Consumers Legal Remedies Act, and attorneys' fees and costs of litigation.

**COUNT II:**
VIOLATIONS OF CALIFORNIA'S UNLAWFUL BUSINESS PRACTICES ACT, CAL. BUS. & PROF. CODE § 17200. ET. SEQ
(On behalf of Plaintiff and the Nationwide Class)

120. 98. Plaintiff incorporates by reference paragraphs 1-871-108 of this Complaint as if fully re-written herein. Plaintiff asserts this count on his own behalf and on behalf of the Nationwide Class and California Subclass, as defined above, and pursuant to Fed. R. Civ. Pro.Rule 23.

99. The conduct that forms the basis of this action arose in California, the state in which Celsius sells a variety of products.

**Unfair And Fraudulent Competition**

121. 100. Defendants have engaged in unfair competition within the meaning of Cal. Bus. & Prof. Code §§17200, et seq., because Defendants' conduct is unlawful, unfair, and/or fraudulent, as herein alleged.

122. 101. PlaintiffPlaintiffs, the Class Membersclass members, and Defendants are each a "person" or "persons" within the meaning of § 17201 of the California Unfair Competition Law ("UCL").

123. 102. Defendants promoted and advertised ALOCELH products without properly disclosing their financial interest and such acts and practices constitute deceptive acts or practices in violation of Section 5(a) of 15 U.S.C. § 45(a).

124. 103. A violation of Section 5(a) of 15 U.S.C. § 45(a) represents a per sean *unlawful act* and, therefore a violation of the California Unfair Competition Law ("UCL").

125. 104. In the alternative, failure to disclose paid sponsorships and endorsements represents *unfair* conduct that violates California Unfair Competition Law ("UCL").

**~~Unlawful Competition~~**

126. ~~105.~~ The UCL is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies. ~~Plaintiff~~Plaintiffs hereby ~~incorporates~~incorporate by reference all prior causes of action into this cause of action.

**Violations of Advertising Law**

127. ~~106.~~ By making statements that are not true and statements that are misleading, Defendants are in violation of California False Advertising Law, Cal. Civ. Code. §§ 17500, ET SEQ.

128. ~~107. "~~"'[A]ny violation of the false advertising law . . . necessarily violates the UCL.'" (Kasky, supra, 27 Cal.4th at p. 950.) Section 17500 "proscribe[s] ~~'~~"not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public. '" [Citation.]" (Colgan v. Leatherman Tool Group, Inc. (2006) 135 Cal.App.4th 663, 679.)

129. ~~108.~~ Plaintiff and the Nationwide Class Members and California Subclass Members request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and Class Members any monies Defendants acquired by unfair competition, including restitution and/or equitable relief, including disgorgement or ill-gotten gains, refunds of monies, interest, reasonable attorneys' fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

130. ~~109. Plaintiff~~Plaintiffs and Class ~~members~~Members seek attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**COUNT III:**
UNJUST ENRICHMENT
(On behalf of Plaintiff and the Nationwide Class)

131. ~~110. Plaintiff incorporates~~Plaintiffs incorporate by reference paragraphs ~~1-87~~1-108 of this Complaint as if fully ~~re-written~~rewritten herein. As set forth above, ~~Plaintiff~~

~~asserts this Count III on her~~Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated ~~Class Members~~Instagram users.

132. ~~111.~~ By paying the high prices demanded by CELH, Plaintiff and Class Members conferred a direct benefit to all the Defendants.

133. ~~112.~~ Instagram users that are members of the class continue to suffer injuries as a result of the Defendants' behavior. If the Defendants do not compensate Plaintiff and ~~Class Members~~class members, they ~~would~~will be unjustly enriched as a result of their unlawful act or practices.

134. ~~113.~~ It is an equitable principle that no one should be allowed to profit from his own wrong, therefore it would be inequitable for the Defendants to retain said benefit, reap unjust enrichment.

135. ~~114.~~ Under California law, one person should not be permitted to unjustly enrich himself at the expense of another, and should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution is made.

136. ~~115.~~ Since the Defendants unjustly enriched themselves at the expense of the Instagram users, members of the Nationwide Class, Plaintiff requests the disgorgement of these ill-gotten money.

137. ~~116.~~ Due to Defendants' conduct, ~~Plaintiff~~Plaintiffs and the Class Members are entitled to damages according to proof.

**COUNT IV:**
NEGLIGENT MISREPRESENTATION
(On behalf of Plaintiff and the Nationwide Class)

138. ~~117. Plaintiff incorporates~~Plaintiffs incorporate by reference all paragraphs ~~1-87~~1-108 of this Complaint as if fully rewritten herein. As set forth above, Plaintiff asserts this count on his own behalf and on behalf of all other similarly situated persons pursuant to ~~Fed. R. Civ. Pro.~~Rule 23.

139. ~~118.~~ Defendants had a duty to be truthful in their commercial speech. In convincing Plaintiff to purchase Celsius products, Defendants made representations and endorsements that they knew to be false or negligently failed to examine the veracity of the affirmations.

140. ~~119.~~ As a result of Defendants' negligent misrepresentations, Plaintiff the Nationwide Class Members and the California Subclass Members suffered ~~injury~~injuries.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, MARIANA DUBREU, respectfully request that this Court enter judgment in her favor and in favor of those similarly situated, as follows:

1. Certifying and maintaining this action as a class action, with the named Plaintiff as designated class representative and with her counsel appointed as class counsel;
2. A declaration that Defendants are in violation of each of the Counts set forth above;
3. Award Plaintiff and those similarly situated statutory, compensatory, and treble damages;
4. Award Plaintiff and those similarly situated liquidated damages;
5. Order the disgorgement of illegally obtained monies;
6. Award the named Plaintiff a service award;
7. Award attorneys' fees and costs; and
8. Grant such further relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff hereby demands a jury trial of the claims asserted in this First Amended Class Action Complaint.