UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:25-cv-00180-MRA-SP | Date | June 17, 2026 |
| Title | *Mariana Dubreu v. Celsius Products Holdings Inc. et al.* | | |

| | |
|---|---|
| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| Melissa H. Kunig | None Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND AS TO ONLY CERTAIN DEFENDANTS [56]**

Before the Court is Defendants' Motion to Dismiss the First Amended Complaint, or in the Alternative, Transfer (the "Motion"). ECF 56. The Court has read and considered the moving, opposing, and reply papers and deemed the Motion appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the reasons stated herein, the Court **GRANTS** the Motion.

## I. BACKGROUND

### A. Factual Background[1]

Plaintiff Mariana Dubreu ("Plaintiff") brings this lawsuit on behalf of herself and a national class of similarly situated persons against Defendants Celsius Products Holdings Inc. and Celsius, Inc. (collectively, "Celsius"), as well as Devon Barbara a/k/a Devon Windsor ("Barbara"), Erika Wheaton ("Wheaton"), and Emily Tanner ("Tanner") (collectively, "Influencers"). ECF 49. Plaintiff alleges that Celsius and the Influencers (collectively, "Defendants") engaged in an illegal marketing scheme wherein Celsius paid the Influencers to advertise their energy drink products on the social media platform Instagram, while those who view the Influencers' posts are led to believe that the Influencers actually purchase the product and drink it because they genuinely

[1] The factual background is described as alleged in Plaintiff's First Amended Complaint. When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court is required to presume that all well-pleaded allegations are true, resolve all reasonable doubts and inferences in the pleader's favor, and view the pleading in the light most favorable to the non-moving party. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

enjoy and endorse the product. *Id.* ¶¶ 13, 27. Unlike other energy drink brands, which ask social media influencers to properly disclose the material relationship with the brand by using a "Paid Partnership" label in compliance with the Federal Trade Commission Act ("FTCA"), Celsius and its partner Influencers omit altogether that the Influencers' posts about the product are paid endorsements. *Id.* ¶¶ 16–17. Plaintiff alleges that "[b]y advertising Celsius products without regards to the disclosure requirements," the Influencers have violated the FTCA and the analogous California state law. *Id.* ¶ 74. Plaintiff also alleges that "Influencers post statements that . . . amplify the false claims regarding Celsius being sports nutrition and good for exercising." *Id.* ¶ 55.

Plaintiff alleges that she "follows" the Influencers on Instagram. *Id.* ¶ 63. Plaintiff further alleges that "saw Celsius products being consumed by some of the Instagram influencers she followed which led to her purchasing Celsius products." *Id.* ¶ 22. Plaintiff was unable to discern that the posts she viewed were paid advertisements, and but for the misleading advertising claims, she and the Class Members would not have purchased Celsius products at the price they paid. *Id.* ¶¶ 24–25. Specifically, Plaintiff claims she "paid money to purchase Celsius assorted energy drink cans from Costco in [sic] Eastvale, California on May 17, 2023." *Id.* ¶ 64. Plaintiff further claims that the drinks "proved to be of an inferior quality compared to the premium she paid." *Id.* ¶ 22. Plaintiff alleges that "[t]he value that the undisclosed paid endorsements (disguised as honest use of the product) add to a product is higher than the value that traditional social media advertising adds" for several reasons: "consumers value more honest opinions than those of paid advertising"; "consumers attribute a higher value to a product that is used/consumed by successful people, in this case, the Influencers"; FTC-compliant disclosures are standard industry practice on Instagram, which makes it natural for the consumer to assume undisclosed paid endorsements are honest opinions; posts that are not marked as advertising are more likely to be organically shared by users; and Instagram promotes to users posts not marked as advertising through the "Suggested for You" feature. *Id.* ¶¶ 82–87.

Celsius Products Holdings Inc. is a company registered in Florida and headquartered in Boca Raton, Florida. *Id.* ¶ 31. Celsius, Inc. is a company formed in Nevada and headquartered in Boca Raton, Florida. *Id.* ¶ 32. Celsius, Inc. is registered with the California Secretary of State to do business in California and employs a sales workforce in California, including marketing and sales representatives. *Id.* ¶ 41. Plaintiff alleges that "California represents a major market for Celsius with products sold at Costco, S[t]ater Bros. Markets, Albertson's grocery stores, various gyms and gas stations." *Id.* ¶ 39. Plaintiff further alleges that Celsius "targets California for marketing and selling its products." *Id.* ¶ 40. According to Plaintiff, California is one of the few states where Celsius has "Fitness Development Sales Representatives, a position that involves 'actively participating in local and regional fitness field sales strategies, planning, and executing

key initiatives; visiting 10–15 stores or gyms daily, providing real-time feedback, identifying opportunities, sharing results, and offering strategic direction.'" *Id.*

Barbara is a citizen of Florida. *Id.* ¶ 34. Plaintiff alleges that "Los Angeles is the second largest market where [Barbara's] followers are located." *Id.* Wheaton is a citizen of Florida. *Id.* ¶ 36. Plaintiff alleges that "[m]ost of [Wheaton's] social media audience is located in Los Angeles." *Id.* Celsius Products Holdings, Inc., Celsius, Inc., Wheaton, and Barbara are referred to as the "Florida Defendants." Tanner is a citizen of California. Id. ¶ 35. Plaintiff claims that she saw the posts that influenced her to purchase Celsius "while physically present in California," where she was "targeted by the Influencers and [Celsius]." *Id.* ¶ 23.

Plaintiff brings this action on behalf of "all persons that purchased Celsius products online relying on misleading marketing practices and Influencers from January 15, 2021, to present." *Id.* ¶ 93. Plaintiff seeks to represent two classes: a nationwide class comprised of all consumers who purchased Celsius products in the United States, and a California subclass comprised of all California residents who purchased Celsius products in the United States. *Id.* ¶ 94–96.

### B. Procedural History

Plaintiff filed the complaint in this action on January 22, 2025. ECF 1. Defendants moved to dismiss for lack of jurisdiction and failure to state a claim, or in the alternative, to transfer. ECF 31. The Court held a hearing on Defendants' Motion, at which it granted the Motion with leave to amend based on Plaintiff's failure to sufficiently allege personal jurisdiction as to the Florida Defendants and failure to sufficiently allege Article III standing as to Tanner. ECF 46.

Plaintiff filed the First Amended Complaint ("FAC") on September 15, 2025, alleging four causes of action: (1) violation of the California Consumer Legal Remedy Act ("CLRA"); (2) violation of California's Unfair Competition Law ("UCL"); (3) unjust enrichment; and (4) negligent misrepresentation. ECF 49. Plaintiff seeks declaratory and monetary relief. *Id.* at 21–22.

On October 15, 2025, Defendants filed the instant Motion to Dismiss, or in the Alternative, Transfer. ECF 56. Plaintiff opposed. ECF 57.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant

to Federal Rule of Civil Procedure 12(b)(1). "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984–85 (9th Cir. 2008). When considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). "The party asserting [] subject matter jurisdiction bears the burden of proving its existence." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### B. Rule 12(b)(2)

Federal Rule of Civil Procedure ("Rule") 12(b)(2) governs dismissal of actions for lack of personal jurisdiction. "In evaluating the appropriateness of personal jurisdiction over a nonresident defendant, [courts] ordinarily examine whether such jurisdiction satisfies the 'requirements of the applicable state long-arm statute' and 'comport[s] with federal due process.'" *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 919 (9th Cir. 2011) (quoting *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1404–05 (9th Cir. 1994)). "Because California permits the exercise of personal jurisdiction to the full extent permitted by due process, [courts] need only determine whether jurisdiction over [a defendant] comports with due process." *Id.* (cleaned up); *see* Cal. Civ. P. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). "For due process to be satisfied, a defendant, if not present in the forum, must have 'minimum contacts' with the forum state such that the assertion of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

### C. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for failure to state a claim upon which relief can be granted. "On a motion to dismiss, all material facts are accepted as true and are construed in the light most favorable to the plaintiff." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (citing *Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008). In other words, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (per curiam). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### D. Rule 9

Claims sounding in fraud are subject to the heightened pleading requirement established by Federal Rule of Civil Procedure 9(b), which requires that the facts constituting fraud be pled with specificity. This heightened standard requires plaintiffs to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1392, 1393 (9th Cir. 1989) (quoting *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## III. DISCUSSION

Defendants seek dismissal on multiple grounds: (1) there is no general or specific jurisdiction over the Florida Defendants; (2) Plaintiff lacks Article III standing, (3) Plaintiff fails to meet Rule 9(b)'s heightened pleading standard, and (4) Plaintiff fails to state a claim on which relief can be granted. ECF 56 at 2.

The Court begins by addressing Plaintiff's failure to satisfy Rule 9(b)'s heightened pleading standard before addressing Defendants' jurisdictional arguments to help illustrate the broader deficiencies in the FAC.

### A. The FAC Fails to Satisfy Federal Rule of Civil Procedure 9(b)

Defendants argue that the FAC fails in its entirety because Plaintiff does not meet the heightened pleading standard established by Federal Rule of Civil Procedure 9(b), which requires claims constituting fraud to be stated with "particularity." ECF 56 at 30–31. Defendants argue that Plaintiff fails to satisfy Rule 9 because she does not allege facts showing reliance, she does not identify the specific posts she supposedly saw that induced her to purchase Celsius products, she does not identify the specific Celsius products she purchased, she does not allege facts supporting the alleged "scheme" between the Defendants, and she does not distinguish between the two Celsius entities. *Id.* Plaintiff responds that the FAC sufficiently identifies the Instagram posts that she saw, and that it sufficiently alleges that these posts caused her to purchase Celsius energy drinks. ECF 57 at 31.

Plaintiff does not directly dispute that Rule 9(b) applies to her claims, though she states in

passing that "[i]n a case where fraud is not an essential element of a claim, only allegations of fraudulent conduct must satisfy the heightened pleading requirements." ECF 57 at 30. But Plaintiff's claims, which challenge allegedly deceptive advertising, "sound in fraud, thereby requiring Plaintiff to satisfy the heightened pleading standard of Rule 9(b)." *Ryan v. Starco Brands, Inc.*, No. 24-CV-00642-SVK, 2024 WL 5102651, at *4 (N.D. Cal. Apr. 19, 2024) (applying Rule 9(b) to CLRA and UCL claims based on allegedly deceptive label); *see also In re iPhone 4s Consumer Litig.*, 637 F. App'x 414, 415 (9th Cir. 2016) (applying Rule 9(b) to CLRA, FAL and UCL claims based on allegations concerning deceptive misrepresentations disseminated in advertising campaign). Under Rule 9(b), "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Rule 9 also requires that a complaint's allegations against multiple defendants be "differentiated so that each defendant can know 'the allegations surrounding his alleged participation in the fraud.'" *Hollifield v. Resolute Cap. Partners Ltd., LLC*, No. 2:22-CV-07885-SB-RAO, 2023 WL 2628675, at *3 (C.D. Cal. Feb. 14, 2023) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)).

Defendants rely heavily on *Pop v. LuliFama.com LLC*, 145 F.4th 1285 (11th Cir. 2025). In that case, the plaintiff Pop alleged that he purchased defendant's swimwear products after seeing various social media influencers wearing the products and tagging the defendant in their Instagram posts. *Id.* at 1288. Like Plaintiff, Pop believed that the influencers were giving their unpaid endorsements for the products, when in reality the defendant was actually paying them for their endorsements. *Id.* Pop sued, alleging that the failure to disclose the relationship violated the analogous Florida consumer protection statute. *Id.* As with Plaintiff's FAC, "the gist of [Pop's] complaint was that the influencer defendants 'misrepresented the material relationship they have with [defendant] by promoting [defendant's] products without disclosing the fact that they were paid to do it.'" *Id.* at 1290.

The Eleventh Circuit held that the district court properly dismissed Pop's complaint for failure to comply with Rule 9(b). *Id.* at 1297. The court noted that "Pop did not identify a single Instagram post that he or any putative class members saw and relied on in which the influencer defendants wore [defendant's] products or tagged [defendant]." *Id.* at 1296. Pop alleged that one influencer advertised defendant's products more than ten times, and the complaint included screenshots of some of those posts. *Id.* "But critically," the court observed, "Pop did not allege when those posts were made, when he saw them, if he saw those specific posts before purchasing [defendant's] products, or how those posts caused him to purchase the products at issue here." *Id.* at 1297. The court went on to note that Pop "never even alleged which products he bought, much less how the defendants inspired him to do so." *Id.*

The Court finds *Pop* instructive. Here, Plaintiff "d[oes] not identify a single Instagram post that [she] or any putative class member[] saw and relied on in which the influencer defendants" drank Celsius products or tagged Celsius. *Id.* at 1296. To be sure, the FAC includes three screenshots of posts allegedly shared by the Influencers, which depict the Influencers with a Celsius product, and "@Celsiusofficial" is tagged in the captions of those posts. FAC ¶¶ 34–36. But, as in *Pop*, Plaintiff does not allege "when [she] saw [the posts], if [she] saw those specific posts before purchasing [Celsius], or how those post[s] caused [her] to purchase the products at issue here." *Pop*, 145 F.4th at 1297. The FAC also fails to allege when the posts were shared by the Influencers. The screenshots of posts by Barbara and Tanner indicate that the posts were shared on July 25, and June 20, respectively, but there is no indication of what year the posts were shared. FAC ¶¶ 34–35. The screenshot of Wheaton's post reflects the date "September 2, 2020," but there is no explanation as to how that post influenced Plaintiff to purchase Celsius nearly three years later.

Plaintiff seeks to distinguish *Pop* by arguing that "the Complaint is clear and specific. Plaintiff identifies posts states [sic] that she saw the posts and purchased a pack of assorted Celsius energy drinks at Costco." ECF 57 at 33. But nowhere in the FAC does Plaintiff actually allege that she saw the specific screenshotted posts identified in the FAC and was consequently motivated by those posts to purchase Celsius products. Rather, Plaintiff merely alleges that she "follows" the Influencers on Instagram. FAC ¶ 63. But the fact that Plaintiff currently follows the Influencers does not necessarily mean that Plaintiff saw the specific post in the FAC; Plaintiff could have started following the Influencers after the posts were shared, or it is possible Plaintiff did not see any specific post despite following the Influencers. Nor does Plaintiff allege, as she must, how those posts specifically induced her to purchase Celsius products. Indeed, Plaintiff alleges that she purchased Celsius products on only one occasion—it is unclear which of the three posts she relied upon, if any, in making the purchase.

At most, Plaintiff alleges that her decision to purchase Celsius products was informed or influenced by the Influencers "and the fact that they promoted Celsius products." *Id.* ¶ 63. Plaintiff further alleges that she would not have purchased the Celsius products "if she knew that the Influencers were paid to endorse Celsius." *Id.* ¶ 66. But those allegations do not explain how the specific posts identified in the FAC "caused [Plaintiff] or anyone else to purchase which products." *Pop*, 145 F.3d at 1297.

Defendants also argue that the FAC fails to differentiate its allegations against Celsius Products Holdings Inc. and Celsius, Inc. "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his

alleged participation in the fraud." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 997–98 (9th Cir. 2011) (citation omitted). The FAC, which refers to these entities collectively as "CELH," alleges that "[d]iscovery will reveal the precise responsibilities and roles of each of the CELH entities in connection with the allegations in the Complaint." FAC ¶ 33. But "[e]ven if the information is uniquely in a defendant's knowledge, 'a plaintiff who makes allegations on information and belief [still] must state the factual basis for the belief.'" *Vigdor v. Super Lucky Casino, Inc.*, No. 16-CV-05326-HSG, 2017 WL 2720218, at *6 (N.D. Cal. June 23, 2017) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). Here, Plaintiff alleges no facts regarding the relationship between Celsius Products Holdings Inc. and Celsius, Inc., nor does Plaintiff identify any factual basis for her belief that one entity or the other engaged in the conduct complained of in the Complaint.

For the foregoing reasons, the Court concludes that the FAC fails to satisfy Rule 9(b)'s heightened pleading standard.

### B. Plaintiff Fails to Sufficiently Allege Standing

Aside from Plaintiff's failure to satisfy Rule 9(b), the Court also concludes that dismissal of the FAC is warranted for failure to sufficiently allege an Article III injury, and Plaintiff also fails to plead standing to pursue injunctive relief.

#### *1. Economic Injury*

Defendants argue that Plaintiff lacks standing to seek relief under Article III because she has failed to allege a concrete injury that can be fairly traced to any Defendant. ECF 56 at 26–30. Defendants argue that Plaintiff fails to allege that "she was deprived of the benefit of her bargain," and allegations of overpayment are insufficient to establish concrete injury. *Id.* at 28. Defendants further argue that the FAC fails Article III's "traceability" requirement because Plaintiff "never explains how a misrepresentation or omission by each and every Defendant caused her harm." *Id.* Plaintiff responds that she has adequately alleged injury in fact because when she purchased the Celsius products, she paid a price premium attributable to the undisclosed endorsements. ECF 57 at 27.

Defendants' first argument—that Plaintiff cannot establish concrete injury-in-fact by alleging overpayment without otherwise pleading some defect in the product—disregards Ninth Circuit case law distinguishing between "benefit of the bargain theory" and "overpayment theory," which are discrete theories of injury. *McGee v. S-L Snacks Nat.*, 982 F.3d 700, 705–06 (9th Cir. 2020). As to the "overpayment" theory, the Ninth Circuit "ha[s] consistently recognized that a plaintiff can satisfy the injury in fact requirement by showing that she paid more for a

product than she otherwise would have due to a defendant's false representations about the product." *Id.* at 706. "Under California law, the economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018). Thus, "[a]llegations of overpayment are sufficient to satisfy the Article III injury-in-fact requirement because 'palpable economic injuries have long been recognized as sufficient to lay the basis for standing.'" *Robles v. Gojo Indus., Inc.*, No. SACV21928JVSDFMX, 2022 WL 2163846, at *3 (C.D. Cal. Mar. 16, 2022) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 733–34 (1972)). "[I]n the eyes of the law, a buyer forced to pay more than he or she would have is harmed at the moment of purchase . . . ." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 334 (2011).

The Court agrees, however, that Plaintiff has failed to adequately plead that such an injury is fairly traceable to the actions of any Defendant. As explained above, Plaintiff does not allege how any given post induced her to purchase Celsius, and there are no factual allegations directly connecting the actions of any particular Defendant to that single purchase. Article III does not require particularized allegations, and "general factual allegations of injury resulting from the defendant's conduct may suffice" at the pleading stage. *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 945 (N.D. Cal. 2018) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). But Plaintiff must, at a minimum, plausibly allege that her injury is "causally linked" to Defendants' alleged deception, and Plaintiff has not done so. Plaintiff does not allege that she actually relied on any given post or statement in making the decision to purchase Celsius products, nor does she allege that the products she purchased were the same ones depicted in any particular post. For FAL and UCL claims, "courts have held that actual reliance is required to demonstrate causation for purposes of Article III standing when the plaintiffs assert that their injury is the result of deceptive misrepresentations or omissions." *Phillips v. Apple Inc.*, 2016 WL 1579693, at *6 (N.D. Cal. Apr. 19, 2016) (collecting cases). Plaintiff does not plausibly allege such reliance here.

In support of their argument, Defendants rely on the district court's holding in *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901 (C.D. Cal. 2021). ECF 56 at 29. In *Lorentzen*, the plaintiff brought various claims against a grocery store based on alleged misrepresentations appearing on the packages of ground coffee products. 532 F. Supp. 3d at 905. Plaintiff's complaint challenged eight different products with allegedly deceptive labels, though plaintiff herself only purchased one. *Id.* at 909. The court acknowledged that some courts apply a "substantial similarity" analysis to determine whether plaintiffs can assert claims for products they did not actually purchase. *Id.* at 908–09. But the court rejected such an analysis as "inconsistent with the basic concept of standing," and concluded that, as to the seven products the plaintiff did not purchase, she "did not suffer any injury," and she therefore lacked standing to assert claims as to

those unpurchased products. *Id.* Here, Plaintiff does not allege that she purchased the same products as the ones depicted in the Influencers' posts, nor does she even allege that the products are substantially similar.

For these reasons, the Court concludes that Plaintiff has also failed to adequately allege an injury fairly traceable to Defendants' conduct for purposes of Article III standing.

***2. Injunctive Relief***

Defendants separately argue that Plaintiff lacks standing to pursue injunctive relief because she has failed to show that she wants or intends to purchase the products in the future. ECF 56 at 30. Plaintiff responds that she remains active on Instagram, and an injunction requiring influencers to properly disclose their paid relationships is necessary because without such relief, it would be impossible for Plaintiff to discern which posts are sponsored. ECF 57 at 29.

Defendants cite the Ninth Circuit's decision in *Davidson* for the proposition that, to show standing to pursue injunctive relief, a plaintiff must show that she wants or intends to purchase the product in the future. ECF 56 at 30. But as a court in this district recently recognized, under *Davidson*, a plaintiff need not allege intent to purchase the product at issue in the future to have standing. *Meltzer v. Mazda Motor of Am., Inc.*, 779 F. Supp. 3d 1120, 1134 (C.D. Cal. 2025) (citing *Davidson*, 889 F.3d at 969). Rather, "the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Davidson*, 889 F.3d at 969–70.

Here, Plaintiff does not allege that she wishes to purchase Celsius but will not do so due to her inability to rely on advertising, nor does she allege that she might purchase it in the future. Thus, Plaintiff argues that she "cannot assume that all endorsements and recommendations on Instagram are paid, because this is not the case," and an injunction requiring disclosures is therefore necessary. ECF 57 at 29. In other words, Plaintiff appears to be arguing that she cannot rely on advertising or labeling in the future. Plaintiff does not, however, connect this to any actual desire or intent to purchase the Celsius product again in the future. Thus, "[w]ithout any stated desire or intention to purchase [Celsius] in the future, Plaintiff[] do[es] not have standing to pursue injunctive relief." *Clark v. InComm Fin. Servs., Inc.*, No. EDCV221839JGBSHKX, 2023 WL 5167364, at *8 (C.D. Cal. July 17, 2023).

Accordingly, the Court concludes Plaintiff has not adequately alleged standing to pursue injunctive relief.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:25-cv-00180-MRA-SP | Date | June 17, 2026 |
| Title | *Mariana Dubreu v. Celsius Products Holdings Inc. et al.* | | |

### C. Plaintiff Alleges Personal Jurisdiction Only as to Celsius

For the reasons set forth above, dismissal of the FAC is warranted under Rule 9(b) and Rule 12(b)(1). Because Plaintiff may file an amended complaint to cure the deficiencies identified herein, the Court finds it appropriate to address the parties' arguments regarding personal jurisdiction. The Court agrees it lacks personal jurisdiction as to Wheaton and Barbara, and it therefore dismisses those defendants without prejudice. The Court, however, concludes that Plaintiff has sufficiently alleged that the Court may exercise personal jurisdiction over Celsius.

#### *1. General Jurisdiction*

"Applying the 'minimum contacts' analysis, a court may obtain either general or specific jurisdiction over a defendant." *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001). "If the defendant's activities in the forum are substantial, continuous and systematic, general jurisdiction is available; in other words, the foreign defendant is subject to suit even on matters unrelated to his or her contacts to the forum." *Id.* "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 924 (2011).

Defendants argue—and Plaintiff does not contest—that the Florida Defendants are not subject to general jurisdiction in California. Barbara and Wheaton, who are individuals, are domiciled in Florida. FAC ¶¶ 34, 46. Celsius Products Holdings, Inc. is a company registered and headquartered in Florida. *Id.* ¶ 31. Celsius, Inc. is a company formed in Nevada and headquartered in Florida. *Id.* ¶ 32. Plaintiffs therefore establish no basis for general jurisdiction over the Florida Defendants.

Tanner, on the other hand, is an individual domiciled in California. *Id.* ¶ 35. Plaintiff argues—and Defendants do not contest—that Tanner is thus subject to general jurisdiction in this Court.

#### *2. Specific Jurisdiction*

The parties disagree as to whether this Court may exercise specific jurisdiction over the Florida Defendants. A court may exercise specific jurisdiction over a foreign defendant if the plaintiff's claims "'arise out of or relate to the defendant's contacts' with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017)).

The Ninth Circuit has established three requirements for a district court to exercise specific personal jurisdiction over a nonresident defendant:

(1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail[ ] himself of the privileges of conducting activities in the forum";

(2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and

(3) "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable."

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). "[I]n the absence of an evidentiary hearing, the plaintiff need only make 'a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (quoting *Pebble Beach*, 453 F.3d at 1154). "[U]ncontroverted allegations in [plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor." *Id.* (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002)).

"For claims sounding in tort," like the false advertisement claims asserted by Plaintiff, the Ninth Circuit generally "employ[s] a purposeful direction analysis." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 (9th Cir. 2025); *see also Cole-Parmer Instrument Co. LLC v. Pro. Lab'ys, Inc.*, No. 20-CV-08493-LHK, 2021 WL 3053201, at *7 (N.D. Cal. July 20, 2021) ("[C]ourts in the Ninth Circuit require a showing of purposeful direction for claims brought pursuant to the UCL."); *Robin Singh Educ. Servs., Inc. v. Nathan Cepelinski*, No. CV207516DSFPVCX, 2021 WL 945243, at *4 (C.D. Cal. Jan. 26, 2021) ("Both unfair competition and false advertising sound in tort and therefore the purposeful direction test is appropriate here."). "[T]he purposeful direction test requires that the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." *Briskin*, 135 F.4th at 751 (citing *Brayton Purcell LLP*, 606 F.3d at 1128). The "express aiming" element considers a defendant's connection to the forum state and whether the defendant

specifically targeted the forum state. *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015). The focus is on the contacts that the defendant creates with the forum, not the unilateral activity of a plaintiff or third party. *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014).

With these principles in mind, the Court considers whether it may exercise specific jurisdiction over the Florida-based Influencers, Wheaton and Barbara, before it addresses personal jurisdiction over Celsius.

***a) Wheaton and Barbara***

Defendants argue that the Court lacks specific jurisdiction over Wheaton and Barbara because Plaintiff fails to allege facts showing that they purposefully direct any activities at California, their Instagram posts are not used to transact business, and allegations regarding their followers in California are insufficient. ECF 56 at 22–23.

As to Barbara, Plaintiff alleges that "[Barbara] is transacting business in California, and nationwide over the internet and actively soliciting business and targeting California, via Instagram, an interactive social media website." FAC ¶ 34. "While [Barbara's] Instagram account caters towards her followers, a significant number of her social media followers are located in Los Angeles." *Id.* As to Wheaton, Plaintiff alleges that "[m]ost of [Wheaton's] social media audience is located in Los Angeles (she has twice as many followers in Los Angeles as in Miami). Also, the highest percentage of followers interacting with her profile are located in Los Angeles." *Id.* ¶ 36.

The Court agrees with Defendants that these allegations are insufficient to satisfy the purposeful direction test. The only connections Barbara and Wheaton are alleged to have with California are through their followers and other Instagram users who view or interact with their accounts and posts. But "'something more' than mere passive nationwide accessibility [is] required to show express aiming at the forum state and, thus, satisfy due process." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 752 (9th Cir. 2025). In determining whether a defendant has done "something more," courts consider "the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011) (citations omitted).

Here, Plaintiff does not allege that Wheaton or Barbara "individually targeted" any California resident. Rather, Plaintiff alleges that they transact business in California, and that they have significant numbers of followers in California. FAC ¶¶ 34, 36. But these allegations are insufficient to establish express aiming because they do not demonstrate any "purposeful

activity invoking the benefits and protections of [California]." *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir. 1997). Although Plaintiff argues that Instagram is "interactive" because viewers may like or comment on posts, "operation of an interactive website does not, by itself, establish express aiming." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023). In the context of e-commerce transactions, specific jurisdiction may exist where a defendant "s[ells] a physical product via an interactive website and caused that product to be delivered to a forum state." *Briskin*, 135 F.4th at 755 (citing *Herbal Brands, Inc.*, 72 F.4th at 1094). But the affidavits submitted by Defendants establish that consumers could not purchase Celsius products directly from the Influencers' Instagram posts. ECF 56-5 ("Wheaton Decl.") ¶ 9; ECF 56-5 ("Barbara Decl.") ¶ 9. And "a website advertising its services without offering consumers the ability to make a purchase [is] insufficient to establish purposeful availment." *Baixaki.com, Inc. v. No Zebra Network, LTDA*, No. CV 09-8234 CBM (CTX), 2010 WL 11597372, at *3 (C.D. Cal. Sept. 9, 2010) (citing *Cybersell*, 130 F.3d at 419–20). To the extent that the FAC alleges otherwise, the Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).

Similarly, Plaintiff's allegations regarding the geographic location of Wheaton's and Barbara's followers are contradicted by their affidavits. For example, Plaintiff alleges that as to Barbara, "Los Angeles is the second largest market where her followers are located," and "she received the third highest number of interactions with her Instagram account, from Los Angeles." FAC ¶ 34. According to Barbara's sworn statements, however, less than 8% of her followers are located in the United States, and less than 1% are located in California. Barbara Decl. ¶¶ 5, 6. Barbara's profile does not reference California, and the only social media post Barbara allegedly shared regarding Celsius did not reference California in any way. *Id.* ¶¶ 4, 9. As to Wheaton, although Plaintiff alleges that "[m]ost of [Wheaton's] social media audience is located in Los Angeles," less than 27% of Wheaton's followers are located in the United States, and her "top" follower cities are New York, Mexico City, and London. Wheaton Decl. ¶¶ 6–7. According to Wheaton's Instagram Insights, Los Angeles was the fourth "top city" for Wheaton's followers, but because of the geographic diversity of Wheaton's followers, only 0.8% of her followers are located there. *Id.* ¶ 7 & Ex. A. Plaintiff does not otherwise demonstrate that the Influencers "tailored the content of [their] posts for a California audience." *Sec. Alarm Fin. Enters., L.P. v. Nebel*, 200 F. Supp. 3d 976, 985 (N.D. Cal. 2016). Thus, "Plaintiff has offered no evidence, and the Court finds none, that [the Influencers'] . . . Instagram posts were in any way directed or targeted at California or a California audience." *Id.*; *see also Pebble Beach Co.*, 453 F.3d at 1158 ("[T]he fact that [defendant's] website is not directed at California is controlling.").

In sum, the Court finds that Plaintiff has not satisfied the purposeful direction test because

there are no well-pleaded allegations demonstrating that Wheaton or Barbara expressly aimed their activities at California. Having determined that Plaintiff does not satisfy the first prong of specific jurisdiction, the Court does not address whether Plaintiff's claims arise out of or relate to the Influencers' contacts with the forum or whether jurisdiction would be reasonable.

***b) Celsius Defendants***

*i. Purposeful Direction—Intentional Act*

"Under this requirement, courts construe intent in the context of the intentional act test as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1068 (S.D. Cal. 2019) (citing *Schwarzenegger*, 374 F.3d at 806). Here, Defendants appear to concede that Plaintiff alleges multiple intentional acts by Celsius, which include targeting California for marketing and sales of the product, partnering with California retailers to sell the product, and employing an active sales workforce in California that implements "regional fitness field sales strategies." ECF 56 at 20; FAC ¶ 39–41. "Because [Celsius] developed, advertised, and sold the product, the Court finds Plaintiff has carried her burden to show an intentional act by [Celsius]." *Loomis*, 420 F. Supp. 3d at 1068; *see also Cole-Parmer*, 2021 WL 3053201, at *8 (finding intentional act element satisfied based on allegations that defendant "actively markets and sells goods in the State of California . . . that bear the infringing trademark at issue.").

*ii. Purposeful Direction—Express Aiming*

The parties' dispute centers on whether Plaintiff satisfies the "express aiming" requirement. Defendants argue that neither sales of Celsius products in California nor Celsius's internet advertising on Instagram are sufficient to confer specific jurisdiction. ECF 56 at 20–21. Plaintiff argues that Celsius's conduct was expressly aimed at California because Celsius distributes products in California, employs personnel in California, is registered to do business in California, and targets store and gyms in California in order to sell its products. ECF 57 at 19 (citing FAC ¶¶ 40, 41).

Defendants mistakenly contend that "in-state sales alone are never enough to exercise specific jurisdiction." ECF 56 at 20. The Court's previous ruling did not establish such a sweeping principle, nor is this proposition supported by the law. To the contrary, it is settled law that "if the sale of a product . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer . . . to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States." *World-Wide Volkswagen Corp.*

*v. Woodson*, 444 U.S. 286, 297 (1980). Stated differently, "jurisdiction is proper where a manufacturer has placed goods into the stream of commerce knowing and intending for them to be ultimately purchased by consumers in the forum state." *Alvarez v. Aircraft Modular Prods., Inc.*, 949 F. Supp. 1470, 1474 (D. Haw. 1996). That is what Plaintiff alleges here—that Celsius targets California for marketing and selling its products and distributes its products at various locations in California knowing and intending that they will be purchased by California consumers. FAC ¶¶ 39, 40. Nor was Plaintiff's purchase of the Celsius product in California alleged to be an "isolated occurrence"—rather, Plaintiff alleges that Celsius maintains a targeted, ongoing sales presence in the state. Thus, the sale of Celsius products "is properly viewed as an event within a sequence of activities designed to use California markets for the defendant's benefit." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1197 (9th Cir. 1988).

Plaintiff also alleges that, as part of its targeting of California, Celsius deploys "Fitness Development Sales Representatives" who visit physical locations in California and identify "opportunities" for future sales strategies. FAC ¶ 40. This conduct is analogous to "marketing the product through a distributor who has agreed to act as the sales agent in the forum State," which "indicate[s] an intent or purpose to serve the market in" California. *Sinatra*, 854 F.2d at 1197 (citing *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 112 (1987)); *see also Monster Energy Co. v. Vital Pharms., Inc.*, No. EDCV181882JGBSHKX, 2019 WL 2619666, at *6 (C.D. Cal. May 20, 2019) (finding defendant "expressly aimed his intentional acts at California by both overseeing a VPX marketing scheme which included promotional events in California . . . as well as advertising BANG promotions in California on his personal Instagram account").

Defendants correctly point out that "internet advertising alone is not sufficient to subject the advertiser to jurisdiction in the plaintiff's home state without something more." ECF 56 at 20 (quotation marks omitted). As the Ninth Circuit explained in *Briskin*, it is settled law "that 'something more' than mere passive nationwide accessibility was required to show express aiming at the forum state." *Briskin*, 135 F.4th at 752. *Briskin*, however, dispensed with the requirement that plaintiffs show "differential treatment of the forum state for a finding of 'express aiming' of the defendant's allegedly tortious conduct." *Id.* at 758. *Briskin* held "that an interactive platform expressly aims its wrongful conduct toward a forum state when its contacts are its own choice and not random, isolated, or fortuitous, even if that platform cultivates a nationwide audience[ ] for commercial gain." *Id.* (citations and quotation marks omitted).

Defendants' argument that internet presence on a passive website does not establish specific jurisdiction is unavailing because Plaintiff has adequately alleged "something more" beyond mere passive internet activity. The physical presence of Celsius products and employees

in California, which are part of Celsius's alleged efforts to attract sales in the state, demonstrates that Celsius's contacts "are its own choice and not random, isolated, or fortuitous." *Id.* Celsius does not meaningfully dispute any of Plaintiff's allegations regarding its activities in California. In *Loomis*, the Court determined that the plaintiff adequately alleged "something more" to satisfy the express aiming prong where the defendant: (1) had a designated agent for service of process and was registered with the California secretary of state, and (2) targeted California with television commercials by placing the product at issue "in the hands of California-specific individuals." *Loomis*, 420 F. Supp. 3d at 1070. Thus, the court reasoned, "Defendant has targeted a California fitness community to help advertise its product and thus went beyond merely making a connection between Defendant and Plaintiff." *Id.* (citing *Walden*, 571 U.S. at 288, and *Picot*, 780 F.3d at 1214). The Court finds that reasoning applicable here. Thus, "[w]hile the allegations are not extensive, they are more indicative of a 'regular and anticipated flow of products from manufacture to distribution to retail sale,' rather than a single, isolated 'edd[y]' of sales that happened to occur in the state." *Harman Int'l Indus., Inc. v. Jem Accessories, Inc.*, No. 2:20-CV-08222 AB (EX), 2021 WL 3265013, at *4 (C.D. Cal. Apr. 8, 2021) (quoting *Asahi Metal Indus. Co.*, 480 U.S. 102 at 116 (Brennan, J., plurality)).

Defendants' reliance on *Alani Nutrition, LLC v. Ryse Up Sports Nutrition, LLC,* No. 23 C 5196, 2024 WL 148969 (N.D. Ill. Jan. 12, 2024), is misplaced. In that out-of-circuit case, the court held that specific jurisdiction did not exist where the defendant's products were sold at retailers nationwide, and "there [was] nothing specific or unique about the sale of its products in Illinois." *Id.* at *5. This reasoning is at odds with *Briskin*, a decision binding upon this Court, where the Ninth Circuit specifically rejected the "differential treatment" requirement. 135 F.4th at 758. And in any event, *Alani* is distinguishable because here, Plaintiff alleges California represents a "major market" for Celsius products and because Celsius stations field sales representatives in the state.

For these reasons, the Court concludes that Plaintiff has satisfied the "express aiming" prong of the purposeful direction test.

*iii. Purposeful Direction—Foreseeable Harm*

The final prong of the purposeful direction test "requires a showing that the defendant knew the brunt of the directed, intentional act would likely be felt in the forum state." *Harman*, 2021 WL 3265013, at *4 (citing *Dole Foods Co.*, 303 F.3d at 1111). Defendants urge that because Instagram has a "worldwide reach," "Celsius could not reasonably anticipate the alleged harm to California residents arising out of posts that were not related to or targeted at California." ECF 56 at 21–22. But this argument ignores the direct nexus between the injury Plaintiff allegedly suffered (the price premium paid at the point of sale) and Celsius's physical sales in California.

It is foreseeable that, as a result of selling products in the state of California, consumers in California would be economically injured by price premiums resulting from false or misleading advertising. *Woodson*, 444 U.S. at 297–98 ("The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.").

In *Loomis*, the court held that the plaintiff sufficiently alleged foreseeability because it was "foreseeable that Defendant's website and advertising that emphasized California-based fitness influencers would cause harm to California-domiciled Plaintiff if those advertisements and representations contained false or misleading information." *Loomis*, 420 F. Supp. 3d at 1070. Here, Plaintiff alleges that Celsius sells products in California, that it partners with at least one California fitness influencer, and that it employs other sales representatives in California. These allegations are sufficient to render it "foreseeable" that California-based consumers would be harmed by false representations in its advertisements. The Court thus finds this prong satisfied against Celsius.

In sum, Plaintiff sufficiently alleges all three prongs of the purposeful direction test against Celsius.

*iv. Arising Out of or Relating to Forum Activities*

After considering purposeful direction, the second prong in the broader specific jurisdiction analysis requires that the claim arise out of or relate to the defendant's forum-related activities. In *Ford Motor Co.*, the Supreme Court explained that this prong does not demand a "strict[ly] causal relationship between the defendant's in-state activity and the litigation." 592 U.S. at 362. In that case, the Court held that "[w]hen a company like Ford serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit." *Id.* at 355. The Ninth Circuit, applying *Ford*, opined that "a plaintiff's injury relates to a defendant's forum contacts if similar injuries will tend to be caused by those contacts." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 505 (9th Cir. 2023).

Here, Plaintiff's injury is the price premium she allegedly paid for Celsius products based on the undisclosed advertising on Instagram. FAC ¶¶ 87–89. In other words, Plaintiff, like every other consumer, paid "a price that includes a portion attributable to the undisclosed advertising." *Id.* ¶ 87. The economic loss is that additional money Plaintiff paid to purchase Celsius from Costco. *Id.* ¶ 65. This injury—the price premium associated with the sale of the product—is related to Celsius's forum contacts (*i.e.*, Celsius's targeted marketing and sales efforts in California) because similar injuries would be caused to other consumers who purchase Celsius

in California as a result of Celsius's false or deceptive advertising. Along the same lines, Plaintiff's injury relates to Celsius's forum contacts because Celsius "should have foreseen the risk that its contacts" (*i.e.*, the retail sale of its products) might cause injuries like that of the plaintiff (*i.e.*, a price premium). *Yamashita*, 62 F.4th at 506.

Defendants argue that Plaintiff fails to show that her claims arise out of the Florida Defendants' contacts with California because the claims relate to Celsius's supposed business relationships with the Influencer Defendants, not California or its residents. ECF 56 at 24. This argument, however, relies on an improperly narrow view of Plaintiffs' allegations and of the "arising out of" requirement. Plaintiff alleges that Celsius "serves a market for [its] product[s] in [California]," and the sale of that product caused an economic injury to one of its residents—that is sufficient to satisfy the "arising out of" requirement. *Ford Motor Co.*, 592 U.S. at 363.

Thus, the Court concludes that this prong of the personal jurisdiction inquiry is satisfied as to Celsius.

*v. Reasonableness of Jurisdiction*

If the plaintiff satisfies the first two prongs, the defendant bears the burden of overcoming a presumption that jurisdiction is reasonable by presenting a compelling case that specific jurisdiction would be unreasonable. *Rudzewicz*, 471 U.S. at 477. Seven factors are considered in assessing whether the exercise of jurisdiction over a nonresident defendant is reasonable: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) conflicts of law between the forum state and the defendant's home jurisdiction; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). Plaintiffs argue that these factors weigh in favor of the exercise of jurisdiction. ECF 57 at 22–24. Defendants' Motion addresses these factors only briefly and does not discuss how they apply to the Celsius Defendants specifically. *See* ECF 56 at 26. Defendants essentially argue that Celsius "made decisions regarding social media marketing from Florida." *Id.* Defendants' reply also argues that "Plaintiff offers no reason why Florida is an 'unreasonable' forum." ECF 58 at 13.

The burden, however, is not on Plaintiff to demonstrate the reasonableness of Defendants' preferred forum. Rather, the burden rests with Defendants to demonstrate why jurisdiction would be unreasonable. *Loomis*, 420 F. Supp. 3d at 1071. And Defendants' remaining arguments fail to demonstrate why it would be unreasonable to exercise jurisdiction over Celsius. Contrary to Defendants' assertion, the basis of jurisdiction is not Plaintiff's "unilateral activity," ECF 56 at

26, but rather Celsius's own efforts to conduct business in California. Moreover, Defendants do not attempt to argue that litigating in California would cause an undue burden, nor do they address California's interest in providing a forum for its residents who are allegedly injured by products purchased in the state.

In sum, Plaintiff has made a prima facie showing that Celsius purposefully directed activities in California, and that those activities arose out of or relate to Plaintiff's claims. Moreover, Celsius has not made a showing to overcome the presumption that jurisdiction is reasonable. Thus, although the Court dismisses the FAC under Rule 9(b) and for lack of Article III standing, the Court concludes that lack of personal jurisdiction would not independently warrant dismissal against Celsius.

## IV. LEAVE TO AMEND

Federal Rule of Civil Procedure 15(a) provides that once the time for amending a pleading as a matter of course has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave." In general, "[a] district court 'shall grant leave to amend freely when justice so requires.'" *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc)). "This policy is to be applied with extreme liberality." *Id.* (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).

The Court has broad discretion to deny leave to amend where the plaintiff has already been granted leave to file an amended complaint. *See Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). Here, the Court previously afforded Plaintiff an opportunity to amend. Nevertheless, because this is the first written order identifying the deficiencies in Plaintiff's pleading beyond the question of personal jurisdiction, and because the Court cannot conclude that it would be impossible to cure those deficiencies with respect to the claims against Celsius Products Holdings Inc., Celsius Inc., and Emily Tanner, the Court will grant Plaintiff another opportunity to amend its claims against those Defendants. *Lee v. Lee*, No. LACV1908814JAKFFMX, 2021 WL 4459762, at *9 (C.D. Cal. May 13, 2021).

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion to Dismiss [56]. Plaintiff's claims against Defendants Devon Barbara and Erika Wheaton are **DISMISSED without leave to amend** for lack of personal jurisdiction. Plaintiff's claims against Celsius Products Holdings Inc., Celsius Inc., and Emily Tanner are **DISMISSED with leave to amend** for failure to comply

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:25-cv-00180-MRA-SP | Date | June 17, 2026 |
| Title | *Mariana Dubreu v. Celsius Products Holdings Inc. et al.* | | |

with Federal Rule of Civil Procedure 9(b) and for lack of standing.

Any amended complaint shall be filed within **21 days** of the date of this Order. Plaintiff shall attach to the amended complaint a redline copy reflecting all additions and deletions of material from the Complaint. Any claim not included in a timely-filed amended complaint will be deemed dismissed without leave to amend.

**IT IS SO ORDERED.**

- : -

Initials of Deputy Clerk mku